Fill in this information to identify your case:

| | |
|---|---|
| Debtor | **Salem Pointe Capital, LLC** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF TENNESSEE |
| Case number (if known) | **3:24-bk-31702-SHB** |

## Official Form 410
# Proof of Claim

4/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**ORNL Federal Credit Union**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**ORNL Federal Credit Union**
**ATTN: John Hotchkiss**
**2077 Town Center Blvd.**
**Suite 201**
**Knoxville, TN 37922**
Name, Number, Street, City, State & Zip Code

Contact phone    **865-425-2692**
Contact email    **jhotchki@ornlfcu.com**

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

Where should payments to the creditor be sent? (if different)

Name, Number, Street, City, State & Zip Code

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Exhibit B

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

■ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ _____6,438,445.04_____ Does this amount include interest or other charges?

☐ No

■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money loaned**

**9. Is all or part of the claim secured?**

☐ No

■ Yes.    The claim is secured by a lien on property.

**Nature of property:**

■ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

■ Other. Describe: **Real property, accounts receivable, inventory, furnishings, fixtures and equipment, and intangibles**

**Basis for perfection:**    **DOT, UCC-1 Fin. Statement, Assignment**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

unknown

Value of property:    $ _____

Amount of claim that is secured:    $ _____6,438,445.04_____

Amount of claim that is unsecured:    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed)    _____6.65_____ %

■ Fixed

☐ Variable

**10. Is this claim based on a lease?**

■ No

☐ Yes. Amount necessary to cure any default as of the date of the petition:    $ _____

**11. Is this claim subject to a right of setoff?**

■ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ■ No<br>☐ Yes.   Check one: | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

| Part 3: | Sign Below |
|---|---|

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br><br>■ I am the creditor's attorney or authorized agent.<br><br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br><br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date _____11/1/24_____<br>       MM/ DD / YYYY<br><br>_____Thomas H. Dickenson_____<br>Signature<br><br>**Print the name of the person who is completing and signing this claim:** |

| Name | **Thomas H. Dickenson** |
|---|---|
| Title | **Attorney** |
| Company | **Hodges, Doughty & Carson, PLLC**<br>Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **P. O. Box 869**<br>**Knoxville, TN 37901-0869**<br>Number, Street, City, State and Zip Code |
| Contact phone | **(865) 292-2307**   Email   **tdickenson@hdclaw.com** |

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

IN RE:
SALEM POINTE CAPITAL, LLC,

Debtor.

CASE NO. 3:24-bk-31702-SHB
Chapter 11

## PROOF OF CLAIM ATTACHMENT

| Principal | $6,424,399.52 |
|---|---|
| Accrued interest as of 9/29/24 | 14,045.52 |
| Late charges | N/A |
| Attorney fees | *TBD |
| | |
| **TOTAL CLAIM** | **$6,438,445.04** |

*To Be Determined

s/Thomas H. Dickenson
Thomas H. Dickenson (State Bar No. 006844)
Attorney for ORNL Federal Credit Union
HODGES, DOUGHTY & CARSON, PLLC
P. O. Box 869
Knoxville, Tennessee 37901-0869
(865) 292-2307

## PROMISSORY NOTE

$6,500,000.00                                          Knoxville, Tennessee
                                                        November 7, 2023

**FOR VALUE RECEIVED,** the undersigned, **SALEM POINTE CAPITAL, LLC,** a Tennessee limited liability company (the "Borrower"), promises to pay to the order of **ORNL FEDERAL CREDIT UNION,** a Tennessee banking corporation organized under the National Credit Union Act,, or its assigns (herein called "Credit Union"), the principal sum of principal sum of Six Million Five Hundred Thousand and No/100 Dollars ($6,500,000.00)   together with interest thereon or so much as shall remain outstanding from time to time at the rate(s) set forth below.

Unless and until the occurrence of an Event of Default (hereinafter defined), interest shall accrue hereon at a fixed rate per annum ("Fixed Rate") which shall be Six and 65/100 percent (6.65%) per annum per annum (the "Interest Rate").

Said principal and the accrued interest thereon (at the rate(s) set forth above) are payable in the following manner, to-wit:

(a)     Accrued interest calculated at the Interest Rate shall be due and payable commencing on December 7, 2023 and continuing thereafter for eighty-three (83) consecutive months, monthly principal and interest payments of Forty-Four Thousand Five Hundred Twenty-One and 31/100 Dollars ($44,521.31) each applied to the outstanding principal balance pursuant to a twenty-five (25) year amortization schedule.

(b)     The final installment of the entire remaining principal balance and all accrued interest shall be due and payable in full on or before November 7, 2030 (the "Maturity Date").

All payments of interest and principal of this Note are payable at the main office of Credit Union, in Knoxville, Tennessee located at 2077 Town Center Blvd, Suite 203, Knoxville, Tennessee 37922, or such other place as the holder hereof may designate in writing, in lawful money of the United States of America.  Notwithstanding any other provisions contained herein to the contrary, all sums of interest or principal payable hereunder not paid when due shall bear interest after maturity (whether by acceleration or otherwise) at the maximum rate provided by law (the "Default Rate").

The Borrower shall pay a "late charge" equal to five percent (5%) of the amount of any payments of principal and/or interest due when paid more than fifteen (15) days after the due date thereof (provided that in no event shall said "late charge" result in the payment of interest in excess of the maximum interest permitted by law) to cover the extra expenses involved in handling delinquent payments.

In the event (i) the Borrower fails to pay any installment of principal and/or interest on this Note within 15 days of when it is due, (ii) the Borrower fails to comply with any of the other terms

or conditions specified herein or in the Deed of Trust (hereinafter defined), the Loan Agreement (hereinafter defined) and/or in other documents securing or executed in connection with this Note (collectively, the "Loan Documents"), and such failure is not cured within the time period(s) required herein or in such Loan Document(s), (iii) any Borrower if an individual, or any individual guarantor of the indebtedness evidenced hereby, dies (provided, however, that any such death shall not constitute an event of default unless Credit Union, in its reasonable discretion, determines that such death(s) has a material adverse effect on the operation of the Borrower's business and gives the Credit Union one hundred twenty (120) days written notice of Credit Union's election and determination that such death(s) does have a material adverse effect on the operation of the Borrower's business), (iv) the Borrower or any corporate, company or partnership guarantor is dissolved, terminated or liquidated, (v) the Borrower or any guarantor of the indebtedness evidenced hereby shall be involuntarily adjudicated a debtor or insolvent by a court of competent jurisdiction or shall file a petition to be adjudicated a debtor, or by petition, answer or consent, in any action or proceeding shall seek relief under the provisions of any bankruptcy or debtor's relief law now or hereafter prevailing, or shall make any assignment for the benefit of creditors, or if any order shall be made appointing a receiver of all or any substantial portion of its, his or her assets and property, and such order shall not have been stayed or dismissed and shall have remained in full force and effect for at least sixty (60) days, and/or (vi) upon the occurrence of an "event of default" described in the Loan Agreement or the Deed of Trust or any other Loan Document (each of the foregoing constituting an "Event of Default" hereunder), the Credit Union or any holder of this Note may, at its option, declare the entire principal balance, plus accrued interest, to be immediately due and payable and may proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Note, the Deed of Trust, the Loan Agreement and/or any other Loan Document, or in aid of the exercise of any power or right granted by this Note, the Loan Agreement, the Deed of Trust and/or the Loan Agreement and/or any other Loan Document, or proceed to enforce the payment of this Note or to enforce any other legal or equitable right of the holder of this Note.

The Borrower shall have the right to make full prepayment of the indebtedness evidenced hereby without premium or penalty, except as follows:

Privilege is reserved to prepay at any time without premium or fee, the entire indebtedness or any part thereof, not less than the amount of one installment. Any such prepayment shall be applied first to interest accrued on the outstanding principal balance and currently due and payable, and the remainder, if any, shall be applied to reduce the outstanding principal balance of this note. Any such partial prepayment shall not have the effect of suspending or deferring the payments herein provided for, but the same shall continue to be due and payable on each due date subsequent to such prepayment.

In addition to such other collateral as may be delivered to Credit Union as security for the obligations of the Borrower to Credit Union under this Note, such obligations are secured by the lien and provisions of a certain Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases executed by the Borrower of even date herewith in favor of the Credit Union (as

2

amended, modified or restated the "Deed of Trust"), and duly recorded or to be recorded in the Register's Office of Loudon County and Monroe County, Tennessee. This Note is further secured by UCC Financing Statements, and the Guaranty agreements of Michael D. Ayres, Rarity Bay Properties, LLC, a Tennessee limited liability company, and Premier Resort Management, LLC, a Tennessee limited liability company. The principal and interest of this Note are advanced pursuant to the terms and conditions of a certain Loan Agreement of even date herewith (as amended, modified or restated, the "Loan Agreement"), executed and delivered by the Borrower to Credit Union to which Loan Agreement reference is hereby made for all purposes.

If this Note is placed in the hands of an attorney, for collection, by suit or otherwise, or to enforce its collection, or to protect the security for its payment, the Borrower will pay all costs of collection and litigation, together with reasonable attorneys' fees, costs and expenses.

No delay on the part of the holder of this Note in the exercise of any power or right under this Note, the Deed of Trust, the Loan Agreement or any other document or instrument executed pursuant hereto shall operate as a waiver thereof, nor shall a single or partial exercise of any power or right preclude other or further exercise thereof or in the exercise of any other power or right. Enforcement by the holder of this Note of any security for the payment hereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

Every maker, endorser, surety and guarantor of this Note or the obligations set forth herein hereby waives presentment, demand, notice of dishonor, protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Note or their respective obligations hereon, consents to any extensions, renewals or postponements of the due date or time of payment hereof, or any other indulgence; agrees that the indebtedness evidenced hereby may be extended or renewed in whole or in part without notice to the Borrower and without limitation as to the number of such extensions or the period or periods thereof and consents to any substitution, exchange or release of collateral and/or to the addition or release of any other party or person, whether primarily or secondarily liable.

Regardless of any provisions contained herein, or in any other document or instrument executed in connection herewith, the holder hereof shall never be entitled to receive, collect, or apply as interest hereon, any amount in excess of the maximum contract rate which may be lawfully charged by the holder hereof under applicable law, and in the event the holder hereof ever receives, collects, or applies as interest, any such excess, such amount which would be excessive interest shall be deemed a permitted partial prepayment of principal and treated hereunder as such; and, if the principal hereof is paid in full, any remaining excess shall forthwith be paid to the Borrower. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the maximum lawful contract rate, the Borrower and the holder hereof shall, to the maximum extent permitted by applicable law, (a) characterize any non-principal payment as a reasonable loan charge, rather than as interest; (b) exclude voluntary prepayments and the effects thereof; and (c) amortize, prorate, allocate, and spread, in equal parts, the total amount of interest throughout the entire contemplated term hereof, so that the interest accrued or to accrue throughout the entire term contemplated hereby shall at no time exceed the maximum lawful contract rate.

This Note is to be construed in accordance with the laws of the State of Tennessee, except with respect to interest which shall be governed by and construed in accordance with applicable federal laws in effect from time to time.  All of the stipulations, promises and agreements in this Note contained by or on behalf of the Borrower and Credit Union shall bind their successors and assigns, whether so expressed or not, and shall inure to the benefit of the successors and assigns of the Borrower and Credit Union.

WAIVER OF JURY TRIAL.  THE BORROWER AND THE CREDIT UNION HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRAIL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (ORAL OR WRITTEN), OR ACTIONS OF THE BORROWER OR THE CREDIT UNION.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE CREDIT UNION MAKING THE LOAN EVIDENCED BY THIS NOTE AND ACCEPTING THIS NOTE.

**IN WITNESS WHEREOF**, the Borrower has executed this Note as of the date first set forth above.

**BORROWER:**

**SALEM POINTE CAPITAL, LLC**
a Tennessee limited liability company

By: _____

       Michael D. Ayres
Its:      President

4



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

| | |
|---|---|
| HOWARD & HOWARD, P.C. | November 13, 2023 3:58 PM |
| 4820 OLD KINGSTON PIKE | |
| KNOXVILLE, TN 37919 | Financing Statement Doc #:   439359573 |
| | DLN #:  B1469-2266 |

## UCC Financing Statement Acknowledgment

This acknowledges the filing of the attached UCC1 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

*Tre Hargett*

Tre Hargett
Secretary of State

Enclosures: Original Documents

**DEBTOR INFORMATION**

SALEM POINTE CAPITAL, LLC                 403 RARITY BAY PARKWAY
                                          VONORE, TN 37885

**SECURED PARTY INFORMATION**

ORNL FEDERAL CREDIT UNION                 2077 TOWN CENTER BLVD
                                          SUITE 203
                                          KNOXVILLE, TN 37922

**RECORDING TAX**
Maximum principal indebtedness for Tennessee recording tax purposes is:                 $0.00

**FILING INFORMATION**
| | |
|---|---|
| Financing Statement Doc #: | 439359573 |
| Filing Date: | 11/13/2023 2:21 PM |
| Lapse Date: | 11/13/2028 11:59 PM |
| Optional Filer Ref Data | LOC LOAN |

### Document Receipt

| | | |
|---|---|---|
| Receipt # : 8456554 | Fees Paid: | $15.00 |
| | Taxes Paid: | $0.00 |
| Payment-Check/MO - LENDERS TITLE COMPANY-KNOXVILLE OFFICE, KNOXVILLE, TN | | $15.00 |
| Payment-Check/MO - LENDERS TITLE COMPANY-KNOXVILLE OFFICE, KNOXVILLE, TN | | $6.50 |
| Payment-Check/MO - LENDERS TITLE COMPANY - KNOXVILLE OFFICE, KNOXVILLE, TN | | $15.00 |
| Deposit-Account - LENDERS TITLE COMPANY-KNOXVILLE OFFICE, KNOXVILLE, TN | | $21.50 |

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (Optional)
**Matt W. Sherrod, Esq. (865) 588-4091**

B. EMAIL CONTACT AT FILER (Optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Howard & Howard, P.C.
4820 Old Kingston Pike
Knoxville, TN 37919
Attn: Matt Sherrod

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  Salem Pointe Capital, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS  403 Rarity Bay Parkway | CITY  Vonore | STATE  TN | POSTAL CODE  37885 | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  ORNL Federal Credit Union | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS  2077 Town Center Blvd., Suite 203 | CITY  Knoxville | STATE  TN | POSTAL CODE  37922 | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:

The property described on Exhibit A hereto, whether now owned or hereinafter acquired, and all proceeds thereof, some of which may be or become fixtures on the real estate described on Exhibit B hereto. This instrument prepared by Howard & Howard, P.C., 4820 Old Kingston Pike, Knoxville, TN 37919. Tax paid on $500,000.00 when recording the Deed of Trust, including UCC-1 Financing Statement of record as Instrument No. _____ in the Register's Office for _____ County, Tennessee and n the Register's Office for _____ County, Tennessee .

Maximum principal indebtedness for Tennessee recording tax purposes is $ -0-

5. Check only if applicable and check only one box: Collateral is ☐ held in Trust (see UCC1Ad, Item 17 and instructions)
☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**LOC Loan**

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT (TN FORM UCC1) (REV. 07/01/2013)

01403-2255 11/13/2023 2:21 PM Received by Tennessee Secretary of State The Hargett



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HOWARD & HOWARD, P.C.
4820 OLD KINGSTON PIKE
KNOXVILLE, TN 37919

November 13, 2023 4:01 PM

Financing Statement Doc #: 439359606
DLN #: B1469-2267

## UCC Financing Statement Acknowledgment

This acknowledges the filing of the attached UCC1 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

*Tre Hargett*

Tre Hargett
Secretary of State

Enclosures: Original Documents

### DEBTOR INFORMATION

SALEM POINTE CAPITAL, LLC

403 RARITY BAY PARKWAY
VONORE, TN 37885

### SECURED PARTY INFORMATION

ORNL FEDERAL CREDIT UNION

2077 TOWN CENTER BLVD
SUITE 203
KNOXVILLE, TN 37922

### RECORDING TAX

Maximum principal indebtedness for Tennessee recording tax purposes is: $0.00

### FILING INFORMATION

| | |
|---|---|
| Financing Statement Doc #: | 439359606 |
| Filing Date: | 11/13/2023 2:21 PM |
| Lapse Date: | 11/13/2028 11:59 PM |
| Optional Filer Ref Data | TN STATE |

### Document Receipt

Receipt #: 8456564

| | |
|---|---|
| Fees Paid: | $21.50 |
| Taxes Paid: | $0.00 |

Payment-Account - #109000 LENDERS TITLE COMPANY-KNOXVILLE OFFICE, KNOXVILLE, ⁻ $21.50

Phone (615) 741-3276 * Website: https://tnbear.tn.gov/UCC

Page 1 of 1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (Optional)
Matt W. Sherrod, Esq. (865) 588-4091

B. EMAIL CONTACT AT FILER (Optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Howard & Howard, P.C.
4820 Old Kingston Pike
Knoxville, TN  37919
Attn: Matt Sherrod

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  Salem Pointe Capital, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS  403 Rarity Bay Parkway | CITY  Vonore | STATE  TN | POSTAL CODE  37885 | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  ORNL Federal Credit Union | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS  2077 Town Center Blvd., Suite 203 | CITY  Knoxville | STATE  TN | POSTAL CODE  37922 | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:

The property described on Exhibit A hereto, whether now owned or hereinafter acquired, and all proceeds thereof, some of which may be or become fixtures on the real estate described on Exhibit B hereto. This instrument prepared by Howard & Howard, P.C., 4820 Old Kingston Pike, Knoxville, TN 37919. Tax paid on $6,500,000.00 when recording the Deed of Trust, including UCC-1 Financing Statement of record as Instrument No. _____ in the Register's Office for _____ County, Tennessee and n the Register's Office for _____ County, Tennessee .

Maximum principal indebtedness for Tennessee recording tax purposes is $ -0- _____

5. Check only if applicable and check only one box:  Collateral is  ☐ held in Trust  (see UCC1Ad, Item 17 and Instructions)
☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing |
|---|---|

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
TN State

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT (TN FORM UCC1) (REV. 07/01/2013)

## EXHIBIT A
### to
### UCC-1 Financing Statement

All "Accounts Receivable" of Debtor related to the real property located in Loudon County, Tennessee, and Monroe County, Tennessee more particularly described on Exhibit B hereto (collectively, the "Premises"), and the building located on the Premises (collectively, the "Project"), being defined as all accounts receivable, instruments, chattel paper, general intangibles, websites, licenses and permits chooses in action and contract rights, now or hereafter owned or acquired or arising, whether or not evidenced by a note or other instrument, however the same shall arise or be acquired, and all proceeds and collections thereof, all guaranties and other security therefor, all right, title, and interest of Debtor in the merchandise which gave rise thereto, any and all of Debtor's rights to payment for motor vehicles, parts, and other goods sold or leased or for services rendered, all claims against common carriers for goods and inventory lost in transit, the right of stoppage in transit, all returned, rejected, rerouted, or repossessed goods, the sale or lease of which shall have given rise to any account on any such instruments or chattel paper, the proceeds thereof and in all of Debtor's books and records relating to the foregoing (the "Accounts Receivable"); and

All of Debtor's presently owned or hereafter acquired inventory related to the Premises and the Project, including, without limitation, all goods held for sale, lease, or other disposal by the Debtor, including all used motor vehicles, all accessories and parts, and all food products and supplies, all raw materials, work in process, finished goods, and all materials used or consumed in Debtor's business relating to the Premises and the Project, together with all proceeds and products thereof, additions and accessions thereof or thereto, replacements thereof, and substitutions therefor (the "Inventory"); and

All of Debtor's right, title, and interest in all furniture, furnishings, machinery, apparatus, equipment, fittings, fixtures, and personal property of any kind or nature, relating to and/or used on or in connection with the Premises and/or the Project, and including all trade, domestic, and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "Equipment"), now or hereafter located in, upon, or under the Premises or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Debtor, including, but without limiting the generality of the foregoing, all equipment, instruments, and supplies; heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, and oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings; together with all building materials and equipment now or hereafter delivered to the Premises and intended to be installed therein; together with all additions thereto and replacements thereof and all proceeds and products of the foregoing; and

All of Debtor's right, title, and interest in and to (both presently owned or hereafter acquired) all rents attributable to leasing of any part of the Premises and/or the Project, and all other income from the Premises and/or the Project; and

All of Debtor's accounts, contract rights, sales proceeds, leases, rents, income, general intangibles, claims, chooses in action, instruments, documents, agreements, rights to payments and all other rights to income with regard to the Project and/or the Premises, now owned or hereafter acquired and now due or which hereafter may become due, including all contract rights and general intangibles with regard to renovation and construction work to be performed on the Premises, all architectural and engineering plans and specifications relating thereto, and with regard to the operation of the Project and any other improvements to be constructed on any portion of the Premises, specifically including, without limitation, all rights, title, and interest of Debtor in, to, and under:

(1)     All operating, franchise, management and maintenance agreements relating, directly or indirectly, to the Premises or the Project; and

(2)     All agreements and leases for furniture, fixtures, equipment, telephone and computer systems relating to the Premises and the Project; and

(3)     All lease agreements now or hereafter entered into between the Debtor or Debtor's predecessor owner of the Project, as landlord, and any party with respect to any part of the Premises and/or the Project; and

(4)     All awards, insurance proceeds or payments to Debtor, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, (c) any casualty or damage to the Premises, the Project, the improvements thereon, and/or the Equipment, or (d) any other injury to or taking of, or decrease in the value of, the Premises and/or the Project; and

(5)     All sales contracts now or hereafter entered into between the Debtor, as seller, and any party with respect to any part of the Premises and/or the Project; and

(6)     All funds deposited in any escrow and/or reserve accounts pertaining to the Premises and/or the Project, including any interest earnings, such escrows and reserves specifically relating to escrows for property taxes, insurance payments and any reserves established under other loan documents between Debtor and Secured Party; and

All policies of insurance covering the above-described collateral and proceeds thereof; and

All of Debtor's other personal property of any kind connected with or related to the Premises or the Project, including inventory, equipment, contract rights, accounts, intangibles, etc. as has been assigned to Secured Party or in which a security interest has been granted in favor of Secured Party; and

All proceeds and products of the above-described collateral and all income and profits received therefrom.

**EXHIBIT B**

A-2

**BK/PG: R-41/488-534**

**23007291**

| | |
|---|---|
| 47 PGS:AL-TRUST DEED | |
| HEATHER BATCH: 110347 | |
| 12/01/2023 - 11:58 AM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 235.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 237.00 |

STATE OF TENNESSEE, MONROE COUNTY
**KIMBERLY ESTES BIVENS**
REGISTER OF DEEDS



**Source of Grantor's Interest:**
Deed dated **5/12/15** and recorded as
Instrument No. **Deed 376/P-435** in
the Office of the Loudon County Register of
Deeds.

**THIS INSTRUMENT PREPARED BY
AND AFTER RECORDING RETURN TO:**
Matt Sherrod, Esq.
Howard & Howard, P.C.
4820 Old Kingston Pike
Knoxville, Tennessee 37919
(865) 588-4091

Maximum principal indebtedness
for Tennessee recording tax
purposes is $6,500,000.00

THIS DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES, a "construction mortgage" as defined in Tenn. Code Ann. §47-9-334, as amended, dated as of November 14, 2023 from **SALEM POINTE CAPITAL, LLC**, a Tennessee limited liability company with a mailing address of 403 Rarity Bay Parkway, Vonore, Tennessee 37885 (the "Grantor") to **THOMAS DICKENSON, TRUSTEE** (the "Trustee"), for the benefit of **ORNL FEDERAL CREDIT UNION**, a Tennessee banking corporation organized under the National Credit Union Act its successors and assigns ("Credit Union"), whose address is 2077 Town Center Blvd, Suite 203, Knoxville, Tennessee 37922, (the "Beneficiary").

THIS INSTRUMENT SHALL CONSTITUTE A SECURITY AGREEMENT AND UNIFORM COMMERCIAL CODE FINANCING STATEMENT WITH RESPECT TO PERSONAL PROPERTY AND FIXTURES UNDER THE UNIFORM COMMERCIAL CODE OF TENNESSEE, AS AMENDED (THE "UCC"). PART OF THE COLLATERAL DESCRIBED HEREIN IS OR IS TO BECOME FIXTURES ON THE REAL ESTATE DESCRIBED HEREIN. THE NAMES AND ADDRESSES OF THE GRANTOR/DEBTOR AND THE BENEFICIARY/SECURED PARTY ARE:

GRANTOR/DEBTOR

Salem Pointe Capital, LLC
Attn.: Michael D. Ayres
403 Rarity Bay Parkway
Vonore, Tennessee 37885

BENEFICIARY/SECURED PARTY

ORNL Federal Credit Union
Attn: Richard Bettis
2077 Town Center Blvd., Suite 203
Knoxville, Tennessee  37922

WITNESSETH:

WHEREAS, the Beneficiary has agreed to extend to the Grantor a loan (as amended, modified or restated, the "Loan") in the original principal amount of Six Million Five Hundred Thousand and No/100 Dollars ($6,500,000.00), as evidenced by a Promissory Note of even date

1

herewith, executed by the Grantor and made payable to the Beneficiary (as amended, modified or restated, the "Note"). The Note has a stated maturity date of November 2, 2030. The Note is delivered pursuant to the terms of a Loan Agreement of even date herewith between the Grantor and the Beneficiary (as amended, modified or restated, the "Loan Agreement"); and

WHEREAS, the Grantor intends to secure (i) the payment of the principal and interest on the Note, (ii) the payment of any and all other indebtedness which this Deed of Trust by its terms secures, (iii) the performance of the covenants and agreements of the Grantor contained in this Deed of Trust, the Loan Agreement and all other Loan Documents, and (iv) the payment and performance of any other indebtedness, liabilities or obligations, now existing or hereafter arising, due or to become due, absolute or contingent of the Grantor to the Beneficiary under or pursuant to the Loan Documents (such obligations referred to collectively hereinafter as the "Obligations"); and

WHEREAS, the Grantor owns the fee simple interest in certain real property (the "Land") lying and being in Loudon and Monroe County, Tennessee, more particularly described as set forth in Exhibit A attached hereto, made a part hereof and incorporated herein by reference; and

WHEREAS, the Grantor owns certain building and related improvements which are constructed on the Land (collectively, the "Improvements") (hereinafter, the Land and the Improvements are collectively referred to as the "Project");

NOW, THEREFORE, in consideration of the Loan and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby grants and conveys to the Trustee, to secure the Obligations, all of Grantor's rights, titles and interests in and to the Improvements, Land and the Project (such property referred to collectively hereinafter as the "Trust Estate");

TOGETHER with any and all improvements now or hereafter existing on the Land of any type or nature, any and all tangible or intangible property of the Grantor now owned or hereafter acquired, used in, arising out of or relating to the ownership, maintenance and operation of the Project, including, without limitation, (i) equipment, furniture, fixtures, office equipment, tools, trade fixtures, other tangible personal property, documents, instruments, accounts, inventory, chattel paper, software, general intangibles and proceeds (each of the foregoing shall be as defined in the UCC, (ii) architectural and engineering plans and specifications for the Project or any portion thereof, (iii) escrow accounts, insurance policies and business records as to the Project, (iv) contract rights related to the Project (including all declarant rights related to the Project and all income and accounts receivable related thereto) and (v) any funds, letters of credit or other property which are now or hereafter provided by the Grantor to assure the payment of any indebtedness secured by this Deed of Trust and the performance of all obligations of the Grantor under the Loan Documents (all such properties described in this paragraph referred to collectively hereinafter as the "Personal Property"); and

2

TOGETHER with all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part thereof, and all estate, rights (specifically including all of the declarant rights related to the Project and all income related thereto), titles, interests, minerals, royalties, easements, privileges, liberties, tenements, hereditaments and appurtenances, reversion or reversions, remainder and remainders whatsoever, in any way belonging, relating or appertaining to the Project or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Grantor; and

TOGETHER with all insurance policies, contracts, permits, licenses and plans now or hereafter pertaining to, affecting or concerning the Project and/or the Personal Property, including, without limitation, all rights accruing to the Grantor from any and all contracts with all contractors, architects, engineers, subcontractors or others relating to the design, development, construction, use, enjoyment, occupancy or operation of the Project, including performance and materialmen's bonds and any other related items; and

TOGETHER with all Proceeds (as defined in the UCC) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims including, without limitation, proceeds of insurance and condemnation awards;

TO HAVE AND TO HOLD the Trust Estate, with all the rights, privileges, hereditaments and appurtenances thereunto belonging or appertaining to the Trustee, his successors and assigns, in fee simple, upon the trusts and for the uses and purposes hereinafter set out; and the Grantor covenants with the Trustee that it is seized of the Land in fee simple and the Personal Property and Improvements in fee simple, and has the right to convey the same in leasehold or fee simple, as the case may be, that title is marketable and free and clear of all encumbrances except for the encumbrances described in the attached Exhibit B, and that it will warrant and defend the title to the same against the lawful claims of all persons whomsoever; provided, however, that

THIS CONVEYANCE IS MADE UPON THIS SPECIAL TRUST, that if the Grantor shall pay and perform the Note and all other Obligations secured hereby in accordance with their terms, together with interest thereon and all attorney's fees, court costs and expenses incident to the collection thereof and/or the enforcement or perfection of the lien of this conveyance, including advances made in accordance with the provisions of this Deed of Trust by the Beneficiary to protect or preserve the Trust Estate or the lien hereof, and shall comply with all the covenants, terms and conditions of this Deed of Trust, the Loan Agreement and all other Loan Documents to which it is a party, then this conveyance shall be null and void and may be canceled of record at the request and at the cost of the Grantor. The Note is incorporated herein by reference as fully as if set out herein verbatim. This Deed of Trust shall constitute a security agreement and a financing statement with respect to fixtures and personal property under the UCC.

Except as otherwise defined herein, all capitalized terms herein shall have the meanings set forth in the Loan Agreement.

Section 1. <u>Representations and Covenants of Grantor</u>.  The Grantor represents, warrants, covenants and agrees with the Trustee and the Beneficiary (and their respective successors and assigns) as follows:

(a)    <u>Title to Trust Estate</u>. The Grantor has a good and marketable fee simple interest in the Land and good and marketable fee simple title to the Personal Property and Improvements to the extent in existence as of the date hereof.

(b)    <u>Note Payments</u>. The Grantor shall make timely payments of principal and interest on the Note in the amounts, in the manner and at the place set forth therein, together with all other sums due thereunder and hereunder, when and as the same shall become due. This Deed of Trust secures payment of the Note according to its terms, which are incorporated herein by reference.

(c)    <u>Performance</u>. The Grantor shall perform and comply with the provisions of the Loan Documents applicable to it.

(d)    <u>Escrow Deposits</u>. Upon the occurrence of an Event of Default, the Grantor shall add to each monthly or other periodic payment required under the Note the amount estimated by the Beneficiary to be sufficient to enable the Beneficiary to pay, as they come due, all taxes, charges, assessments and insurance premiums which the Grantor is required to pay hereunder. Any deficiency occasioned by an insufficiency of such additional payments shall be forthwith deposited by the Grantor with the Beneficiary upon demand.

(e)    <u>Compliance with Laws</u>. The Grantor shall promptly comply with any applicable legal requirements of the State of Tennessee or other governmental entity, agency or instrumentality relating to the Trust Estate or any part thereof, or the Grantor's operations thereon.

(f)    <u>Grantor's Continuing Obligation</u>. The Grantor shall remain liable for full payment of the principal and interest on the Note and all other Obligations (or any advancement or obligation thereunder or hereunder), notwithstanding any or all of the following: (i) the sale of all or a part of the Trust Estate, (ii) the assumption by another party of the Grantor's obligations hereunder, (iii) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to the Grantor or a subsequent owner of the Trust Estate, or (iv) the release of all or any part of the Trust Estate securing such obligations or the release of any party who assumes payment of the same. None of the foregoing shall in any way affect the full force and effect of the lien of this Deed

4

of Trust or impair the Beneficiary's right to a deficiency judgment (in the event of foreclosure) against the Grantor or any party assuming the obligations hereunder.

(g)     Release of Collateral and Anti-Marshalling Provision.  The right is hereby given by the Grantor to the Trustee and the Beneficiary to make partial releases or releases of security hereunder (whether or not such releases are required by agreement among the parties) agreeable to the Trustee and the Beneficiary without notice to, or the consent, approval or agreement of other parties and interests, including junior lienors and purchasers subject to the lien of this Deed of Trust, which partial release or releases shall not impair in any manner the validity or priority of this Deed of Trust on the Trust Estate remaining hereunder, nor release the Grantor from personal liability for the indebtedness hereby secured. Notwithstanding the existence of any other security interests in the Trust Estate held by the Beneficiary or by any other party, the Beneficiary shall have the right to determine the order in which any or all of the Trust Estate shall be subjected to the remedies provided herein.  The Beneficiary shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein.  The Grantor and all other persons liable hereunder hereby waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

(h)     Transfer of Trust Estate or Interest in Grantor.  The Grantor shall not sell, convey, transfer, assign or encumber or permit any sale, conveyance, transfer, assignment or encumbrance of the Trust Estate or any part thereof or interest therein by operation of law or otherwise, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement.  The Grantor shall neither permit nor cause any sale, conveyance, transfer, encumbrance or assignment of any ownership interest in the Grantor, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement.  If applicable, the above prohibition shall not be deemed to apply to Grantor entering into one or more leases relating to the Improvements in the ordinary course of Grantor's business.

(i)     Uniform Commercial Code Security Agreement.  This Deed of Trust is intended by the parties hereto to be a security agreement with respect to any Personal Property and fixtures referred to herein, and the Grantor hereby grants, transfers and conveys to the Beneficiary a security interest in such Personal Property and fixtures.  The Grantor agrees that this Deed of Trust constitutes a financing statement and agrees that Beneficiary may file in all appropriate jurisdictions such financing statements, extensions or amendments as the Beneficiary may require from time to time to perfect or continue the perfection of a security interest with respect to such Personal Property and fixtures. Upon the occurrence of an Event of Default, the Beneficiary shall have, in addition to its other remedies, all rights

5

and remedies provided secured parties under the UCC. In accordance with the UCC, the notice requirements set forth herein shall be deemed to constitute reasonable notification to the Grantor of the exercise by the Beneficiary of its rights and remedies under the UCC.

(j)    Consent of Lessor. *Intentionally Omitted.*

(k)    Use of Trust Estate. Unless required by applicable law or unless the Beneficiary has otherwise agreed in writing, the Grantor shall not allow changes in the use for which all or any part of the Trust Estate was intended at the time this Deed of Trust was executed. The Grantor shall not initiate or acquiesce in a change in the zoning classification of the Trust Estate or any approved site plan or plan of development without the Beneficiary's prior written consent.

(l)    Books and Records. The Grantor shall keep and maintain at all times at the Grantor's address stated herein, or such other place as the Beneficiary may approve in writing, complete and accurate books of accounts and records adequate to reflect correctly the Grantor's financial condition and copies of all the written contracts, leases and other instruments which may affect the Trust Estate. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any time and from time to time as the Beneficiary may reasonably request. The Grantor shall furnish to the Beneficiary from time to time such financial information and reports, including without limitation federal and state tax returns, as Beneficiary may request, subject to the terms of the Loan Agreement.

(m)    Inspection. The Beneficiary may, at any time and from time to time, cause an inspection to be made of the Trust Estate or any part thereof by its representatives, and such representatives shall be permitted reasonable access to the Trust Estate and every part thereof. If any such inspection shows the reasonable need of restoration, repairs or maintenance and the Beneficiary makes written demand therefor, the Grantor shall proceed within thirty (30) days after such demand has been made to effect such restoration, repairs and maintenance and shall expeditiously complete the same in a good and workmanlike manner to the satisfaction of the Beneficiary.

(n)    No Wetlands. To the best of the Grantor's knowledge, no portion of the Land is located in (i) an area defined, designated or identified as a wetland by any regulatory agency having jurisdiction over the wetlands, including, but not limited to, the U.S. Army Corps of Engineers, the U.S. Environmental Protection Agency or the U.S. Department of the Interior or any applicable local wetlands board, or (ii) a buffer area of such a wetland. Neither the Grantor nor any other party has created, destroyed, dredged, filled, drained or otherwise altered any wetlands as

6

defined or identified by the U.S. Army Corps of Engineers (or other regulatory agency having jurisdiction over wetlands) or other regulated areas on the Land.

The Grantor's obligations hereunder shall not be limited to any extent by the term of the Note and other Obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of the Note and other Obligations which gives rise to liability hereunder, the Grantor's obligations hereunder shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of the Note and other Obligations and performance under this Deed of Trust or foreclosure under this Deed of Trust, or delivery of a deed in lieu of foreclosure.

Section 2. <u>No Merger</u>. Unless the Beneficiary shall otherwise expressly consent in writing, the fee title to the Improvements and the Estate shall not merge, but shall always remain separate and distinct, notwithstanding the union of the aforesaid estates in the Grantor as lessee or a third party by purchase or otherwise. In the event the fee title to the Improvements and the Estate shall merge notwithstanding the terms of this Deed of Trust, the lien of this Deed of Trust shall, <u>ipso</u> <u>facto</u>, without the necessity of any further conveyance, simultaneously with such acquisition, be spread to cover such acquired estate and as so spread shall be prior to the lien of any deed of trust or any mortgage placed on the acquired estate subsequent to the date of this Deed of Trust.

Section 3. <u>Maintenance, Operation and Modification of Trust Estate</u>.

(a)     The Trustee shall not be under any obligation to operate, maintain or repair the Trust Estate or any portion thereof. The Grantor agrees that until payment of the Note and all other Obligations shall be made it will at its own expense (i) use, maintain and operate the Trust Estate, or cause it to be used, maintained and operated, in accordance with applicable laws, rules and regulations, (ii) keep the Trust Estate or cause it to be kept in as reasonably safe condition as similar properties, (iii) keep the Trust Estate or cause it to be kept in good repair and in good operating condition subject to ordinary wear and tear and obsolescence, free and clear of all encumbrances except those permitted hereunder, and (iv) make or cause to be made from time to time all necessary repairs thereto and renewals and replacements thereof. The Grantor shall not permit or suffer others to commit a nuisance in connection with its use or occupancy of the Trust Estate.

(b)     The Grantor may, also at its own expense, make from time to time any additions, modifications or improvements to the Trust Estate that it may deem desirable for its business purposes and that do not materially impair the effective use, or materially decrease the value, of the Trust Estate. All such additions, modifications and improvements so made by the Grantor within the boundaries of the Trust Estate shall become a part of the Trust Estate.

**Section 4.** <u>Taxes, Other Governmental Charges, Utility Charges</u>. Before delinquency the Grantor shall pay or cause to be paid, all taxes and governmental charges of any kind whatsoever that may be lawfully assessed, levied or imposed with respect to the Trust Estate. The Grantor shall pay or cause to be paid as the same become due all utility and other charges incurred in the operation, maintenance, use and occupancy of the Trust Estate and all assessments and charges lawfully made by any governmental body for public improvements to the Trust Estate. The Grantor may allow to exist any indebtedness for any such tax, assessment, charge, levy or claim, provided any such tax, assessment, charge, levy or claim is being contested in good faith by appropriate proceedings and the Grantor shall have established and maintained adequate reserves for the payment of the same.

**Section 5.** <u>Environmental Representations and Covenants</u>

    (a)    To the best of Grantor's knowledge, the Land is free from reportable quantities of Hazardous Substances (hereinafter defined), and no portion of the Land would subject the Grantor to liability under any applicable federal, state or local law, rule or regulation pertaining to Hazardous Substances or the environment (collectively, "Environmental Laws") because of the presence of stored, leaked or spilled Hazardous Substances, or the past or present accumulation, spillage or leakage of any such Hazardous Substance, nor has the Grantor arranged for disposal or treatment (or arranged with a transporter for transport for disposal or treatment) of any such substance to any other location except in compliance with Environmental Laws. The Grantor has received no notice from the Environmental Protection Agency or any other governmental authority alleging that it is a "responsible party" with respect to any of the foregoing. For purposes hereof, "Hazardous Substances" means all waste materials and toxic substances subject to regulation or defined as such under the Comprehensive Environmental Response, Compensation, and Liability Act as modified by the Superfund Amendments and Reauthorization Act of 1986, the Resource Conservation and Recovery Act, the Clean Air Act, the Federal Water Pollution Control Act, the Toxic Substances Control Act, or any other applicable federal, state or local laws, rules or regulations now in force or hereafter enacted (including, without limitation, Environmental Laws) relating to hazardous waste disposal, storage or treatment or environmental conservation.

    (b)    The Grantor shall remain in compliance in all material respects with the provisions of all Environmental Laws and shall notify the Beneficiary immediately of any notice of a hazardous discharge from or about the Trust Estate or any environmental complaint received from any governmental authority or any other person.

    (c)    In the event of any such discharge or complaint described in (b) above, the Grantor shall immediately contain and/or remove the same, in compliance with all applicable Environmental Laws, and permit the Beneficiary to inspect the Trust Estate, to conduct tests thereon, and to inspect all books, correspondence and

8

records pertaining thereto, and at the Beneficiary's request, and at the Grantor's expense, provide a report of a qualified environmental engineer satisfactory in scope, form, and contents to the Beneficiary, and such other and further assurances reasonably satisfactory to the Beneficiary that the condition or complaint has been corrected.

(d)     The Grantor shall indemnify and hold the Beneficiary harmless from and against any and all damages (including punitive damages), penalties, fines, claims, liens, suits, liabilities, costs (including clean-up and remediation costs), judgments and expenses (including attorneys', consultants', or experts' fees and expenses) of every kind and nature suffered by or asserted against the Beneficiary (collectively, the "Damages") as a direct or indirect result of any warranty or representation made by the Grantor in this Section 8 being false or untrue in any respect or of any requirement under any Environmental Law, which requires the elimination, disposal, treatment or removal of any Hazardous Substances or other environmentally regulated substances by the Beneficiary, the Grantor or any transferee of the Grantor or the Beneficiary.

The Grantor's obligations and indemnifications hereunder shall not be limited to any extent by the term of the Note and other Obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of the Note and other Obligations or termination of the Loan Agreement which gives rise to liability hereunder (or, if earlier, foreclosure, deed in lieu or release of this Deed of Trust), the Grantor's obligations and indemnifications hereunder shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of the Note or termination of the Loan Agreement and release of this Deed of Trust or foreclosure under this Deed of Trust, or delivery of a deed in lieu of foreclosure.

Section 6. Insurance. The Grantor shall continuously maintain, or as applicable, cause to be maintained, insurance against such risks as are customarily insured against by businesses of like size and character, paying (or causing to be paid, as applicable) as the same become due all premiums in respect thereto, including without limitation the following insurance which shall be maintained with respect to the Trust Estate:

(a)     Insurance in the amount equal to the greater of the outstanding balance due on the Note or one hundred percent (100%) of the full replacement cost of any Improvements and all Personal Property, against loss or damage with broad form, all risk or extended coverage including damage by fire, lightning, windstorm, explosion, aircraft, smoke, sprinkler leakage, vandalism, malicious mischief and such other risks as are normally included within such coverage (limited only as may be provided in the standard form for such coverage at the time in use in the State of Tennessee), provided that during the period of acquisition, construction and equipping of the Improvements and the Personal Property, the Grantor may provide or cause to be provided in lieu of the insurance set forth above a builders'

9

risk or similar type of insurance in the amount of the full replacement cost thereof minus site work not normally insured;

(b)    Public liability insurance, covering all liabilities incident to the ownership, possession, occupancy and operation of the Trust Estate and naming Beneficiary as an additional insured thereunder, having limits for each accident, each person, and for property damage in such amounts and with such deductibles as are reasonably satisfactory to the Beneficiary;

(c)    Workers' compensation insurance in accordance with applicable requirements of law;

(d)    Use and occupancy or business interruption insurance to the extent necessary to insure payments under the Note in the event of damage to or destruction of the Improvements and the Personal Property for a period of one year next succeeding such damage or destruction;

(e)    Insurance in the amount of the full replacement cost of the Trust Estate against loss or damage by flood, unless the Grantor shall present evidence reasonably satisfactory to the Beneficiary that the Land is not located in a flood hazardous or flood prone area, as defined in the National Flood Insurance Act of 1968, as amended; and

(f)    Additional types of insurance in such amounts and coverages and against such other insurable hazards or risks as are customarily insured against in the case of properties similar in nature and use as the Trust Estate or as may from time to time be required by the Beneficiary.

Any determination of replacement cost required by this Section shall be made by a recognized appraiser or insurer acceptable to the Beneficiary.

Section 7.    <u>Additional Provisions Respecting Insurance</u>.

(a)    All insurance shall be taken out and maintained with generally recognized responsible insurance companies qualified to do business in the State of Tennessee selected and/or approved, as applicable, by the Grantor and acceptable to the Beneficiary and may be written with deductible amounts comparable to those on similar policies carried by other businesses of like size and character.

(b)    In the event of any loss, the Grantor shall give immediate notice thereof to the Beneficiary. The policies of insurance required by Section 9 shall be satisfactory in form and substance to the Beneficiary and shall contain New York Standard Mortgagee Long-Form Loss Payable clauses naming the Beneficiary as mortgagee or loss payee and requiring that all net proceeds resulting from any

10

claim in excess of $10,000 be paid to the Beneficiary, and the insurance proceeds for such claims or any part thereof may be applied by the Beneficiary at its option upon notice to the Grantor to the indebtedness hereby secured or for the repair or restoration of the Trust Estate, subject however in all instances to the provisions of Section 11 below. If the insurance proceeds are applied to the indebtedness secured hereby, it may be applied in such manner as the Beneficiary may desire upon notice to the Grantor.

(c)     The Grantor shall not permit any condition to exist on the Trust Estate which would wholly or impartially invalidate the insurance thereon. The Beneficiary, on behalf of the Grantor, may adjust and compromise any claims under such insurance policies and collect and receive the proceeds thereof and is hereby irrevocably appointed attorney-in-fact for the Grantor for such purposes, and may deduct from the proceeds any expenses reasonably incurred by the Beneficiary. This power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked. Each policy shall contain an undertaking by the insurer that such policy shall not be modified adversely to the interests of the Beneficiary or canceled without at least thirty (30) days' prior notice to the Beneficiary.

(d)     All such policies shall be deposited with the Beneficiary, provided that in lieu of such policies there may be deposited with the Beneficiary a certificate or certificates of the respective insurers attesting the fact that the insurance required by this Section and Section 9 are in full force and effect. The coverages under the foregoing builder's risk or hazard insurance policy shall be in an amount sufficient to prevent the Grantor or the Beneficiary from becoming a co-insurer within the terms of the applicable policies. If requested by the Beneficiary, the Grantor shall furnish to the Beneficiary prior to the date hereof, and annually thereafter a certificate of a person selected by the Grantor and knowledgeable in the insurance business who is not an officer, a partner, a member or employee, as applicable, of the Grantor, reciting that all policies required to be in effect at that time are in full force and effect and that the amounts and types of insurance evidenced thereby comply with and satisfy all the requirements of this Section.

Section 8.  Damage, Destruction, Condemnation, Loss of Title and Application of Proceeds.

(a)     In case of any material damage to or destruction of any part of the Improvements, the Grantor shall give prompt notice thereof to the Beneficiary. In case of a taking of all or any part of the Project or any right therein under the exercise of the power of eminent domain or any loss thereof because of failure of title thereto or the commencement of any proceedings or negotiations which might result in such a taking or loss, the Grantor shall give prompt notice to the Beneficiary. Each such notice shall describe generally the nature and extent of such damage, destruction, taking, loss, proceeding or negotiation.

11

(b)     Unless the Grantor shall have exercised its option to prepay the Note, if (i) the Land or the Improvements or any portion thereof are damaged or destroyed or (ii) title to or any interest in, or the temporary use of, the Land or the Improvements or any part thereof shall be taken under the exercise of the power of eminent domain, or sold in lieu thereof, or loss of title has occurred, the Grantor shall be obligated to continue to make payments hereunder, under the Note and all other Obligations.

(c)     Upon written request of the Beneficiary, the net proceeds of any insurance (including title insurance) or condemnation award resulting from any event described heretofore in this Section shall be deposited in a separate trust fund to be held by the Beneficiary. So long as no Event of Default has occurred, all net proceeds whether or not so deposited in a separate trust fund shall be applied in one or more of the following ways as shall be elected by the Grantor in a written notice to the Beneficiary:

   (i)     To the prompt repair, restoration, modification or improvement of the Trust Estate. In the event such net proceeds are deposited in a separate trust fund held by the Beneficiary, such disbursements shall be made by the Beneficiary only upon receipt of proper requisitions therefor. Any balance of the net proceeds remaining after such work has been completed shall be applied in accordance with clause (ii) below, or if the Note and all other Obligations has been fully paid, any balance remaining in such separate trust fund shall be paid immediately to the Grantor.

   (ii)    To the immediate prepayment of the Note, provided that no part of such net proceeds may be applied for such prepayment unless (A) the Note is to be prepaid in whole or (B) in the event that the Note is to be prepaid in part, the Grantor shall furnish to the Beneficiary a certificate of an authorized representative of the Grantor stating that (1) the property forming the part of the Trust Estate that was damaged or destroyed or was taken or to which title was lost is not essential to the use of the remaining Trust Estate by the Grantor or (ii) the Trust Estate (or such portion thereof) has been repaired, restored, modified or improved to operate as designed.

(d)     If the net proceeds are insufficient to pay in full the cost of any repair, restoration, modification or improvement referred to heretofore, the Grantor will nonetheless complete the work and will pay any cost in excess of the amount of the net proceeds received. The Grantor agrees that if by reason of any such insufficiency of the net proceeds, the Grantor shall make any payments pursuant to the provisions of this Section, the Grantor shall not be entitled to any reimbursement therefor from the Beneficiary, nor shall the Grantor be entitled to any diminution of the amounts payable hereunder, under the Note or other Obligations.

12

Section 9. <u>Grantor to Furnish Proof of Payment of Taxes, etc</u>. The Grantor shall furnish the Beneficiary, upon written request, proof of payment of any taxes, governmental charges, utility charges, insurance premiums or other charges required to be paid by the Grantor (or, as applicable, such other Person in possession) under this Deed of Trust.

Section 10. <u>Grant and Release of Easements</u>. If no Event of Default shall have occurred and be continuing, the Grantor may at any time or times grant easements, licenses, rights of way and other rights or privileges in the nature of easements with respect to any part of the Trust Estate and the Grantor may release existing interests, easements, licenses, rights of way and other rights or privileges with or without consideration and the Beneficiary agrees that it shall execute and deliver, all at the expense of the Grantor, and will cause, request or direct the Trustee to execute and deliver, as applicable, any instrument necessary or appropriate to grant or release any such interest, easement, license, right of way or other right or privilege, but only upon receipt of (a) a copy of the instrument of grant or release, (b) a written application signed by an authorized representative of the Grantor, requesting the execution of such instrument, and (c) a certificate executed by an authorized representative of the Grantor, stating that such grant or release (i) is not detrimental to the proper conduct of the operations of the Grantor at the Trust Estate and (ii) will not impair the effective use of or interfere with the operations of the Grantor at the Trust Estate and will not impair the security for the Note under this Deed of Trust or the Loan Agreement in contravention of the provisions hereof or thereof.

Section 11. *Intentionally omitted.*

Section 12. <u>Assignment of Leases</u>. (a) The Grantor hereby assigns, transfers and conveys unto the Beneficiary all right, title and interest of the Grantor in and to all leases, subleases and demises of tenancy, whether now existing or hereafter created of the Trust Estate (all such leases, subleases, rents and demises of tenancy being referred to herein collectively as the "Leases"), together with all rents, income and profits to be had or derived therefrom, all benefits of any and all guaranties thereof and all extensions and renewals of the term of any thereof, together with all right, title and interest of the Grantor in and pursuant to the Leases, including without limitation the present and continuing right to make claim for, collect, receive and receipt for any of the rents, income and profits and any other sums of money payable or receivable under the Leases, to bring actions and proceedings thereunder for the enforcement thereof, and to do any and all things which the Grantor under the Leases is or may become entitled to.

(b) The assignment made by this Section is conditional, and so long as no Event of Default hereunder has occurred and is continuing, the Grantor shall have the right and privilege to collect, consume, use and enjoy the rents, income and profits from the Leases without the necessity of any person(s) assuring the application of such rents, income and profits to the Obligations or the interests of the Beneficiary hereunder, <u>provided</u> <u>that</u>, such rights reserved unto the Grantor hereunder shall not prejudice nor operate as a waiver of any right, privilege, or

13

interest of the Beneficiary to have and derive all future rents, income and profits arising under the Leases from and after the occurrence of an Event of Default.

(c)    The Grantor further covenants, represents, warrants and agrees that:

(i)    Upon written request of the Beneficiary, the Grantor shall furnish to the Beneficiary a true copy of any Lease. The Grantor shall perform all covenants and agreements on its part to be performed under each Lease so as not to permit a cancellation thereof and shall not make any other assignment, pledge or other disposition of any Lease or any of the rents, income and profits receivable thereunder, nor make any material change with respect to the computation of rent due under any Lease, nor modify, alter or amend materially any Lease, nor reduce any rent nor shorten the term or otherwise adversely affect in any other respect to any material extent the rights of the Grantor or the Beneficiary thereunder, nor consent to an assignment or Lease of the lessee's or tenant's interest thereunder, without having obtained the prior consent of the Beneficiary.

(ii)    The Leases in existence as of the date of this Deed of Trust are valid, in full force and effect, evidence fully the entire agreement between the Grantor, as landlord, and the respective lessees and tenants under the Leases, and have not been the subject of any prior assignment, pledge or disposition by the Grantor.

(iii)    As of the date of this Deed of Trust, to the knowledge of the Grantor, (A) there exists no default by the Grantor or by any lessee or tenant under any provision of the Leases, (B) no rents, income or profits payable thereunder have been, or will hereafter be, anticipated or discounted, and (C) the lessees and tenants under the Leases have no defenses, rights of setoff or counterclaims against the Grantor.

(iv)    The Grantor shall not undertake or assume for or on behalf of the Beneficiary any covenant, obligation, duty or liability in respect to the Leases, and in no event shall the Grantor have any power or authority to bind the Beneficiary to any covenant or agreement with respect to any leasehold interest in the Trust Estate or in any manner to represent the Beneficiary as the Beneficiary's agent.

(d)    Upon the occurrence and continuation of an Event of Default, the Beneficiary shall have the right, authority and power at its sole option, (i) to enter upon, and take possession of, the Trust Estate, (ii) to collect the rents, income and profits under the Leases, (iii) to exercise all of the rights and privileges of the Grantor thereunder, and (iv) until foreclosure of this Deed of Trust, to apply the net rentals and income, after payment of all proper costs and charges, to the sums due the

14

Beneficiary under the terms of the Loan Documents in such manner as the Beneficiary, in its sole discretion, may determine. Such entry in taking possession of the Trust Estate may be made by actual entry upon the Trust Estate, or, constructively, by written notice served either personally or by registered mail upon the Grantor and any lessees under the Leases or tenants in possession of the Trust Estate, and no further authorization shall be required. If the Beneficiary shall exercise the rights and remedies afforded it under this subsection, and the Grantor shall thereafter cure any such default, of which fact the judgment of the Beneficiary shall be conclusive, the Grantor and the Beneficiary shall be restored to their respective rights and estates hereunder as if no default had occurred.

(e) In the event of foreclosure under this Deed of Trust, without regard to the judicial or nonjudicial nature of any such foreclosure, the Beneficiary shall have the right to assign, sell, transfer or convey, with or without consideration, its rights as assignee of the Leases to any person(s) claiming title to the Trust Estate or any part thereof by virtue of the foreclosure proceedings, and no such proceedings shall operate to terminate the Leases or otherwise excuse any lessees or tenants from their obligations to pay rent or perform and observe the covenants of their leasehold.

(f) A demand on any lessee or tenant under the Leases by the Beneficiary for the payment to the Beneficiary of any sum due the Grantor under any Lease or otherwise upon any default of the Grantor and the exercise by the Beneficiary of its rights and remedies hereunder shall be sufficient to warrant any such lessee or tenant to make such payment to the Beneficiary without the necessity for further consent by the Grantor and after the occurrence of an Event of Default, the Grantor hereby grants the Grantor's power of attorney to the Beneficiary for such purpose, said power being coupled with an interest and irrevocable for the term hereof. The Beneficiary shall not be liable for any loss sustained by the Grantor or any other person relative to the Trust Estate before or after default or from any act or omission of the Beneficiary while in possession of the Trust Estate, except for loss arising from the Beneficiary's willful misconduct or gross negligence, nor shall the Beneficiary be obligated to perform or discharge any obligation, duty or liability relative to the Trust Estate or any portion thereof or to the maintenance or operation of same under or by reason of this assignment. This assignment shall not operate to place responsibility for the control, care, management or repair of the Trust Estate, nor the carrying out of any of the terms and conditions of any Lease, on the Beneficiary.

(g) IT IS EXPRESSLY A CONDITION AND COVENANT OF THIS ASSIGNMENT AND THE ENTRY OF ANY PERSON UPON THE TRUST ESTATE, IN ANY CAPACITY WHATSOEVER, INCLUDING, BUT WITHOUT WAY OF LIMITATION, ANY LESSEE OR TENANT UNDER THE LEASES, THAT THE BENEFICIARY SHALL HAVE NO

15

RESPONSIBILITY OR LIABILITY FOR ANY WASTE COMMITTED ON THE TRUST ESTATE, OR FOR ANY NEGLIGENCE IN THE MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE TRUST ESTATE BY THE GRANTOR RESULTING IN LOSS, INJURY OR DEATH TO ANY SUCH PERSON. THE RIGHT, TITLE AND INTEREST OF THE BENEFICIARY HEREUNDER ARE CONDITIONAL, AND THE BENEFICIARY SHALL BE DEEMED, AND HAVE THE RIGHTS OF AND PROTECTIONS AFFORDED, A MORTGAGEE NOT IN POSSESSION OF THE TRUST ESTATE UNTIL SUCH EVENT AS THE BENEFICIARY IS IN ACTUAL POSSESSION, MANAGEMENT AND CONTROL THEREOF.

(h)     Upon payment of the Note and all other Obligations and the performance and observance of the provisions hereof, this assignment shall cease and terminate and all of the right, title, interest, claim and demand of the Beneficiary in the Leases shall revert to the Grantor or to such other person as may be legally entitled thereto, and the Beneficiary shall at the request of the Grantor or any such person deliver to the Grantor or any such person an instrument, in recordable form if requested, canceling and discharging such assignment.

Section 13.   Events of Default, Remedies Upon Default.

(a)     An "Event of Default" hereunder shall occur:

(i)     if the Grantor shall fail to make any payment of principal or interest with respect to the Note or any of the Obligations on the due date thereof, whether at maturity, by notice to prepay or otherwise (and after the expiration of any applicable grace or cure period);

(ii)    if the Grantor shall fail to observe and perform any other covenant, condition or agreement on the part of the Grantor under this Deed of Trust for a period of thirty (30) days after notice, specifying such failure and requesting that it be remedied, is given to the Grantor by the Beneficiary, unless the Beneficiary shall agree in writing to an extension of such time prior to its expiration, or in the case of any such default that cannot be cured within such thirty (30) day period, if the Grantor shall fail to proceed promptly to cure the same and thereafter prosecute the curing of the same with due diligence; or

(iii)   if an Event of Default under the Loan Agreement shall occur after the expiration of any applicable grace or cure period.

16

(b)     Upon the occurrence and continuation of an Event of Default, the Beneficiary may declare all payments under the Note and all other Obligations to be immediately due and payable in an amount sufficient to pay all the principal of and premium, if any, and accrued interest on the Note and all such other Obligations, whereupon the same shall become immediately due and payable.

(c)     All rights of action under this Deed of Trust or in respect of the Note or any other Loan Document, if permitted by applicable law, may be enforced by the Beneficiary without the production of the Note, this Deed of Trust or any other Loan Document at any trial or other proceeding relating thereto.  The Beneficiary shall have the right to enter upon the Trust Estate to such extent and as often as the Beneficiary, in its sole discretion, deems necessary or desirable in order to cure any default by the Grantor.  In the event of an uncured default, the Beneficiary may take possession of all or any part of the Trust Estate together with the books, papers and accounts of the Grantor pertaining thereto and may hold, operate and manage the same, and from time to time make all needful repairs and improvements as shall be deemed expedient by the Beneficiary; and the Beneficiary may lease any part of the Trust Estate in the name of and for the account of the Grantor and collect, receive and sequester the rent, revenues, receipts, earnings, income, products and profits therefrom, and out of the same and from any moneys received from any receiver of any part thereof pay, and set up proper reserves for the payment of, all proper costs and expenses of so taking, holding and managing the same, including reasonable compensation to the Beneficiary, its agents and counsel, and any charges of the Beneficiary hereunder, and any taxes and assessments and other charges prior to the lien of this Deed of Trust which the Beneficiary may deem it proper to pay, and all expenses of such repairs and improvements, and apply the remainder of the moneys so received in accordance with the provisions hereof.

(d)     The Beneficiary shall have the right, upon the occurrence and continuation of an Event of Default, to the appointment of a receiver to collect the rents and profits from the Trust Estate without consideration of the value of the premises or the solvency of any person liable for the payment of the amounts then owing, and all amounts collected by the receiver shall, after expenses of the receivership, be applied to the payment of the indebtedness hereby secured, and the Beneficiary, at its option, in lieu of an appointment of a receiver, shall have the right to do the same.  If such receiver should be appointed or if there should be a sale of the Trust Estate, as provided below, the Grantor, or any person in possession of the Trust Estate, as tenant or otherwise, shall become a tenant at will of the receiver or of the purchaser and may be removed by a writ of ejectment, summary ejectment or other lawful remedy.

(e)     Upon the occurrence and continuation of an Event of Default, the Beneficiary shall have the right to assign to any other person, for lawful consideration, any

17

rents, revenues, earnings, income, products and profits receivable under this Deed of Trust, provided that the proceeds of any such assignment shall be applied as provided in this Deed of Trust.

(f)    Upon the occurrence and continuation of an Event of Default, the Trustee is hereby authorized and empowered, upon application of the Beneficiary, to expose to sale the Trust Estate at public auction for cash, after first having complied with all applicable requirements of Tennessee law with respect to the exercise of powers of sale contained in deeds of trust, to enter and take possession of the Trust Estate and before or after such entry to advertise the sale of the Trust Estate for twenty-one days by three weekly notices in some newspaper published in Loudon County, Tennessee, and sell the Trust Estate for cash to the highest bidder, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, and all other exemptions now or hereafter available, all of which are hereby expressly waived; and the Trustee shall execute a conveyance to the purchaser in fee simple, and deliver possession to the purchaser, which the Grantor binds itself shall be given without obstruction, hindrance or delay. The Grantor further hereby authorizes the Beneficiary to take whatever marketing activities are deemed reasonable by the Beneficiary to sell or lease the Trust Estate and agrees to cooperate with the Beneficiary or its representatives in such sale and lease efforts, including but not limited to entering into a marketing, sale or lease agreement for the sale or lease of the Trust Estate satisfactory to the Beneficiary in its reasonable judgment.

The Trustee may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may without further notice, be made at the time and place to which it is so adjourned. The Trustee may offer for sale in any order interests comprising the Trust Estate separately or together as an entire interest. The sale or lease of a part of the Trust Estate shall not affect the lien conveyed to the Beneficiary by the Grantor in this Deed of Trust encumbering the remaining Trust Estate.

The Grantor agrees that in the event of a sale or further lease hereunder the Beneficiary shall have the right to bid thereat and to become the purchaser. The Trustee may require the successful bidder at any sale to deposit immediately with the Trustee cash or a certified check in an amount determined by the Trustee, provided notice of such requirement is contained in the advertisement of the sale. The bid may be rejected if the deposit is not immediately made and thereupon the next highest bidder may be declared to be the purchaser. The sale of the Trust Estate or any part thereof or any interest therein, whether pursuant to foreclosure, power of sale or otherwise under this Deed of Trust, shall, to the extent permitted by law, forever bar any claim with respect to the Trust Estate by the Grantor.

18

(g)     If upon the occurrence and continuation of an Event of Default, the Beneficiary may exercise in addition to all other rights and remedies granted to it in this Deed of Trust and in any other instrument or agreement securing, evidencing or relating to the Loan, all rights and remedies of a secured party under the UCC.

(h)     Without limiting the generality of the foregoing, the Grantor expressly agrees that in any such event the Beneficiary, without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of time and place of public or private sale) to or upon the Grantor or any other person (all and each of which demands, advertisements and/or notices are hereby expressly waived), may forthwith collect, receive, appropriate and realize upon the collateral in the Trust Estate governed by the UCC (the "UCC Collateral") or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or sell or otherwise dispose of and deliver such UCC Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange broker's board or at any of the Beneficiary's offices or elsewhere at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Beneficiary shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the UCC Collateral so sold, free of any right or equity of redemption in the Grantor released.

The Grantor further agrees, at the Beneficiary's request, to assemble the UCC Collateral, make it available to the Beneficiary at places which the Beneficiary shall select which shall be reasonably convenient to the Beneficiary and the Grantor, whether at the Grantor's premises or elsewhere. The Beneficiary shall, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care, safekeeping or otherwise of any or all of the UCC Collateral or in any way relating to the rights of the Beneficiary hereunder, including reasonable attorneys' fees and legal expenses, apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale to the payment in whole or in part of the Note and all other Obligations, in such order as the Beneficiary may elect, the Grantor remaining liable for any deficiency remaining unpaid after such application, and only after so paying over such net proceeds and after the payment by the Beneficiary of any other amount required by any provision of law, including Section 9-608 of the UCC, need the Beneficiary account for the surplus, if any, to the Grantor.

To the extent permitted by applicable law, the Grantor waives all claims, damages, and demands against the Beneficiary arising out of the repossession, retention or sale of the UCC Collateral. The Grantor agrees that the Beneficiary need not give more than ten (10) days' prior notice (which notification shall be deemed given when mailed, postage prepaid, addressed to the Grantor at its

19

address set forth hereinafter) of the time and place of any public sale or of the time after which a private sale may take place with respect to UCC Collateral and that such notice is reasonable notification of such matters.

(i) The Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Trust Estate are insufficient to pay all amounts to which the Beneficiary is entitled, the Grantor also being liable for the fees of any attorneys employed by the Beneficiary to collect such deficiency.

(j) The Grantor hereby waives, to the fullest extent it lawfully may, the benefit of all appraisement, valuation, stay, moratorium, exemption from execution, extension and redemption laws and any statute of limitations, now or hereafter in force, and all rights of marshalling in the event of the sale of the Trust Estate or any part thereof or any interest therein.

(k) The Beneficiary and the Trustee (with the permission of the Beneficiary) may grant any extension, forbearance or other indulgence, may release any part of the Trust Estate from the lien hereof and may release any person from liability without affecting the personal liability of any person liable for payment of the indebtedness secured hereby or the lien hereof.

(l) The foregoing shall in no way be construed to limit the powers of sale or to restrict the discretion the Beneficiary or the Trustee may have under the provisions of Tennessee law, as the same may be from time to time amended. Each legal, equitable or contractual right, power or remedy of the Beneficiary or the Trustee now or hereafter provided herein or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power and remedy, and the exercise or beginning of the exercise by the Beneficiary or the Trustee of any one or more of such rights, powers and remedies shall not preclude the simultaneous or later exercise of any or all such other rights, powers and remedies.

(m) If the indebtedness secured hereby is now or hereafter further secured by chattel mortgages, deeds of trust, security agreements, pledges, contracts of guaranty, assignments of leases, or other security, the Beneficiary may, at its option, exhaust its remedies under any one or more of said security instruments, and this Deed of Trust, either concurrently or independently, and in such order as the Beneficiary may determine. The exercise of any rights under any of said security instruments shall not constitute a release or waiver of rights under any other security instruments.

Section 14. Application of Proceeds: The proceeds of (a) the operation and management of the Trust Estate, (b) any sale of a part of the Trust Estate or any interest therein, whether pursuant to foreclosure, power of sale or otherwise, and (c) any insurance policies or condemnation awards

20

or other sums received by the Trustee after the occurrence of an Event of Default shall be applied to pay:

First: The costs and expenses of sale, reasonable attorneys' fees, the Trustee's commissions, court costs and any other expenses or advances made or incurred in the protection of the rights of the Beneficiary or the Trustee or in the pursuance of any remedies hereunder;

Second: Any lien prior to the lien of this Deed of Trust which the Beneficiary or the Trustee may consider necessary or desirable to discharge;

Third: Any indebtedness secured by this Deed of Trust and at the time due and payable (whether by acceleration or otherwise), including all amounts of principal and interest at the time due and payable with respect to the Note; and

Fourth: The balance, if any, to the persons then entitled thereto under the Loan Agreement or applicable law.

Section 15. Payment of Costs, Attorneys' Fees and Expenses. Upon the occurrence of an Event of Default, the Grantor shall pay any and all reasonable costs, attorneys' fees and other expenses of whatever kind incurred by the Beneficiary or the Trustee in connection with (a) obtaining possession of the Trust Estate, (b) the protection and preservation of the Trust Estate, (c) the collection of any sum or sums secured hereby, (d) any litigation involving the Trust Estate, this trust, any benefit accruing by virtue of the provisions hereof, or the rights of the Trustee or the Beneficiary hereunder, (e) the presentation of any claim under any administrative or other proceeding in which proof of claim is required by law to be filed, (f) any additional examination of the title to the Trust Estate which may be reasonably required by the Beneficiary or the Trustee, or (g) taking any steps whatsoever in enforcing this Deed of Trust, in claiming any benefit accruing by virtue of the provisions hereof, or in exercising the rights of the Beneficiary hereunder or the Trustee.

Section 16. Advances by Beneficiary. The Beneficiary is authorized, for the account of the Grantor, to make any required payments under any lien prior hereto, or under this Deed of Trust, the non-payment of which would constitute a default, including but not limited to payments on the Note and payments of taxes and insurance premiums. All sums so advanced shall bear interest from the date of the advance to the date of repayment at the highest rate provided for in the Note, shall attach to and become part of the Obligations secured hereby, and shall become payable at any time on demand therefor. The failure by the Grantor to make payment after demand shall, at the option of the Beneficiary, constitute an Event of Default hereunder.

Section 17. The Trustee.

(a) The Trustee shall be under no duty to take any action hereunder except as expressly required, or to perform any act which would involve him in expense or

21

liability or to institute or defend any suit in respect hereof, unless properly indemnified to his satisfaction.

(b)     All reasonable expenses, charges, counsel fees and other disbursements incurred by the Trustee in and about the administration and execution of the trusts hereby created, and the performance of his duties and powers hereunder, shall be secured by this Deed of Trust prior to the indebtedness represented by the Note, and shall bear interest at the highest rate provided for in the Note. The Beneficiary shall at any time have the irrevocable right to remove the Trustee herein named without notice or cause and to appoint his successor by an instrument in writing, duly acknowledged, in such form as to entitle such written instrument to be recorded in the State of Tennessee and in the event of the resignation of the Trustee herein named, the Beneficiary shall have the right to appoint his successor by such written instrument, and any successor Trustee so appointed shall be vested with title to the Trust Estate, and shall possess all the powers, duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though named herein as Trustee. The Trustee shall be clothed with full power to act when action hereunder shall be required, and to execute any conveyance of the Trust Estate required or permitted hereby. Any requirement that the Trustee, or any successor in trust, make oath or give bond, is expressly waived. The Trustee, or anyone acting in his stead, shall have, in his discretion, authority to employ all proper agents and attorneys in the execution of this trust and/or in the conducting of any sale made pursuant to the terms hereof, and to pay for such services rendered out of the proceeds of the sale of the Trust Estate, should any be realized; and if no sale be made then the Grantor hereby undertakes and agrees to pay the cost of such services rendered to the Trustee.

Section 18.    General Indemnity by Grantor.

(a)     The Grantor shall indemnify, save, and hold harmless the Beneficiary and its directors, officers, agents, attorneys, and employees (collectively, the "Indemnitees") from and against: (i) any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any person if the claim, demand, action, or cause of action directly or indirectly relates to a claim, demand, action, or cause of action that the person asserts or may assert against Grantor, any affiliate of Grantor or any officer, director, partner, member or shareholder of Grantor, as applicable, (ii) any and all claims, demands, actions or causes of action that are asserted against any Indemnitee if the claim, demand, action or cause of action directly or indirectly relates to this Deed of Trust, the use of proceeds of the Note, or the relationship of Grantor and Beneficiary under this Deed of Trust or any transaction contemplated pursuant to this Deed of Trust, (iii) any administrative or investigative proceeding by any governmental authority directly or indirectly related to a claim, demand, action or cause of action described in clauses (i) or (ii) above, and (iv) any and all liabilities, losses, costs,

22

or expenses (including attorneys' fees and disbursements) that any Indemnitee suffers or incurs as a result of any of the foregoing; provided, however, that Grantor shall have no obligation under this Section to the Beneficiary with respect to any of the foregoing arising out of the gross negligence or willful misconduct of the Beneficiary or the breach by the Beneficiary of this Deed of Trust or from the transfer or disposition of the Note by the Beneficiary.

(b)     If any claim, demand, action or cause of action is asserted against any Indemnitee, such Indemnitee shall promptly notify Grantor, but the failure to so promptly notify Grantor shall not affect Grantor's obligations under this Section unless such failure materially prejudices Grantor's right to participate in the contest of such claim, demand, action or cause of action, as hereinafter provided. If requested by Grantor in writing and so long as no Event of Default shall have occurred and be continuing, such Indemnitee shall in good faith contest the validity, applicability and amount of such claim, demand, action or cause of action and shall permit Grantor to participate in such contest. Any Indemnitee that proposes to settle or compromise any claim or proceeding for which Grantor may be liable for payment of indemnity hereunder shall give Grantor written notice of the terms of such proposed settlement or compromise reasonably in advance of settling or compromising such claim or proceeding and shall obtain Grantor's concurrence thereto.

(c)     Each Indemnitee is authorized to employ counsel at the expense of the Grantor in enforcing its rights hereunder and in defending against any claim, demand, action, or cause of action covered by this Section; provided, however, that each Indemnitee shall endeavor, but shall not be obligated, in connection with any matter covered by this Section which also involves other Indemnitees, to use reasonable efforts to avoid unnecessary duplication of effort by counsel for all Indemnitees.

(d)     Any obligation or liability of Grantor to any Indemnitee under this Section shall survive the expiration or termination of this Deed of Trust and the repayment of the Note and all other Obligations.

Section 19. WAIVER OF JURY TRIAL. THE BENEFICIARY AND THE GRANTOR HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (ORAL OR WRITTEN), OR ACTIONS OF THE BENEFICIARY OR THE GRANTOR. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BENEFICIARY ACCEPTING THIS DEED OF TRUST.

23

Section 20. Miscellaneous.

(a) Notices. All notices, approvals, consents, requests and other communications hereunder shall be given in the manner provided in the Loan Agreement at the following addresses:

if to the Grantor:

Salem Pointe Capital, LLC
302 Rarity Bay Parkway
Vonore, Tennessee 37885
Attn: Michael D. Ayres

if to the Trustee or the Beneficiary:

ORNL FEDERAL CREDIT UNION
2077 Town Center Blvd, Suite 203
Knoxville, Tennessee 37922
Attn: Richard Bettis

(b) Offset. In addition to, and not in limitation of, all rights of offset that the Beneficiary or other holder of the Note may have under applicable law upon the occurrence of any Event of Default hereunder or any event which, upon notice or the lapse of time, or both, would become an Event of Default hereunder, the Beneficiary or such other holder of the Note and, to the extent permitted by applicable law, any participant in the Note, shall have the right to appropriate and apply to the payment thereof any and all balances, credits, deposits, accounts or monies of the Grantor or any subsidiary of the Grantor then or thereafter maintained with the Beneficiary or any of its subsidiaries or affiliates or such other holder of the Note.

(c) Liens. The holder(s) of the lien created by this instrument has not and will not consent to any contract or to any work or to the furnishing of any materials which might be deemed to create a lien or liens superior to the lien of this instrument, either under Tenn. Code Ann. §66-11-108, as amended, or otherwise.

(d) Successors and Assigns. This Deed of Trust shall be binding upon, inure to the benefit of and be enforceable by the parties hereto, their successors, heirs, personal representatives and assigns, and the Beneficiary and its successors and assigns; provided, however, that the Grantor shall not assign its rights or obligations hereunder without the express prior written consent of the Beneficiary.

24

(e)  **Amendments and Supplements.**  This Deed of Trust may be amended and supplemented only by a written instrument executed by the Grantor and the Beneficiary.

(f)  **Applicable Law.**  This Deed of Trust shall be governed by, and construed in accordance with, the applicable laws of the State of Tennessee.

(g)  **Counterparts.**  To facilitate execution, this Deed of Trust may be executed in as many counterparts as may be required.  It shall not be necessary that the signature on behalf of the parties hereto appear on each counterpart hereof, and it shall be sufficient that the signature on behalf of each party hereto appear on one or more such counterparts.  All counterparts shall collectively constitute a single agreement.

*[signatures on the following page]*

IN WITNESS WHEREOF, the Grantor has executed this Deed of Trust and the Beneficiary has accepted this Deed of Trust as of the date first set forth above.

GRANTOR:

**SALEM POINTE CAPITAL, LLC**
a Tennessee limited liability company

By: _____
     Michael D. Ayres
Its:    President


**ACCEPTED**:

**BENEFICIARY**:

**ORNL FEDERAL CREDIT UNION**
a Tennessee banking corporation organized under the National Credit Union Act

By:_____
    Richard Bettis
Its:   Senior Loan Officer


*Signature page – Deed of Trust between ORNL Federal Credit Union and Salem Pointe Capital*

STATE OF TENNESSEE    )
COUNTY OF KNOX        )

        Before me, _Robin A. Morgan_ , Notary Public of the State and County aforesaid, personally appeared MICHAEL D. AYRES, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the President of SALEM POINTE CAPITAL, LLC, a Tennessee limited liability company, the within named bargainor, and that he as such President being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President of SALEM POINTE CAPITAL, LLC.

WITNESS my hand and seal at office on this the __7th__ day of __November__ , 2023.

                                          Notary Public

My Commission Expires:____2.2.25____


STATE OF TENNESSEE    )
COUNTY OF KNOX        )

        Before me, a notary public of the state and county mentioned, personally appeared RICHARD BETTIS, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be Senior Loan Officer (or such other officer authorized to execute the instrument) of ORNL FEDERAL CREDIT UNION, a Tennessee banking corporation organized under the National Credit Union Act, the within named bargainor, (the "Credit Union") and that he as such Senior Loan Officer executed the foregoing instrument for the purpose therein contained, by personally signing the name of the Credit Union by himself as such Senior Loan Officer of ORNL Federal Credit Union.

WITNESS my hand and seal at office on this the __7th__ day of __November__ , 2023.

                                          Notary Public

My Commission Expires: ____2.2.25____

27

record in Book 228, Page 698, Book 234, Page 166 and Book 234, Page 168, Register's Office for said County.

Being part of the same property conveyed to TELLICO LAKE PROPERTIES, L.P., A LIMITED PARTNERSHIP WITH TELLICO COMMUNITIES, INC., A TENNESSEE CORPORATION, AS THE GENERAL PARTNER, by deed from THE TELLICO RESERVOIR DEVELOPMENT AGENCY, dated July 22, 1994, of record in Book 218, Page 529, Register's Office for Monroe County, Tennessee.

Pursuant to Order entered on April 17, 2015 in the United States District Court Eastern District of Tennessee in Knoxville in *Stooksbury v. Ross, et al.*, Case No. 3:09-CV-498-TAV-HBG, STERLING P. OWEN, IV, was authorized to sell the property in his capacity as Receiver.

Reference is hereby made to Affidavit of Sterling P. Owen, IV, Receiver, dated May 12, 2015, of record in Book M249, Page 238, Register's Office for Monroe County, Tennessee.

Also, being part of the same property conveyed to SALEM POINTE CAPITAL, LLC, A TENNESSEE LIMITED LIABILITY COMPANY, by deed from STERLING P. OWEN, IV, IN HIS CAPACITY AS RECEIVER FOR TLP, dated May 18, 2015, of record in Book 374, Page 104, Register's Office for Monroe County, Tennessee and in Book D376, Page 435, Register's Office for Loudon County, Tennessee.

**BK/PG: T1671/291-337**

**23010163**

| | |
|---|---|
| 47 PGS:AL-TRUST DEED | |
| PAM BATCH: 194998 | |
| 11/09/2023 - 10:00 AM | |
| VALUE | 6500000.00 |
| MORTGAGE TAX | 7472.70 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 235.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 1.00 |
| TOTAL AMOUNT | 7710.70 |

STATE OF TENNESSEE, LOUDON COUNTY
**TAMMY GALLAHER**
REGISTER OF DEEDS

SP 11/2015