Fill in this information to identify your case:

Debtor    **Salem Pointe Capital, LLC**

United States Bankruptcy Court for the:    EASTERN DISTRICT OF TENNESSEE

Case number    **3:24-bk-31702-SHB**
(if known)

# Official Form 410
# Proof of Claim

4/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**ORNL Federal Credit Union**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

■ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**ORNL Federal Credit Union**
**ATTN: John Hotchkiss**
**2077 Town Center Blvd.**
**Suite 201**
**Knoxville, TN 37922**
Name, Number, Street, City, State & Zip Code

Contact phone    **865-425-2692**

Contact email    **jhotchki@ornlfcu.com**

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name, Number, Street, City, State & Zip Code

Contact phone

Contact email

**4. Does this claim amend one already filed?**

■ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**

■ No
☐ Yes. Who made the earlier filing?

Exhibit C

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

■ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 250,328.77  Does this amount include interest or other charges?

☐ No

■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money loaned**

**9. Is all or part of the claim secured?**

☐ No

■ Yes.    The claim is secured by a lien on property.

Nature of property:

■ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe:    **Real property**

Basis for perfection:    **Deed of Trust**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                        $ _____  unknown

Amount of claim that is secured:          $ 250,328.77

Amount of claim that is unsecured:        $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed)    8    %

■ Fixed

☐ Variable

**10. Is this claim based on a lease?**

■ No

☐ Yes. Amount necessary to cure any default as of the date of the petition:    $ _____

**11. Is this claim subject to a right of setoff?**

■ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | Amount entitled to priority |
|---|---|---|
| | ■ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes.   Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

■ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   **11/1/24**
MM/ DD/ YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | **Thomas H. Dickenson** |
| Title | **Attorney** |
| Company | **Hodges, Doughty & Carson, PLLC** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **P. O. Box 869** |
| | **Knoxville, TN 37901-0869** |
| | Number, Street, City, State and Zip Code |
| Contact phone | **(865) 292-2307**     Email   **tdickenson@hdclaw.com** |

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

IN RE:
SALEM POINTE CAPITAL, LLC,

                                CASE NO. 3:24-bk-31702-SHB
                                Chapter 11

        Debtor.

## PROOF OF CLAIM ATTACHMENT

| | |
|---|---|
| Principal | $250,000.00 |
| Accrued interest as of 9/29/24 | 328.77 |
| Late charges | N/A |
| Attorney fees | N/A |
| | |
| **TOTAL CLAIM** | **$250,328.77** |

                s/Thomas H. Dickenson
                Thomas H. Dickenson (State Bar No. 006844)
                Attorney for ORNL Federal Credit Union
                HODGES, DOUGHTY & CARSON, PLLC
                P. O. Box 869
                Knoxville, Tennessee 37901-0869
                (865) 292-2307

## REVOLVING PROMISSORY NOTE
("Note")

$250,000.00

Knoxville, Tennessee
November 7, 2023

**FOR VALUE RECEIVED**, the undersigned, **SALEM POINTE CAPITAL, LLC**, a Tennessee limited liability company (the "Borrower" or "Maker"), promises to pay to the order of **ORNL FEDERAL CREDIT UNION**, a Tennessee banking corporation organized under the National Credit Union Act, or its assigns (herein called "Holder" or "Credit Union"), the principal sum of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00), together with interest thereon, or on so much thereof as may be outstanding and unpaid from time to time, from the date hereof until final and full payment, calculated at the Applicable Interest Rate (defined herein below). Subject to the provisions of this Note with respect to the payment of installments of accrued interest, the unpaid principal of this Note together with accrued interest thereon shall be due and payable on November 2, 2024 (the "Maturity Date"), at the principal office of Holder located at 2077 Town Center Blvd., Suite 203, Knoxville, Tennessee 37922, or at such other place as Holder may designate in writing mailed or delivered to Maker.

Accrued interest on the unpaid principal amount of this Note shall be due and payable to Holder monthly, the first such monthly installment of interest being due on the December 7, 2023, and thereafter on the same date of each succeeding calendar month until the Maturity Date at which time all unpaid principal and interest shall be due and payable in full.

Maker shall pay a late charge of 5% of the amount which is past due if the payment is at least ten (10) days past due. "Past due" applies to unpaid (total amount billed this period less any partial payments) principal, interest, or both.

This Note is made, executed and issued for the purpose of evidencing an indebtedness created concurrently herewith and arising hereafter from future advances of principal disbursed from time to time hereunder upon and in accordance with the terms of that certain Loan Agreement dated November 2, 2023 (the "Loan Agreement") and at the request of Maker to a sum equal to, but not in excess of, the principal face amount of this Note outstanding at any single time. Maker shall have the right and privilege to repay all or any part of the outstanding indebtedness of this Note at any time and from time to time; and, thereafter, subject to (i) the limitation that the outstanding indebtedness hereunder shall not exceed the principal face amount of this Note, (ii) the terms of the Loan Agreement, and (iii) provided that Maker shall not be in default hereunder or in respect to any other obligation of Maker to Holder, whether now existing or hereafter arising, and without limitation to the obligations of this Note, Maker shall have the right and privilege to request and receive future advances of loan proceeds hereunder. Holder reserves the right to require Maker to execute such other documents and instruments as Holder may require from time to time, either in substitution of, or addition to, this Note or any other written document or instrument delivered in connection herewith from time to time, and Maker covenants at Maker's expense to execute and deliver promptly upon and at the request of Holder all such documents and instruments as a condition precedent to Holder's obligation to disburse further loan proceeds hereunder.

1

The following definitions are applicable to the respective words, terms and phrases used in this note:

(a) The word "Maker" means all makers, co-makers, and other parties signing on the face of this Note, and the use of the plural shall include the singular, and vice versa, and in the event the Maker(s) of this Note comprise two or more persons or entities, the indebtedness and other obligations hereof shall be deemed joint and several as to all such persons or entities.

(b) The term "Base Rate" is the "prime rate" as published daily in the Wall Street Journal.

(c) The term "Applicable Interest Rate" is that rate of interest applicable to the accruing of interest on the unpaid principal indebtedness of this Note from the date hereof until payment calculated and derived as the Base Rate as currently in force and as such Base Rate may be altered from time to time during the term of this Note. The Applicable Interest Rate shall change as of any day upon which there is a change in such Base Rate and shall be calculated on the basis of the actual number of days elapsed over a 365-day year. Notwithstanding the foregoing, the Applicable Interest Rate shall never exceed the highest contract rate of interest permitted to be charged under applicable law at the time of such determination.

(d) The word "Holder" shall include all successors and assigns of any owner and holder of this Note.

The outstanding principal indebtedness of this Note shall be further evidenced by (i) the attached, appended or electronically stored ledger or register of disbursements compiled and maintained in conjunction with the disbursement of loan proceeds hereunder, (ii) the written disbursement instructions furnished from time to time by Maker as required hereunder for the disbursement of loan proceeds, and (iii) such other written entries, books and accounts compiled and maintained by Holder from time to time which relate to the various transactions of and under this Note.

Subject to the limitations herein contained, disbursements of loan proceeds may be advanced to Maker upon either the written or oral requests of Maker and in accordance with the instructions of Maker; provided, that in respect to any disbursement made at the oral request of Maker, Maker shall furnish to Holder on or before the close of Holder's office on the next banking day following the date of any such oral request a written confirmation of such request in form, substance and context satisfactory to Holder, but in any event signed by the Maker or the duly authorized representative of Maker.

The duly authorized representative(s) of Maker for the purposes of (i) executing and issuing this Note and (ii) giving instructions and confirmations and undertaking similar actions in respect to disbursements of loan proceeds hereunder, is that person(s) named by resolution of the membership of Maker furnished in writing to Holder in connection herewith.

Maker further covenants and agrees during the term for which any indebtedness under this Note remains outstanding and unpaid that Maker shall:

(a)    furnish to Holder within 90-days of the close of Maker's calendar or fiscal year a balance sheet and statement of income for Maker as of such calendar or fiscal year, certified by the Maker or an officer of Maker to be correct and prepared in accordance with generally accepted accounting principles uniformly applied, and such other additional and further information and reports concerning the financial condition and business operations of Maker as Holder may request from time to time during the term of this Note; and

(b)    maintain a continued financial condition relevant to the Maker's operations as shown on financial statements presented in (a) above and as to the Holder.

Notwithstanding the terms and conditions of this Note with respect to ordinary or accelerated maturity to the contrary, at the option of Holder, the indebtedness of this note shall become due and payable at once and without notice, or Holder may refuse or suspend, for any applicable periods of time at Holder's discretion, any future disbursements of loan proceeds hereunder, in the event of any of the following: (a) nonpayment when due and after the expiration of any grace period provided herein, of any principal of or interest by Maker; or (b) default by Maker (or any guarantor of this Note) in the due observance or performance of any term, covenant, condition, representation, warranty or agreement on the part of Maker be performed under this Note or any document or instrument related hereto ("Loan Document"), otherwise relating to the indebtedness of this Note, whether now existing or hereafter arising; or (c) Maker fails to make any payment due on any indebtedness owed to Holder or any event shall occur or any condition shall exist with respect to any indebtedness owed to Holder or under any agreement securing or relating to such indebtedness the effect of which is to cause or to permit Holder or a Trustee under any deed of trust to cause (whether or not Holder or any Trustee elects to cause) such indebtedness, or a portion thereof, to become due prior to its stated maturity or prior to its regularly scheduled dates of payment; or (d) omitted; or (e) any guarantor of this Note defaults under or fails, after any applicable notice and cure period, to comply with any covenant, pledge, or term of any applicable guaranty agreement; or (f) Maker becomes the subject of a dissolution, liquidation proceeding or terminates or suspends its business affairs; or (g) Maker becomes the subject of a merger or consolidation or enters into a joint venture, partnership or affiliated business arrangement pursuant to which Maker surrenders operational control of its business operations.

Failure of Holder to exercise any remedy for an event of default hereunder or breach hereof shall not constitute a waiver on the part of the Holder of the right to exercise the same in the event of any subsequent default or breach. In the event of default in payment of this Note, and if this Note is referred to an attorney-at-law for collection, or for the prosecution or defense of a claim in bankruptcy, the Maker agrees to pay all costs of collection including a reasonable attorneys fee. On and after maturity or the date of the occurrence of an event of default hereunder, this Note shall bear interest at the highest contract rate of interest permitted to be charged by law at maturity or the time of default.

The Maker and endorsers hereof, if any, severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree

3

that this Note, or any nonpayment hereunder, may be extended from time to time without in any way affecting the liability of the Maker and endorsers hereof.

In addition to the foregoing, the indebtedness of this Note, together with any other indebtedness of Maker to Holder whether now existing or hereafter arising, shall be (a) due and payable at once and without notice at the option of Holder upon default by Maker in respect to the performance of any obligations owing to Maker, whether now existing or subsequently arising and remaining uncured after the lapse of any applicable grace period afforded Maker to cure such default, and (b) secured by (i) the lien and encumbrance of a certain Deed of Trust Including UCC-1 Financing Statement dated as of November 7, 2023, recorded as Instrument No. _____ in the Loudon County, Tennessee and Monroe County, Tennessee Registers' Office. Additionally, Maker grants Holder a continuing lien to secure payment of the indebtedness of this Note as well as all other indebtedness of Maker to Holder, whether now existing or hereafter arising, upon any and all deposits, monies or other property of value owned or belonging to Maker, and the proceeds thereof, now or hereafter held or received by, or in transit to, Holder from or for the account or benefit of Maker, whether for safekeeping, custody, pledge, transmission, collection or otherwise, and also upon any and all credits or other property of value due or to become due Maker from, any and all claims of Maker against Holder, at any time existing. Upon default hereunder, or pursuant to any other document or instrument by and between Maker and Holder evidencing an indebtedness of Maker to Holder, whether now existing or hereafter arising, Holder shall have the right and privilege, without the necessity or requirement of notice to Maker or any guarantors or endorsers hereof, to set-off, appropriate and apply any and all such property of Maker generally referred to in this Note against all indebtedness of Maker to Holder then outstanding and unpaid, and without limitation to the indebtedness outstanding under this Note.

This Note is further secured by the Guaranty agreement of Michael D. Ayres, Rarity Bay Properties, LLC, a Tennessee limited liability company, and Premier Resort Management, LLC, a Tennessee limited liability company. The principal and interest of this Note are advanced pursuant to the terms and conditions of a certain Loan Agreement of even date herewith (as amended, modified or restated, the "Loan Agreement"), executed and delivered by the Borrower to Lender to which Loan Agreement reference is hereby made for all purposes.

<u>WAIVER OF JURY TRIAL</u>. THE MAKER AND THE HOLDER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRAIL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (ORAL OR WRITTEN), OR ACTIONS OF THE MAKER AND THE HOLDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER MAKING THE LOAN EVIDENCED BY THIS NOTE AND ACCEPTING THIS NOTE.

*[signatures on the following page]*

**BORROWER:**

**SALEM POINTE CAPITAL, LLC**
a Tennessee limited liability company

By: _____

        Michael D. Ayres
Its:    President

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** is made and entered into as of the 7th day of November 2023, by and among **SALEM POINTE CAPITAL, LLC,** a Tennessee limited liability company (the "Borrower"), **ORNL FEDERAL CREDIT UNION,** a Tennessee banking corporation organized under the National Credit Union Act, its successors and assigns (the "Credit Union"), **MICHAEL D. AYRES** ("M. Ayres"), **RARITY BAY PROPERTIES, LLC,** a Tennessee limited liability company ("Rarity Bay Properties"), **PREMIER RESORT MANAGEMENT, LLC,** a Tennessee limited liability company ("Premier Resort") (M. Ayres, Rarity Bay Properties, and Premier Resort are collectively, the "Guarantors).

R E C I T A L S:

I.      Borrower owns and possesses a fee simple interest to that certain property located in Loudon and Monroe County, Tennessee, described on Exhibit A attached hereto.

II.     Borrower has applied to Credit Union for a revolving line of credit of up to Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) at an interest rate and for a term as provided in the promissory note executed on even date herewith.

III.    The Note shall be secured in part by a Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents to be recorded in the Register's Office for Loudon and Monroe County, Tennessee.

IV.     Borrower has represented to Credit Union that the Loan shall be used solely for the purposes set forth herein.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00), and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, it is stipulated and agreed as follows:

1.      RECITALS:  The foregoing recitals are true and correct in all material respects and are incorporated herein by reference.

2.      DEFINITIONS:  The terms defined in this Paragraph 2 shall for all purposes of this Agreement have the meanings herein specified unless the context expressly or by necessary implication otherwise requires (such meanings are to be equally applicable to the singular and plural forms thereof):

        (a)     "Assignment of Landlord's Interest in Leases" means an assignment by Borrower to Credit Union of the landlord's interest in the leases, lease proceeds and/or rents from the Property as evidenced by that certain Assignment of Rents and Leases of even date herewith.

        (b)     "Code" means the Uniform Commercial Code as in force in the State of Tennessee.

1

(c)  *Intentionally Omitted*

(d)  "Current Debt Service" for any period means the sum of interest expense paid by an entity for that period plus the current maturities on debts which, by their terms, have a final maturity date of more than one year from the creation thereof.

(e)  "Declarant Rights" means the rights of Borrower as Declarant pursuant to the Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay dated October 1, 1998 recorded at Book T444, Page 248 in the Office of the Register of Deeds for Loudon County, Tennessee and in Book M112, Page 323 in the Office of the Register of Deeds for Monroe County, Tennessee (as amended and supplemented from time to time) (the "DCCR")

(f)  "Deed of Trust" means the Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases from Borrower for the benefit of Credit Union date of even date herewith, securing the payment of the Note and the payment and performance of all obligations specified in the Deed of Trust and this Agreement, and evidencing a valid and enforceable first lien on the fee simple interest in the Property.

(g)  "GAAP" means generally accepted accounting principles consistently applied.

(h)  "Guarantors" means Michael D. Ayres, Rarity Bay Properties, LLC, a Tennessee limited liability company, and Premier Resort Management, LLC, a Tennessee limited liability company.

(i)  "Loan" means the maximum $250,000.00 line of credit loan from Credit Union to Borrower as evidenced by the Note.

(j)  "Net Operating Income" for any period shall mean net operating income as determined in accordance with GAAP.

(k)  "Note" means that certain promissory note evidencing the Loan and executed by Borrower on even date herewith.

(l)  "Obligors" means the Borrower and the Guarantors.

(m)  "Permitted Encumbrances" means only those encumbrances, liens, restrictions and easements which are listed on Exhibit B or which are otherwise approved in writing by counsel for Credit Union.

(n)  "Property" means the real property described in Exhibit A attached hereto and incorporated herein by reference, together with the Improvements and all other property constituting the Premises, as described in the Deed of Trust, and all other collateral described in the Deed of Trust and in the Security Agreement.

(o)  "Security Agreement" means the security agreement contained in the Deed of Trust granting to Credit Union a security interest in collateral for the Loan.

2

(p)    "Security Instruments" means this Loan Agreement, the Commitment Letter, the Deed of Trust, the Note, the Security Agreement, the Financing Statements and other such instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower, or any other party, to Credit Union pursuant to this Loan Agreement.

3.    NOTE; INTEREST RATE: Credit Union shall make to Borrower and Borrower shall accept from Credit Union a term loan in the principal amount of principal sum of up to Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00). The Loan shall be evidenced by the Note and secured in part by the Deed of Trust.

4.    PROPERTY: The Loan shall be secured by the Deed of Trust encumbering the Borrower's fee simple interest in the Property with a first lien subject only to Permitted Encumbrances.

5.    ADDITIONAL SECURITY: Borrower shall execute in favor of Credit Union any security or collateral pledge agreements creating security interests in personal property, purchase agreements, accounts, contract rights and choses in action, or any assignment or pledge of other property, all of which must be related to the Property, which may be reasonably required by Credit Union.

(a)    Assignment of Rents: Borrower hereby assigns to Credit Union its rights under the agreements relating to the development and operation of the Property, and shall further assign to Credit Union the leases, proceeds, rents, and other income from the Property, the terms of such assignment providing that upon an Event of Default, Credit Union shall be entitled to receive all income from the Property to be first applied to expenses incurred by Credit Union hereunder or under the Note, Deed of Trust or other Loan Documents, then to accrued interest and then to the reduction of principal on any balance of the Loan then outstanding. Borrower hereby agrees not to enter into any lease agreements except in the ordinary course of business.

(b)    Security Agreement: If required by Credit Union, Borrower shall execute a Security Agreement and hereby authorizes Credit Union to file UCC Financing Statements in favor of Credit Union as additional security for the Loan and to perfect Credit Union's rights under the Security Agreement as hereinafter set forth. This Agreement is intended to serve also as a Security Agreement. The Borrower hereby grants and conveys to Credit Union a security interest in all furniture, fixtures, equipment, personal property, building materials and supplies now upon the Property or to be hereafter delivered to the Property and in all fixtures and any other items that may be considered personal property now or hereafter owned or leased by Borrower and placed upon or used in the development, construction, or operation of the Property, and in all leases, contract rights, lease payments and profits derived from and relating to the operation of the Property including but not limited to the Declarant Rights and the right to collect all fees and dues as Declarant pursuant to the DCCR.

(c)    Indemnity Agreement: Borrower and the Guarantors shall execute a hazardous waste certificate and indemnity agreement in favor of Credit Union wherein various agreements shall be made concerning the absence of any hazardous substances or toxic materials

3

with respect to the Property and wherein Borrower and the Guarantors indemnify and hold Credit Union harmless from and against any and all costs, liability and claims of any nature whatsoever resulting from the presence and removal of any such substances or materials. Such instrument(s) shall be in form and substance acceptable to Credit Union and its counsel.

(d)     Additional Documents:  Upon request by Credit Union, Borrower shall execute and deliver to Credit Union appropriate deeds of trust, security agreements, assignments, financing statements, title certificates with Credit Union's lien noted thereon or other evidences of liens or security interests, or any amendments thereto, in form and substance satisfactory to Credit Union, which Credit Union reasonably deems to be necessary or desirable in connection with the perfection or continuation of perfection of any liens or security interests which Credit Union should have in any collateral for the Loan. Upon the failure of Borrower so to do, Credit Union may make, execute or record any and all such instruments, for and in the name of Borrower, and Borrower hereby irrevocably appoint Credit Union as the agent and attorney-in-fact of Borrower for said purposes, such appointment being hereby coupled with an interest. In addition to the foregoing, Borrower hereby assigns to Credit Union its interest in and to any agreement relating to the management of the Property.

6.     TITLE INSURANCE:  Credit Union shall obtain at Borrower's expense, a commitment to issue Mortgagee's Title Insurance Policy or Policies in a form satisfactory to Credit Union and issued by a title insurance company acceptable to Credit Union. The title policy or policies, as endorsed (the "Title Policy") must be issued without exceptions, except the Permitted Encumbrances, insuring the Deed of Trust as a first, valid, and paramount lien against Borrower's fee simple interest in the Property, subject any other lien held by Credit Union related to the Borrower and Property..

7.     REPRESENTATIONS AND WARRANTIES:  The Obligors hereby make the following warranties and representations:

(a)     Correctness of Documents:  The documents furnished in support of the Loan and those documents listed in any exhibit hereto are in all material respects true and correct and accurately set out the facts represented therein.

(b)     Financial Statements and Conditions of Borrower and Guarantors:  The financial statements of the Obligors provided in support of the Loan request were prepared in accordance with sound accounting principles, are true, correct and complete as of the date thereof and fairly present the financial position of the person or entity which each purports to reflect, and the financial positions so reflected have not suffered any material adverse changes to this date, and neither the Borrower nor the Guarantors will voluntarily dispose of a material portion of their assets during the term of the Loan in a manner which results in a material reduction in their respective net worths.

(c)     Absence of Proceedings and Actions:  There are no actions, suits, or proceedings pending, or, to the knowledge of Obligors after due inquiry, threatened against or affecting the Property (including the rights of the Declarant's Rights), the Borrower or the Guarantors except as disclosed in writing to Credit Union prior to closing of the Loan.

4

(d)     Authority; Binding Obligation:   The Borrower is a limited liability company which is validly existing and in good standing under the laws of the State of Tennessee. The Borrower has all governmental permits, approvals and other authorizations which are necessary to enable the Borrower to operate the Property and to carry out the terms of the Loan Documents. The Loan Documents have each been duly executed and delivered by the Borrower, and each is in full force and effect and constitutes the legal, valid, and binding obligation of the Borrower.

(e)     Absence of Judgments and/or Awards and/or Orders:   There are no outstanding and unpaid judgments or arbitration awards against the Borrower and/or the Guarantors.  Neither the Borrower nor the Guarantors are in default or violation with respect to any valid regulation, order, writ, judgment or decree of any court or other governmental or municipal department, commission, board, bureau, agency or instrumentality (including, but not limited to, the Internal Revenue Service).

(f)     Non-Default of Borrower Contractually:  The Obligors are not in default under, nor have breached in any material respect any agreement or instrument to which any of them is a party or by which any of them or the Property may be bound.  The execution and delivery of the Loan Documents and the consummation of other transactions contemplated by this Agreement do not conflict with or result in violation of any valid regulations, order, writ, judgment, injunction or decree of any court or governmental or municipal instrumentality or constitute a breach of or default under any indenture, contract, agreement, or other instrument to which the Borrower or the Guarantors are a party or by which any of them or the Property are bound.  Neither the execution and delivery of this Agreement, nor the Deed of Trust, nor the issuance of the Note will result in the creation or imposition of, or be any cause for imposing, any lien, charge or encumbrance of any nature whatsoever upon any of the security or assets of the Borrower other than those created, imposed or required by this Agreement, the Deed of Trust, or the other Loan Documents in favor of Credit Union.

(g)     Marketable Title in Mortgagor Without Liens:   Borrower owns and possesses, and at all times will maintain good and marketable fee simple title to the Property subject to only the Permitted Encumbrances. Borrower hereby represents and warrants to Credit Union that it has full and complete authority to collect the dues and fees associated with the DCCR. Borrower hereby agrees that it shall not reduce (or consent to any reduction) of the fees and dues associated with the Declarant's Rights without the prior written consent of Credit Union.

(h)     Compliance with Other Agreements:  Borrower will at all times timely and promptly comply with the terms and conditions and the obligations for them to perform under any and all indentures, contracts, agreements or other instruments by which the Property are bound (including but not limited to the DCCR) to the extent the Borrower is bound by such documents.

(i)     Transfer of Interest by Owners:  Until all amounts due under the Note have been paid in full, no owner of an interest (whether record or beneficial) evidencing an ownership interest in the Borrower ("Owners") shall sell, transfer, assign, pledge, hypothecate or

encumber any of such ownership interest in the Borrower without the prior written consent of Credit Union.

(j)     Amendments to Organizational Documents:  Until all amounts due under the Note have been paid in full, the operating agreement of the Borrower and similar organizational documents of the Borrower (collectively, the "Organizational Documents") which are certified by the Borrower to be the valid and existing organizational documents of the Borrower as of the date hereof, shall not be amended without the prior written consent of Credit Union except as set forth in Section 7(i) above.

(k)     Transfers Regarding Property:  Until all amounts due under the Note have been paid in full, the Borrower shall not sell, transfer, assign, pledge, hypothecate or encumber any interests in the Property including the accounts receivable related to the Declarant's Rights, without the prior written consent of Credit Union.

(l)     Operating Covenants:  Borrower shall at all times (i) maintain the Property in good condition and repair, ordinary wear and tear excepted (ii) maintain the existence as a viable ongoing entity, and (iii) maintain its primary business operating accounts with respect to the Property with the Credit Union. In addition, Borrower agrees that it shall not amend or consent to the amendment of the DCCR without the prior written consent of the Credit Union; provided the Borrower may file supplements to the DCCR related to real property and lot platting in Borrower's sole discretion without the Credit Union's consent.

8.     CONDITIONS PRECEDENT TO DISBURSEMENTS:  Credit Union shall incur no obligations hereunder, nor shall it be required to disburse any monies directly to Borrower, or for its account, or to the account of Borrower maintained with Credit Union, until Credit Union has received, in a form satisfactory and acceptable to it, the following:

(a)     Each and every document, instrument and agreement described in Paragraphs 3, 4 and 5 of this Agreement (as well as this Agreement), duly and validly executed by the Borrower.

(b)     Satisfactory current financial statements from the Borrower and the Guarantors.

(c)     Evidence satisfactory to the Credit Union that Borrower has complied with all requirements of any governmental authority for the operation of the Property, including, without limitation, evidence of zoning and copies of any certificates of occupancy.

(d)     Issuance of the Title Policy, including affirmative insurance coverage provisions, as set forth above.

(e)     Original policies of insurance required under the Deed of Trust.

(f)     Origination Fee in the amount of $250.00.

(g)     Environmental report(s) relating to the Property.

(h)     *Survey Intentionally Omitted.*

(i)     Appraisals prepared by an M.A.I. appraiser acceptable to the Credit Union showing the fair market value of the Property satisfactory to Credit Union.

(j)     Copies of the Organizational Documents of the Borrower and resolutions authorizing the execution of the Loan Documents, all as certified by the Borrower.

9.     <u>MISREPRESENTATION     BY     BORROWER     OR     GUARANTORS;</u>
<u>INCORPORATION; CONFLICT OF PROVISIONS; RIGHTS OF CREDIT UNION</u>:  If any material representation or warranty contained in this Agreement, or in any agreement, report, or statement given to Credit Union regarding any transaction hereunder or submitted in support thereof, is materially untrue or incorrect and the same is not cured within thirty (30) days after notice to Borrower thereof, then, in any such event, Credit Union shall have all of the rights and remedies provided in this Agreement as well as those provided for by applicable law, the Note, Deed of Trust, or other Loan Documents, and, in addition to such rights and remedies, all obligations hereunder of Borrower to Credit Union shall become immediately due and payable without further demand or notice and shall forthwith be paid and discharged by Borrower notwithstanding any time or credit otherwise allowed.  Every term contained in the Note, Deed of Trust, Loan Documents or other instrument shall be deemed incorporated into this Agreement. All rights, remedies, and powers granted to Credit Union herein, or in the Note, Deed of Trust, or other instruments executed in connection with the Loan, or implied in law, shall be cumulative and may be exercised singularly or concurrently with such other rights as Credit Union may have; and shall include among other rights, the right to apply to a court of equity for an injunction to restrain a breach or threatened breach by Borrower of this Agreement; and such rights may be exercised from time to time as to all or part of the security as Credit Union, in its sole discretion, may determine.

10.     <u>INSURANCE POLICIES AND CERTIFICATES</u>:  Borrower must obtain (and keep in force) the insurance described herein and in the Deed of Trust, in form, in amounts, and with companies approved by Credit Union, and deliver to Credit Union certificates therefor and evidence of payment in full of the premiums thereon prior to any disbursement of Loan funds.

11.     <u>REMOVAL OF MECHANIC'S LIENS</u>:  The Borrower specifically agrees to have any mechanic's liens which may be filed against its Property released or bonded within thirty (30) days of the date Borrower receives notice of the same, time being of the essence.

12.     <u>PAYMENT OF TAXES</u>:  The Borrower agrees to cause to be paid and discharged any taxes, assessments, charges, levies or indebtedness upon the Property which may become due or payable during the existence of the Loan.  At least thirty (30) days before delinquency, Borrower shall furnish to Credit Union evidence satisfactory to Credit Union that taxes and assessments have been paid.

13.     <u>ACCESS TO BOOKS AND RECORDS</u>: Credit Union, or its agents, shall at all reasonable times have unrestricted access to, and the right to make copies of, the records, accounting books, contracts, subcontracts, bills and statements of the Borrower as they relate to

7

the Property, including any supporting or related vouchers or other instruments. If an Event of a Default hereunder has occurred and is continuing, then Credit Union may require, the records, books, vouchers or other instruments shall be made available at Borrower' office in Knoxville, Tennessee, to an accountant of Credit Union's choice for audit, examination, inspection, and photocopying or other type of duplication, at Borrower's expense.

14. ADDITIONAL AFFIRMATIVE COVENANTS: So long as the Note remains unpaid or this Agreement is in effect, unless the Credit Union shall otherwise consent in writing, the Obligors agree that they will:

(a) Financial Statements, Reports. Furnish to the Credit Union (i) as soon as available but not later than ninety (90) days after the close of each fiscal year of Borrower, a copy of the company prepared financial report relating to the Borrower consisting of balance sheets of Borrower as of the end of such fiscal year and income statements of Borrower for such fiscal year; (ii) annual financial statements of the Guarantors that are consistent in detail to the financial statements submitted in connection with Borrower's loan request; (iii) copies of all state and federal income tax returns filed by the Borrower and the Guarantors within thirty (30) days of filing; and (iv) such additional information, reports or statements (financial or otherwise) as the Credit Union from time to time may reasonably request. If an extension is filed prior to the completion of any tax return of Borrower and/or any Guarantor, Borrower and/or Guarantor agrees to provide a signed copy of the extension while Bank awaits filing of the tax return.

(b) Adverse Changes and Litigation. The Obligors shall immediately inform Credit Union in writing of any Event of Default hereunder or under any of the documents executed in connection with the Loan or any material adverse change in the financial condition of the Obligors or of any litigation or threat of litigation, including condemnation proceedings, which might have a material adverse effect in the Obligors' financial condition or ability to operate, or upon the Property (specifically including any claims related to the Declarant); provided, the Credit Union has been advised of all active litigation related to the Borrower that has currently been filed as of the date of this Loan Agreement.

(c) Subordination. Obligors hereby subordinate any liens or similar claims they have in the collateral for the Loan to the liens of Credit Union established under the Loan Documents.

(d) Additional Liens. The Borrower shall permit no liens to attach to any of their assets whether now owned or hereafter acquired except (i) liens for taxes not yet due or being contested in good faith and (ii) non-material liens, made in the ordinary course of business or ownership of property and assets, such as minor survey exceptions, easements and reservations.

(e) Disbursement of Additional Loan Proceeds. *Intentionally omitted.*

(f) Borrower's Debt Service Coverage. *Intentionally omitted.*

(g) Global Debt Service Coverage. *Intentionally omitted.*

8

15.    EVENTS OF DEFAULT:  The happening of any one, or more, of the following events shall constitute an event of default ("Event of Default") under this Agreement, the Note, the Deed of Trust, and each of the other Loan Documents:

(a)    Non-Payment of Principal or Interest:  The Borrower failing to make the required principal or interest payments under the Note within ten (10) days after the date said payment is due;

(b)    Breach of Condition, Etc.:  Any Obligor violating any other term, condition, or representation contained in this Agreement, the Note, the Deed of Trust, or any other Loan Document and such violation continues thirty (30) days after written notice from Credit Union; or the determination by Credit Union of the existence of a material misrepresentation of fact as set forth in Paragraph 9; but if such violation or misrepresentation is of a type which is capable of being cured but one which cannot be cured within thirty (30) days, and if Obligors are diligently pursuing such cure, then the continuation of such violation or misrepresentation for an unreasonable period after said notice;

(c)    Bankruptcy or Insolvency:  If either the Borrower or any Guarantor becomes insolvent by being unable to pay its debts when they become due, or by having the amount of its liabilities exceed the amount of its assets; the Borrower or any Guarantor commits an act of bankruptcy, makes a general assignment for the benefit of creditors, or if there is filed by, or against, it or them, a voluntary or involuntary petition in bankruptcy or for the appointment of a receiver (and, in the case of an involuntary petition in bankruptcy, which is not withdrawn or dismissed within sixty [60] days after the filing thereof), or it or they admit(s) in writing to a creditor that it or they are financially unable to pay such creditor any indebtedness due it, or if there commences under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, proceedings for Borrower's or any Guarantor's relief, or for the composition, extension, arrangement or adjustment of any of its or their obligations, or affecting the Property, which is not withdrawn or dismissed within ninety (90) days after the filing of, or the entry into, the same, or if a writ of attachment, execution, or any similar process is issued or levied against any significant part of any of its or their property, which is not released, stayed, bonded or vacated within thirty (30) days after its issue or levy;

(d)    Liens or Foreclosures:  The institution of a foreclosure action against any portion of the Property; or the filing of a lien against any portion of the Property which is not removed of record, bonded, or dismissed within thirty (30) days after Borrower receives notice of such lien filing;

(e)    Ability to Perform and Transfer of Security:  So long as Credit Union is holding the documents securing or evidencing the Loan, the failure of the Property and the personal property in which Credit Union is taking a security interest to remain free and clear of all encumbrances, liens, Deed of Trust, security interests, covenants, restrictions, conditions, easements and financing superior or subordinate to Credit Union's interests, except the Permitted Encumbrances; or if the Borrower shall, without Credit Union's prior written consent or as expressly permitted hereunder, voluntarily or by operation of law: (i) sell, transfer or convey any interest in the Property or such personal property or any portion thereof; or (ii) change the

composition or character of the legal or equitable ownership of the Property other than as permitted under Paragraph 7(i) above;

(f) Tax or Other Lien: Filing of a federal or state tax lien against any Obligor or any portion of the Property or of a lien resulting from the providing of any services or materials with respect to the Property (a "Services Lien") which has not been adequately released, bonded or discharged within thirty (30) days after filing, as determined in the Credit Union's reasonable discretion;

(g) Default Under Other Documents: Any default, whether monetary or non-monetary, under the terms and provisions of any of the other Loan Documents or any instrument executed in connection therewith or under any other loan documents between Borrower and the Credit Union related to any other loan then outstanding between the parties, including that certain loan for $6,500,000 as evidenced by that certain promissory note and loan agreement of evendate herewith, which continues after the expiration of any applicable grace or cure period;

(h) Death of a Guarantor: The death of any Guarantor, provided, however, that such death shall not constitute an Event of Default if, within one hundred twenty (120) days after the date of such death, a substitute guarantor (which may include the estate of the deceased) satisfactory to Credit Union in its reasonable discretion assumes the obligations of the deceased under his Guaranty.

16. CREDIT UNION'S REMEDIES: Upon the occurrence of any Event of Default and after the expiration of any applicable grace or cure period hereunder, Credit Union shall have the absolute right at its option and election and in its sole discretion to:

(a) Cancellation: Cancel this Agreement by written notice to Borrower;

(b) Specific Performance: Institute appropriate proceedings to enforce specific performance of the terms and conditions of this Agreement;

(c) Receivership: Seek judicial appointment of a receiver, as a matter of strict right, without regard to the solvency of the Borrower for the purpose of preserving the security, preventing waste and protecting all rights accruing to Credit Union by virtue of this Agreement and of the Deed of Trust, with all reasonable expenses incurred in connection with the appointment of said receiver, or in protecting, preserving, or improving the security, being chargeable against Borrower and being enforced by Credit Union as a lien against the security;

(d) Acceleration: Accelerate maturity of the Note and demand payment of the principal sums due thereunder, with interest, advances, costs, and reasonable attorneys' fees, and in default of said payment or any part thereof, to enforce collection of such payment by foreclosure of the Deed of Trust and/or by other appropriate action provided for hereunder and/or in the Deed of Trust in any court of competent jurisdiction;

(e) Withhold Advances: *Intentionally omitted*;

(f) Taking of Possession: Take immediate possession of the Property;

10

(g)     Default Rate:  Interest on the Note shall accrue and be paid at the rate of 15% per annum;

(h)     Application of Proceeds:  The proceeds from any collection or sale of any collateral for the Loan shall be applied to the satisfaction of the following classes in the order in which they are listed, and for any class which can only be partially satisfied, the items shall be paid pro rata based on the amounts of the obligations within the class as of the date the proceeds are available for payment:

(1)     The expenses of collecting, retaking, removing, storing, finishing, repairing, preserving, insuring, appraising, holding and selling the collateral, including, without limitation, any and all reasonable costs, attorney's fees, trustee's fees and brokerage commissions;

(2)     The expenses of liquidating or satisfying any liens, security interests or other encumbrances on the collateral which may be prior to the liens or security interests of Credit Union;

(3)     The Note or any of the other obligations secured by the Deed of Trust and other security agreements executed in connection with the Loan in whatever order the Credit Union, in its sole and absolute discretion, shall choose;

(i)     Deficiency:  Borrower and the Guarantors agree to promptly pay any deficiency which may result after the sale of any collateral for the Loan, including, but not limited to, costs of collection and reasonable attorney's fees;

(j)     Holding Accounts or Property:  Credit Union shall have the right to place a hold on any account, fund or other property belonging to Borrower or the Guarantors which shall be in Credit Union's possession or under its control until the Event of Default is cured or Credit Union exercises any lawful right of set-off;

(k)     Other:  Exercise any other right, privilege, or remedy available to Credit Union as may be provided by applicable law and/or in equity.

The said remedies and rights of Credit Union shall be cumulative and not mutually exclusive.  Credit Union shall be privileged and shall have the absolute right to resort to any one, or more, or all, of said remedies, neither to the limited exclusion of the other.

17.     UNLIMITED ACCESS TO PROPERTY:  Until the Loan has been repaid in full, Credit Union, and its agents, shall at all reasonable times, and upon reasonable advance notice to the Borrower, have the right of entry and free access to the Property and the right to inspect the same upon reasonable notice to Borrower.

18.     WAIVER OF DEFAULTS:  The waiver by Credit Union of any breach or default by Borrower under any of the terms of the Note, Deed of Trust, Security Agreement, this

Agreement or related documents shall not be deemed, nor shall the same constitute, a waiver by the Credit Union of any subsequent breach or default on the part of Borrower.

19.    CREDIT UNION'S RIGHT TO APPEAR IN LITIGATION: Credit Union shall have the right (not to the exclusion of the Borrower) to commence, to appear in, or to defend any action or proceeding purporting to affect the rights or duties of the parties hereunder and, in connection therewith, to pay out of the Loan all necessary and actual expenses and reasonable attorneys' fees where the Credit Union enters the case to defend its Deed of Trust lien or other interests. Borrower hereby agrees to repay all of the foregoing to Credit Union upon demand, and all security given hereunder shall secure any such sums.

20.    EXCLUSIVENESS OF AGREEMENT: This Agreement, the Note, Deed of Trust, and other Loan Documents are made for the sole protection of Borrower, Credit Union and Credit Union's successors and assigns, and no other person or entity shall have any right of action pursuant to or because of, any of the terms hereof.

21.    CASUALTY; CONDEMNATION: If all or any part of the Property shall be (a) damaged by fire or other casualty or (b) damaged or taken through condemnation (which term as used herein shall include any damage or taking by any governmental or other authority and any private sale in lieu thereof), Credit Union shall be entitled to receive all compensation, awards, proceeds and other payments or relief relating to or payable with respect to the interests of the applicable Borrower as a result of such casualty or condemnation. Credit Union shall apply such proceeds to the costs and expenses (including reasonable attorneys' fees) incurred in recovering same, and then to the indebtedness evidenced by the Note, whether or not due and in whatever order Credit Union elects, provided, however, that so long as no Event of Default has occurred, Credit Union shall make such proceeds available to the Borrower for the restoration of the Property pursuant to conditions and disbursement procedure that are reasonably acceptable to the Credit Union and subject further to the following conditions: (i) the Property must be capable of being restored to an economically viable office development in the Credit Union's reasonable discretion and (ii) the proceeds (together with any additional funds to be provided by Borrower) must be sufficient to restore the Property in the reasonable determination of Credit Union.

22.    NOTICE TO PARTIES: Except for any notice required under applicable law to be given in another manner, any notice, report, demand or other instrument required or permitted to be given by this Agreement shall be given or made in writing, including telex and telegraphic communication, and shall be, as elected by the person giving such notice, served personally by messenger or courier service, telecommunicated, telexed or, other than during a period of general interruption of postal service due to strike, lockout or other cause, mailed in the United States mail by prepaid, registered or certified mail, return receipt requested.

(a)    In the case of the Credit Union, addressed to:

ORNL FEDERAL CREDIT UNION
Attn: Richard Bettis
2077 Town Center Blvd, Suite 203
Knoxville, Tennessee 37922
Telephone: (865) 425-2321

12

(b)    In the case of the Borrower, addressed to:

Salem Pointe Capital, LLC
Attn: Michael D. Ayres
403 Rarity Bay Parkway
Vonore, Tennessee 37885
Telephone: (865) 384-4343

Any notice given in accordance with the provisions of this paragraph shall be deemed to be effective if personally delivered on the date of such delivery or on the date telecommunicated if by telecopy (if telecopied on a Saturday, Sunday or holiday, delivery shall be deemed to be the next business day) or on the date of transmission with confirmed answer back if by telex or, if mailed, on the date upon which the notice is deposited in a regularly maintained U.S. mail receptacle, postage prepaid, registered or certified mail, return receipt requested, as the case may be. Each party may give notice to the other party of a change of its address or fax number for the purposes of giving notice under this paragraph which thereafter, until changed by like notice, shall be the address and fax number of such party for all purposes of this Agreement.

23.    NON-ASSIGNABLE BY BORROWER:   Borrower shall not assign this Agreement or any part of any advance to be made hereunder, nor encumber the same by mortgage or other lien without the prior written consent of Credit Union. Any assignment or encumbrance made without such consent of Credit Union shall constitute an immediate default under this Agreement, the Note, Deed of Trust and other Loan Documents.

24.    CREDIT UNION'S RIGHT TO ASSIGN: The rights of Credit Union under this Agreement are assignable, wholly or in part, and any assignee of Credit Union shall succeed to and be possessed of the rights of Credit Union hereunder to the extent of any such assignment. All provisions contained in this Agreement which are beneficial to the Credit Union (including, but not limited to, any indemnifications of Borrower to Credit Union) shall inure to the benefit of Credit Union and any other participant in the Loan, and any and all of their respective successors and assigns.

25.    BROKER'S COMMISSIONS: The Borrower and the Guarantors represent and covenant that they know of no broker which was in any way connected with the Loan. Borrower agree to indemnify and hold Credit Union harmless from and against any loss, cost, liability or expense (including, but not limited to, reasonable attorneys' fees) incurred as a result of the enforcement of any claim of a broker's or finder's fee against Credit Union should these representations prove to be false.

26.    CLOSING COSTS: All reasonable expenses incurred in connection with the making, closing, servicing and/or modification of the Loan shall be paid by Borrower, including, but not limited to, charges for title examination and title insurance, recording and filing fees, mortgage and documentary taxes, all other applicable excise and tangible property taxes and reasonable fees of all appraisers, architects, attorneys, engineers, escrow agents and surveyors incurred in connection with the Loan. Whether or not there are funds provided in the Loan for the payment of any of the foregoing costs, fees, expenses or other charges, Credit Union is

13

hereby authorized to disburse Loan funds directly in payment thereof. Any fees and expenses of Credit Union paid at the time of closing by Borrower are for services rendered and expenses incurred to date of closing only.

27. <u>LOAN PROCEEDS LIMITATION</u>: Borrower shall utilize the Loan proceeds to refinance the Property, pay associated closing costs and for other purposes as may be approved by Credit Union.

28. <u>MISCELLANEOUS PROVISIONS</u>: The laws of the State of Tennessee shall govern in the interpretation, enforcement and all other aspects of the obligations and duties created under this Agreement and all other instruments referred to in this Agreement, except where the same are expressly governed by the provisions of the United States Code (as are certain provisions of the Note).

Borrower and Credit Union agree that, by mutual consent evidenced by a written instrument, this Agreement, the Note, Deed of Trust, security agreements and related documents, from time to time, may be extended or renewed in whole or in part, and the rate of interest thereon may be changed, or fees in consideration of loan extensions imposed, any related right or security therefore waived, exchanged, surrendered or otherwise dealt with, and any of the acts mentioned in the Note may be done, all without affecting the liability (except as set forth therein) of Borrower, the Guarantors, and all other obligors, endorsers, and co-makers under this Agreement, the Note, Deed of Trust, security agreements and related documents.

The release of any party liable upon the Note shall not release any other such party who may be liable. Borrower and Guarantors hereby waive presentment, demand of payment, protest and notice of non-payment and protest, and any and all other notices and demands whatsoever except as may be elsewhere specifically provided herein.

Nothing contained in this Agreement, the Note, Deed of Trust, or related documents shall impose upon Credit Union any obligation to see to the proper application of any disbursements and advances of funds made pursuant to the Loan.

No provision of this Agreement shall be amended, waived, or modified except by an instrument in writing signed by the parties hereto.

All covenants, agreements, representations and warranties made herein and in documents delivered in support of any Loan request shall be deemed to have been material and relied on by Credit Union and shall survive the execution and delivery to Credit Union of the Note and Deed of Trust hereunder and the disbursements and advances of funds made pursuant to the Loan.

All sections and descriptive headings of paragraphs in this Agreement are inserted for convenience only, and shall not affect the construction or interpretation hereof.

As used herein, the singular shall include the plural, the plural shall include the singular and the use of any gender shall be applicable to all genders.

Inapplicability of unenforceability for any reason of any provision of this Agreement shall neither limit nor impair the operation or validity of any other provision of this Agreement.

This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but such counterparts shall, together, constitute one and the same instrument.

*{Signatures on the following page}*

15

**CREDIT UNION:**

**ORNL FEDERAL CREDIT UNION**
a Tennessee banking corporation organized under the National Credit Union Act

By: ✓ _____
      Richard Bettis
Its:    Senior Loan Officer

**BORROWER:**

**SALEM POINTE CAPITAL, LLC**
a Tennessee limited liability company

By: ✓ _____
      Michael D. Ayres
Its:    President

*Signature page – Loan Agreement between ORNL Federal Credit Union and Salem Pointe Capital*

**GUARANTORS:**

_____

Michael D. Ayres

**RARITY BAY PROPERTIES, LLC,**
a Tennessee limited liability company

By: _____

       Michael D. Ayres

Its:   Chief Manager

**PREMIER RESORT MANAGEMENT, LLC,**
a Tennessee limited liability company

By: _____

       Michael D. Ayres

Its:   Chief Manager

*Signature page – Loan Agreement between ORNL Federal Credit Union and Salem Pointe Capital*

17

**THIS INSTRUMENT PREPARED BY
AND AFTER RECORDING RETURN TO:**
Matt Sherrod, Esq.
Howard & Howard, P.C.
4820 Old Kingston Pike
Knoxville, Tennessee 37919
(865) 588-4091

Maximum principal indebtedness
for Tennessee recording tax
purposes is $250,000.00 *WHEN
RECORDING DEED OF TRUST
AS DEED BOOK T1691, PAGE 408
IN the office of Loudon County
Register of DEEDS*

        **THIS DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES**, a "construction mortgage" as defined in Tenn. Code Ann. §47-9-334, as amended, dated as of November *7th*, 2023, from **SALEM POINTE CAPITAL, LLC**, a Tennessee limited liability company with a mailing address of 403 Rarity Bay Parkway, Vonore, Tennessee 37885 (the "Grantor") to **THOMAS DICKENSON, TRUSTEE** (the "Trustee"), for the benefit of **ORNL FEDERAL CREDIT UNION**, a Tennessee banking corporation organized under the National Credit Union Act, ,its successors and assigns ("Credit Union"), whose address is 2077 Town Center Blvd., Suite 203, Knoxville, Tennessee 37922, (the "Beneficiary").

        THIS INSTRUMENT SHALL SECURE "FUTURE ADVANCES". THIS INSTRUMENT SHALL CONSTITUTE A SECURITY AGREEMENT AND UNIFORM COMMERCIAL CODE FINANCING STATEMENT WITH RESPECT TO PERSONAL PROPERTY AND FIXTURES UNDER THE UNIFORM COMMERCIAL CODE OF TENNESSEE, AS AMENDED (THE "UCC"). PART OF THE COLLATERAL DESCRIBED HEREIN IS OR IS TO BECOME FIXTURES ON THE REAL ESTATE DESCRIBED HEREIN.  THE NAMES AND ADDRESSES OF THE GRANTOR/DEBTOR AND THE BENEFICIARY/SECURED PARTY ARE:

GRANTOR/DEBTOR

Salem Pointe Capital, LLC
Attn.: Michael D. Ayres
403 Rarity Bay Parkway
Vonore, Tennessee 37885

BENEFICIARY/SECURED PARTY

ORNL Federal Credit Union
Attn: Richard Bettis
2077 Town Center Blvd., Suite 203
Knoxville, Tennessee  37922

1

## WITNESSETH:

WHEREAS, the Beneficiary has agreed to extend to the Grantor a revolving loan line of credit (as amended, modified or restated, the "Loan") in the original principal amount of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00), as evidenced by a Revolving Promissory Note of even date herewith, executed by the Grantor and made payable to the Beneficiary (as amended, modified or restated, the "Note"). The Note has a stated maturity date of November 2, 2024. The Note is delivered pursuant to the terms of a Loan Agreement of even date herewith between the Grantor and the Beneficiary (as amended, modified or restated, the "Loan Agreement"); and

WHEREAS, the Grantor intends to secure (i) the payment of the principal and interest on the Note, (ii) the payment of any and all other indebtedness which this Deed of Trust by its terms secures, (iii) the performance of the covenants and agreements of the Grantor contained in this Deed of Trust, the Loan Agreement and all other Loan Documents, and (iv) the payment and performance of any other indebtedness, liabilities or obligations, now existing or hereafter arising, due or to become due, absolute or contingent of the Grantor to the Beneficiary under or pursuant to the Loan Documents (such obligations referred to collectively hereinafter as the "Obligations"); and

WHEREAS, the Grantor owns the fee simple interest in certain real property (the "Land") lying and being in Loudon and Monroe County, Tennessee, more particularly described as set forth in Exhibit A attached hereto, made a part hereof and incorporated herein by reference; and

WHEREAS, the Grantor owns certain buildings and related improvements which are constructed on the Land (collectively, the "Improvements") (hereinafter, the Land and the Improvements are collectively referred to as the "Project");

NOW, THEREFORE, in consideration of the Loan and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby grants and conveys to the Trustee, to secure the Obligations, all of Grantor's rights, titles and interests in and to the Improvements, Land and the Project (such property referred to collectively hereinafter as the "Trust Estate");

TOGETHER with any and all improvements now or hereafter existing on the Land of any type or nature, any and all tangible or intangible property of the Grantor now owned or hereafter acquired, used in, arising out of or relating to the ownership, maintenance and operation of the Project, including, without limitation, (i) equipment, furniture, fixtures, office equipment, tools, trade fixtures, other tangible personal property, documents, instruments, accounts, inventory, chattel paper, software, general intangibles and proceeds (each of the foregoing shall be as defined in the UCC, (ii) architectural and engineering plans and specifications for the Project or any portion thereof, (iii) escrow accounts, insurance policies and business records as to the Project, (iv) contract rights related to the Project (including all declarant rights related to the

2

Project and all income and accounts receivable related thereto) and (v) any funds, letters of credit or other property which are now or hereafter provided by the Grantor to assure the payment of any indebtedness secured by this Deed of Trust and the performance of all obligations of the Grantor under the Loan Documents (all such properties described in this paragraph referred to collectively hereinafter as the "Personal Property"); and

TOGETHER with all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part thereof, and all estate, rights (specifically including all of the declarant rights related to the Project and all income related thereto), titles, interests, minerals, royalties, easements, privileges, liberties, tenements, hereditaments and appurtenances, reversion or reversions, remainder and remainders whatsoever, in any way belonging, relating or appertaining to the Project or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Grantor; and

TOGETHER with all insurance policies, contracts, permits, licenses and plans now or hereafter pertaining to, affecting or concerning the Project and/or the Personal Property, including, without limitation, all rights accruing to the Grantor from any and all contracts with all contractors, architects, engineers, subcontractors or others relating to the design, development, construction, use, enjoyment, occupancy or operation of the Project, including performance and materialmen's bonds and any other related items; and

TOGETHER with all Proceeds (as defined in the UCC) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims including, without limitation, proceeds of insurance and condemnation awards;

TO HAVE AND TO HOLD the Trust Estate, with all the rights, privileges, hereditaments and appurtenances thereunto belonging or appertaining to the Trustee, his successors and assigns, in fee simple, upon the trusts and for the uses and purposes hereinafter set out; and the Grantor covenants with the Trustee that it is seized of the Land in fee simple and the Personal Property and Improvements in fee simple, and has the right to convey the same in leasehold or fee simple, as the case may be, that title is marketable and free and clear of all encumbrances except for the encumbrances described in the attached Exhibit B, and that it will warrant and defend the title to the same against the lawful claims of all persons whomsoever; provided, however, that

THIS CONVEYANCE IS MADE UPON THIS SPECIAL TRUST, that if the Grantor shall pay and perform the Note and all other Obligations secured hereby in accordance with their terms, together with interest thereon and all attorney's fees, court costs and expenses incident to the collection thereof and/or the enforcement or perfection of the lien of this conveyance, including advances made in accordance with the provisions of this Deed of Trust by the Beneficiary to protect or preserve the Trust Estate or the lien hereof, and shall comply with all the covenants, terms and conditions of this Deed of Trust, the Loan Agreement and all other Loan Documents to which it is a party, then this conveyance shall be null and void and may be

3

canceled of record at the request and at the cost of the Grantor. The Note is incorporated herein by reference as fully as if set out herein verbatim. This Deed of Trust shall constitute a security agreement and a financing statement with respect to fixtures and personal property under the UCC.

Except as otherwise defined herein, all capitalized terms herein shall have the meanings set forth in the Loan Agreement.

Section 1. <u>Representations and Covenants of Grantor</u>. The Grantor represents, warrants, covenants and agrees with the Trustee and the Beneficiary (and their respective successors and assigns) as follows:

(a) <u>Title to Trust Estate</u>. The Grantor has a good and marketable fee simple interest in the Land and good and marketable fee simple title to the Personal Property and Improvements to the extent in existence as of the date hereof.

(b) <u>Note Payments</u>. The Grantor shall make timely payments of principal and interest on the Note in the amounts, in the manner and at the place set forth therein, together with all other sums due thereunder and hereunder, when and as the same shall become due. This Deed of Trust secures payment of the Note according to its terms, which are incorporated herein by reference.

(c) <u>Performance</u>. The Grantor shall perform and comply with the provisions of the Loan Documents applicable to it.

(d) <u>Escrow Deposits</u>. Upon the occurrence of an Event of Default, the Grantor shall add to each monthly or other periodic payment required under the Note the amount estimated by the Beneficiary to be sufficient to enable the Beneficiary to pay, as they come due, all taxes, charges, assessments and insurance premiums which the Grantor is required to pay hereunder. Any deficiency occasioned by an insufficiency of such additional payments shall be forthwith deposited by the Grantor with the Beneficiary upon demand.

(e) <u>Compliance with Laws</u>. The Grantor shall promptly comply with any applicable legal requirements of the State of Tennessee or other governmental entity, agency or instrumentality relating to the Trust Estate or any part thereof, or the Grantor's operations thereon.

(f) <u>Grantor's Continuing Obligation</u>. The Grantor shall remain liable for full payment of the principal and interest on the Note and all other Obligations (or any advancement or obligation thereunder or hereunder), notwithstanding any or all of the following: (i) the sale of all or a part of the Trust Estate, (ii) the assumption by another party of the Grantor's obligations hereunder, (iii) the forbearance or extension of time for payment or performance of any obligation hereunder,

4

whether granted to the Grantor or a subsequent owner of the Trust Estate, or (iv) the release of all or any part of the Trust Estate securing such obligations or the release of any party who assumes payment of the same.  None of the foregoing shall in any way affect the full force and effect of the lien of this Deed of Trust or impair the Beneficiary's right to a deficiency judgment (in the event of foreclosure) against the Grantor or any party assuming the obligations hereunder.

(g)  Release of Collateral and Anti-Marshalling Provision.  The right is hereby given by the Grantor to the Trustee and the Beneficiary to make partial releases or releases of security hereunder (whether or not such releases are required by agreement among the parties) agreeable to the Trustee and the Beneficiary without notice to, or the consent, approval or agreement of other parties and interests, including junior lienors and purchasers subject to the lien of this Deed of Trust, which partial release or releases shall not impair in any manner the validity or priority of this Deed of Trust on the Trust Estate remaining hereunder, nor release the Grantor from personal liability for the indebtedness hereby secured. Notwithstanding the existence of any other security interests in the Trust Estate held by the Beneficiary or by any other party, the Beneficiary shall have the right to determine the order in which any or all of the Trust Estate shall be subjected to the remedies provided herein.  The Beneficiary shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein.  The Grantor and all other persons liable hereunder hereby waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

(h)  Transfer of Trust Estate or Interest in Grantor.  The Grantor shall not sell, convey, transfer, assign or encumber or permit any sale, conveyance, transfer, assignment or encumbrance of the Trust Estate or any part thereof or interest therein by operation of law or otherwise, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement.  The Grantor shall neither permit nor cause any sale, conveyance, transfer, encumbrance or assignment of any ownership interest in the Grantor, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement.  If applicable, the above prohibition shall not be deemed to apply to Grantor entering into one or more leases relating to the Improvements in the ordinary course of Grantor's business.

(i)  Uniform Commercial Code Security Agreement.  This Deed of Trust is intended by the parties hereto to be a security agreement with respect to any Personal Property and fixtures referred to herein, and the Grantor hereby grants, transfers and conveys to the Beneficiary a security interest in such Personal Property and fixtures.  The Grantor agrees that this Deed of Trust constitutes a financing statement and agrees that Beneficiary may file in all appropriate jurisdictions such

5

financing statements, extensions or amendments as the Beneficiary may require from time to time to perfect or continue the perfection of a security interest with respect to such Personal Property and fixtures. Upon the occurrence of an Event of Default, the Beneficiary shall have, in addition to its other remedies, all rights and remedies provided secured parties under the UCC. In accordance with the UCC, the notice requirements set forth herein shall be deemed to constitute reasonable notification to the Grantor of the exercise by the Beneficiary of its rights and remedies under the UCC.

(j)  Consent of Lessor. Intentionally Omitted.

(k)  Use of Trust Estate. Unless required by applicable law or unless the Beneficiary has otherwise agreed in writing, the Grantor shall not allow changes in the use for which all or any part of the Trust Estate was intended at the time this Deed of Trust was executed. The Grantor shall not initiate or acquiesce in a change in the zoning classification of the Trust Estate or any approved site plan or plan of development without the Beneficiary's prior written consent.

(l)  Books and Records. The Grantor shall keep and maintain at all times at the Grantor's address stated herein, or such other place as the Beneficiary may approve in writing, complete and accurate books of accounts and records adequate to reflect correctly the Grantor's financial condition and copies of all the written contracts, leases and other instruments which may affect the Trust Estate. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any time and from time to time as the Beneficiary may reasonably request. The Grantor shall furnish to the Beneficiary from time to time such financial information and reports, including without limitation federal and state tax returns, as Beneficiary may request, subject to the terms of the Loan Agreement.

(m)  Inspection. The Beneficiary may, at any time and from time to time, cause an inspection to be made of the Trust Estate or any part thereof by its representatives, and such representatives shall be permitted reasonable access to the Trust Estate and every part thereof. If any such inspection shows the reasonable need of restoration, repairs or maintenance and the Beneficiary makes written demand therefor, the Grantor shall proceed within thirty (30) days after such demand has been made to effect such restoration, repairs and maintenance and shall expeditiously complete the same in a good and workmanlike manner to the satisfaction of the Beneficiary.

(n)  No Wetlands. To the best of the Grantor's knowledge, no portion of the Land is located in (i) an area defined, designated or identified as a wetland by any regulatory agency having jurisdiction over the wetlands, including, but not limited to, the U.S. Army Corps of Engineers, the U.S. Environmental Protection Agency

or the U.S. Department of the Interior or any applicable local wetlands board, or (ii) a buffer area of such a wetland. Neither the Grantor nor any other party has created, destroyed, dredged, filled, drained or otherwise altered any wetlands as defined or identified by the U.S. Army Corps of Engineers (or other regulatory agency having jurisdiction over wetlands) or other regulated areas on the Land.

The Grantor's obligations hereunder shall not be limited to any extent by the term of the Note and other Obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of the Note and other Obligations which gives rise to liability hereunder, the Grantor's obligations hereunder shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of the Note and other Obligations and performance under this Deed of Trust or foreclosure under this Deed of Trust, or delivery of a deed in lieu of foreclosure.

Section 2. <u>No Merger</u>. Unless the Beneficiary shall otherwise expressly consent in writing, the fee title to the Improvements and the Estate shall not merge, but shall always remain separate and distinct, notwithstanding the union of the aforesaid estates in the Grantor as lessee or a third party by purchase or otherwise. In the event the fee title to the Improvements and the Estate shall merge notwithstanding the terms of this Deed of Trust, the lien of this Deed of Trust shall, <u>ipso</u> <u>facto</u>, without the necessity of any further conveyance, simultaneously with such acquisition, be spread to cover such acquired estate and as so spread shall be prior to the lien of any deed of trust or any mortgage placed on the acquired estate subsequent to the date of this Deed of Trust.

Section 3. <u>Maintenance, Operation and Modification of Trust Estate</u>.

(a)  The Trustee shall not be under any obligation to operate, maintain or repair the Trust Estate or any portion thereof. The Grantor agrees that until payment of the Note and all other Obligations shall be made it will at its own expense (i) use, maintain and operate the Trust Estate, or cause it to be used, maintained and operated, in accordance with applicable laws, rules and regulations, (ii) keep the Trust Estate or cause it to be kept in as reasonably safe condition as similar properties, (iii) keep the Trust Estate or cause it to be kept in good repair and in good operating condition subject to ordinary wear and tear and obsolescence, free and clear of all encumbrances except those permitted hereunder, and (iv) make or cause to be made from time to time all necessary repairs thereto and renewals and replacements thereof. The Grantor shall not permit or suffer others to commit a nuisance in connection with its use or occupancy of the Trust Estate.

(b)  The Grantor may, also at its own expense, make from time to time any additions, modifications or improvements to the Trust Estate that it may deem desirable for its business purposes and that do not materially impair the effective use, or materially decrease the value, of the Trust Estate. All such additions,

modifications and improvements so made by the Grantor within the boundaries of the Trust Estate shall become a part of the Trust Estate.

Section 4. <u>Taxes, Other Governmental Charges, Utility Charges</u>.  Before delinquency the Grantor shall pay or cause to be paid, all taxes and governmental charges of any kind whatsoever that may be lawfully assessed, levied or imposed with respect to the Trust Estate.  The Grantor shall pay or cause to be paid as the same become due all utility and other charges incurred in the operation, maintenance, use and occupancy of the Trust Estate and all assessments and charges lawfully made by any governmental body for public improvements to the Trust Estate.  The Grantor may allow to exist any indebtedness for any such tax, assessment, charge, levy or claim, provided any such tax, assessment, charge, levy or claim is being contested in good faith by appropriate proceedings and the Grantor shall have established and maintained adequate reserves for the payment of the same.

Section 5. <u>Environmental Representations and Covenants</u>

(a)  To the best of Grantor's knowledge, the Land is free from reportable quantities of Hazardous Substances (hereinafter defined), and no portion of the Land would subject the Grantor to liability under any applicable federal, state or local law, rule or regulation pertaining to Hazardous Substances or the environment (collectively, "Environmental Laws") because of the presence of stored, leaked or spilled Hazardous Substances, or the past or present accumulation, spillage or leakage of any such Hazardous Substance, nor has the Grantor arranged for disposal or treatment (or arranged with a transporter for transport for disposal or treatment) of any such substance to any other location except in compliance with Environmental Laws.  The Grantor has received no notice from the Environmental Protection Agency or any other governmental authority alleging that it is a "responsible party" with respect to any of the foregoing.  For purposes hereof, "Hazardous Substances" means all waste materials and toxic substances subject to regulation or defined as such under the Comprehensive Environmental Response, Compensation, and Liability Act as modified by the Superfund Amendments and Reauthorization Act of 1986, the Resource Conservation and Recovery Act, the Clean Air Act, the Federal Water Pollution Control Act, the Toxic Substances Control Act, or any other applicable federal, state or local laws, rules or regulations now in force or hereafter enacted (including, without limitation, Environmental Laws) relating to hazardous waste disposal, storage or treatment or environmental conservation.

(b)  The Grantor shall remain in compliance in all material respects with the provisions of all Environmental Laws and shall notify the Beneficiary immediately of any notice of a hazardous discharge from or about the Trust Estate or any environmental complaint received from any governmental authority or any other person.

8

(c)     In the event of any such discharge or complaint described in (b) above, the Grantor shall immediately contain and/or remove the same, in compliance with all applicable Environmental Laws, and permit the Beneficiary to inspect the Trust Estate, to conduct tests thereon, and to inspect all books, correspondence and records pertaining thereto, and at the Beneficiary's request, and at the Grantor's expense, provide a report of a qualified environmental engineer satisfactory in scope, form, and contents to the Beneficiary, and such other and further assurances reasonably satisfactory to the Beneficiary that the condition or complaint has been corrected.

(d)     The Grantor shall indemnify and hold the Beneficiary harmless from and against any and all damages (including punitive damages), penalties, fines, claims, liens, suits, liabilities, costs (including clean-up and remediation costs), judgments and expenses (including attorneys', consultants', or experts' fees and expenses) of every kind and nature suffered by or asserted against the Beneficiary (collectively, the "Damages") as a direct or indirect result of any warranty or representation made by the Grantor in this Section 8 being false or untrue in any respect or of any requirement under any Environmental Law, which requires the elimination, disposal, treatment or removal of any Hazardous Substances or other environmentally regulated substances by the Beneficiary, the Grantor or any transferee of the Grantor or the Beneficiary.

The Grantor's obligations and indemnifications hereunder shall not be limited to any extent by the term of the Note and other Obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of the Note and other Obligations or termination of the Loan Agreement which gives rise to liability hereunder (or, if earlier, foreclosure, deed in lieu or release of this Deed of Trust), the Grantor's obligations and indemnifications hereunder shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of the Note or termination of the Loan Agreement and release of this Deed of Trust or foreclosure under this Deed of Trust, or delivery of a deed in lieu of foreclosure.

Section 6. Insurance. The Grantor shall continuously maintain, or as applicable, cause to be maintained, insurance against such risks as are customarily insured against by businesses of like size and character, paying (or causing to be paid, as applicable) as the same become due all premiums in respect thereto, including without limitation the following insurance which shall be maintained with respect to the Trust Estate:

(a)     Insurance in the amount equal to the greater of the outstanding balance due on the Note or one hundred percent (100%) of the full replacement cost of any Improvements and all Personal Property, against loss or damage with broad form, all risk or extended coverage including damage by fire, lightning, windstorm, explosion, aircraft, smoke, sprinkler leakage, vandalism, malicious mischief and such other risks as are normally included within such coverage (limited only as may be provided in the standard form for such coverage at the time in use in the

State of Tennessee), provided that during the period of acquisition, construction and equipping of the Improvements and the Personal Property, the Grantor may provide or cause to be provided in lieu of the insurance set forth above a builders' risk or similar type of insurance in the amount of the full replacement cost thereof minus site work not normally insured;

(b) Public liability insurance, covering all liabilities incident to the ownership, possession, occupancy and operation of the Trust Estate and naming Beneficiary as an additional insured thereunder, having limits for each accident, each person, and for property damage in such amounts and with such deductibles as are reasonably satisfactory to the Beneficiary;

(c) Workers' compensation insurance in accordance with applicable requirements of law;

(d) Use and occupancy or business interruption insurance to the extent necessary to insure payments under the Note in the event of damage to or destruction of the Improvements and the Personal Property for a period of one year next succeeding such damage or destruction;

(e) Insurance in the amount of the full replacement cost of the Trust Estate against loss or damage by flood, unless the Grantor shall present evidence reasonably satisfactory to the Beneficiary that the Land is not located in a flood hazardous or flood prone area, as defined in the National Flood Insurance Act of 1968, as amended; and

(f) Additional types of insurance in such amounts and coverages and against such other insurable hazards or risks as are customarily insured against in the case of properties similar in nature and use as the Trust Estate or as may from time to time be required by the Beneficiary.

Any determination of replacement cost required by this Section shall be made by a recognized appraiser or insurer acceptable to the Beneficiary.

Section 7. <u>Additional Provisions Respecting Insurance</u>.

(a) All insurance shall be taken out and maintained with generally recognized responsible insurance companies qualified to do business in the State of Tennessee selected and/or approved, as applicable, by the Grantor and acceptable to the Beneficiary and may be written with deductible amounts comparable to those on similar policies carried by other businesses of like size and character.

(b) In the event of any loss, the Grantor shall give immediate notice thereof to the Beneficiary. The policies of insurance required by Section 9 shall be satisfactory

10

in form and substance to the Beneficiary and shall contain New York Standard Mortgagee Long-Form Loss Payable clauses naming the Beneficiary as mortgagee or loss payee and requiring that all net proceeds resulting from any claim in excess of $10,000 be paid to the Beneficiary, and the insurance proceeds for such claims or any part thereof may be applied by the Beneficiary at its option upon notice to the Grantor to the indebtedness hereby secured or for the repair or restoration of the Trust Estate, subject however in all instances to the provisions of Section 11 below. If the insurance proceeds are applied to the indebtedness secured hereby, it may be applied in such manner as the Beneficiary may desire upon notice to the Grantor.

(c)    The Grantor shall not permit any condition to exist on the Trust Estate which would wholly or impartially invalidate the insurance thereon. The Beneficiary, on behalf of the Grantor, may adjust and compromise any claims under such insurance policies and collect and receive the proceeds thereof and is hereby irrevocably appointed attorney-in-fact for the Grantor for such purposes, and may deduct from the proceeds any expenses reasonably incurred by the Beneficiary. This power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked. Each policy shall contain an undertaking by the insurer that such policy shall not be modified adversely to the interests of the Beneficiary or canceled without at least thirty (30) days' prior notice to the Beneficiary.

(d)    All such policies shall be deposited with the Beneficiary, provided that in lieu of such policies there may be deposited with the Beneficiary a certificate or certificates of the respective insurers attesting the fact that the insurance required by this Section and Section 9 are in full force and effect. The coverages under the foregoing builder's risk or hazard insurance policy shall be in an amount sufficient to prevent the Grantor or the Beneficiary from becoming a co-insurer within the terms of the applicable policies. If requested by the Beneficiary, the Grantor shall furnish to the Beneficiary prior to the date hereof, and annually thereafter a certificate of a person selected by the Grantor and knowledgeable in the insurance business who is not an officer, a partner, a member or employee, as applicable, of the Grantor, reciting that all policies required to be in effect at that time are in full force and effect and that the amounts and types of insurance evidenced thereby comply with and satisfy all the requirements of this Section.

Section 8.   Damage, Destruction, Condemnation, Loss of Title and Application of Proceeds.

(a)    In case of any material damage to or destruction of any part of the Improvements, the Grantor shall give prompt notice thereof to the Beneficiary. In case of a taking of all or any part of the Project or any right therein under the exercise of the power of eminent domain or any loss thereof because of failure of title thereto or the commencement of any proceedings or negotiations which might result in such a taking or loss, the Grantor shall give prompt notice to the Beneficiary.

11

Each such notice shall describe generally the nature and extent of such damage, destruction, taking, loss, proceeding or negotiation.

(b)     Unless the Grantor shall have exercised its option to prepay the Note, if (i) the Land or the Improvements or any portion thereof are damaged or destroyed or (ii) title to or any interest in, or the temporary use of, the Land or the Improvements or any part thereof shall be taken under the exercise of the power of eminent domain, or sold in lieu thereof, or loss of title has occurred, the Grantor shall be obligated to continue to make payments hereunder, under the Note and all other Obligations.

(c)     Upon written request of the Beneficiary, the net proceeds of any insurance (including title insurance) or condemnation award resulting from any event described heretofore in this Section shall be deposited in a separate trust fund to be held by the Beneficiary. So long as no Event of Default has occurred, all net proceeds whether or not so deposited in a separate trust fund shall be applied in one or more of the following ways as shall be elected by the Grantor in a written notice to the Beneficiary:

(i)     To the prompt repair, restoration, modification or improvement of the Trust Estate. In the event such net proceeds are deposited in a separate trust fund held by the Beneficiary, such disbursements shall be made by the Beneficiary only upon receipt of proper requisitions therefor. Any balance of the net proceeds remaining after such work has been completed shall be applied in accordance with clause (ii) below, or if the Note and all other Obligations has been fully paid, any balance remaining in such separate trust fund shall be paid immediately to the Grantor.

(ii)    To the immediate prepayment of the Note, provided that no part of such net proceeds may be applied for such prepayment unless (A) the Note is to be prepaid in whole or (B) in the event that the Note is to be prepaid in part, the Grantor shall furnish to the Beneficiary a certificate of an authorized representative of the Grantor stating that (1) the property forming the part of the Trust Estate that was damaged or destroyed or was taken or to which title was lost is not essential to the use of the remaining Trust Estate by the Grantor or (ii) the Trust Estate (or such portion thereof) has been repaired, restored, modified or improved to operate as designed.

(d)     If the net proceeds are insufficient to pay in full the cost of any repair, restoration, modification or improvement referred to heretofore, the Grantor will nonetheless complete the work and will pay any cost in excess of the amount of the net proceeds received. The Grantor agrees that if by reason of any such insufficiency of the net proceeds, the Grantor shall make any payments pursuant to the

provisions of this Section, the Grantor shall not be entitled to any reimbursement therefor from the Beneficiary, nor shall the Grantor be entitled to any diminution of the amounts payable hereunder, under the Note or other Obligations.

Section 9. <u>Grantor to Furnish Proof of Payment of Taxes, etc</u>. The Grantor shall furnish the Beneficiary, upon written request, proof of payment of any taxes, governmental charges, utility charges, insurance premiums or other charges required to be paid by the Grantor (or, as applicable, such other Person in possession) under this Deed of Trust.

Section 10. <u>Grant and Release of Easements</u>. If no Event of Default shall have occurred and be continuing, the Grantor may at any time or times grant easements, licenses, rights of way and other rights or privileges in the nature of easements with respect to any part of the Trust Estate and the Grantor may release existing interests, easements, licenses, rights of way and other rights or privileges with or without consideration and the Beneficiary agrees that it shall execute and deliver, all at the expense of the Grantor, and will cause, request or direct the Trustee to execute and deliver, as applicable, any instrument necessary or appropriate to grant or release any such interest, easement, license, right of way or other right or privilege, but only upon receipt of (a) a copy of the instrument of grant or release, (b) a written application signed by an authorized representative of the Grantor, requesting the execution of such instrument, and (c) a certificate executed by an authorized representative of the Grantor, stating that such grant or release (i) is not detrimental to the proper conduct of the operations of the Grantor at the Trust Estate and (ii) will not impair the effective use of or interfere with the operations of the Grantor at the Trust Estate and will not impair the security for the Note under this Deed of Trust or the Loan Agreement in contravention of the provisions hereof or thereof.

Section 11. *Intentionally omitted.*

Section 12. <u>Assignment of Leases</u>. (a) The Grantor hereby assigns, transfers and conveys unto the Beneficiary all right, title and interest of the Grantor in and to all leases, subleases and demises of tenancy, whether now existing or hereafter created of the Trust Estate (all such leases, subleases, rents and demises of tenancy being referred to herein collectively as the "Leases"), together with all rents, income and profits to be had or derived therefrom, all benefits of any and all guaranties thereof and all extensions and renewals of the term of any thereof, together with all right, title and interest of the Grantor in and pursuant to the Leases, including without limitation the present and continuing right to make claim for, collect, receive and receipt for any of the rents, income and profits and any other sums of money payable or receivable under the Leases, to bring actions and proceedings thereunder for the enforcement thereof, and to do any and all things which the Grantor under the Leases is or may become entitled to.

(b)     The assignment made by this Section is conditional, and so long as no Event of Default hereunder has occurred and is continuing, the Grantor shall have the right and privilege to collect, consume, use and enjoy the rents, income and profits from the Leases without the necessity of any person(s) assuring the application of such rents, income and profits to the Obligations or the interests of the

Beneficiary hereunder, provided that, such rights reserved unto the Grantor hereunder shall not prejudice nor operate as a waiver of any right, privilege, or interest of the Beneficiary to have and derive all future rents, income and profits arising under the Leases from and after the occurrence of an Event of Default.

(c)     The Grantor further covenants, represents, warrants and agrees that:

(i)     Upon written request of the Beneficiary, the Grantor shall furnish to the Beneficiary a true copy of any Lease.  The Grantor shall perform all covenants and agreements on its part to be performed under each Lease so as not to permit a cancellation thereof and shall not make any other assignment, pledge or other disposition of any Lease or any of the rents, income and profits receivable thereunder, nor make any material change with respect to the computation of rent due under any Lease, nor modify, alter or amend materially any Lease, nor reduce any rent nor shorten the term or otherwise adversely affect in any other respect to any material extent the rights of the Grantor or the Beneficiary thereunder, nor consent to an assignment or Lease of the lessee's or tenant's interest thereunder, without having obtained the prior consent of the Beneficiary.

(ii)    The Leases in existence as of the date of this Deed of Trust are valid, in full force and effect, evidence fully the entire agreement between the Grantor, as landlord, and the respective lessees and tenants under the Leases, and have not been the subject of any prior assignment, pledge or disposition by the Grantor.

(iii)   As of the date of this Deed of Trust, to the knowledge of the Grantor, (A) there exists no default by the Grantor or by any lessee or tenant under any provision of the Leases, (B) no rents, income or profits payable thereunder have been, or will hereafter be, anticipated or discounted, and (C) the lessees and tenants under the Leases have no defenses, rights of setoff or counterclaims against the Grantor.

(iv)    The Grantor shall not undertake or assume for or on behalf of the Beneficiary any covenant, obligation, duty or liability in respect to the Leases, and in no event shall the Grantor have any power or authority to bind the Beneficiary to any covenant or agreement with respect to any leasehold interest in the Trust Estate or in any manner to represent the Beneficiary as the Beneficiary's agent.

(d)     Upon the occurrence and continuation of an Event of Default, the Beneficiary shall have the right, authority and power at its sole option, (i) to enter upon, and take possession of, the Trust Estate, (ii) to collect the rents, income and profits under the Leases, (iii) to exercise all of the rights and privileges of the Grantor

14

thereunder, and (iv) until foreclosure of this Deed of Trust, to apply the net rentals and income, after payment of all proper costs and charges, to the sums due the Beneficiary under the terms of the Loan Documents in such manner as the Beneficiary, in its sole discretion, may determine.   Such entry in taking possession of the Trust Estate may be made by actual entry upon the Trust Estate, or, constructively, by written notice served either personally or by registered mail upon the Grantor and any lessees under the Leases or tenants in possession of the Trust Estate, and no further authorization shall be required.  If the Beneficiary shall exercise the rights and remedies afforded it under this subsection, and the Grantor shall thereafter cure any such default, of which fact the judgment of the Beneficiary shall be conclusive, the Grantor and the Beneficiary shall be restored to their respective rights and estates hereunder as if no default had occurred.

(e)     In the event of foreclosure under this Deed of Trust, without regard to the judicial or nonjudicial nature of any such foreclosure, the Beneficiary shall have the right to assign, sell, transfer or convey, with or without consideration, its rights as assignee of the Leases to any person(s) claiming title to the Trust Estate or any part thereof by virtue of the foreclosure proceedings, and no such proceedings shall operate to terminate the Leases or otherwise excuse any lessees or tenants from their obligations to pay rent or perform and observe the covenants of their leasehold.

(f)     A demand on any lessee or tenant under the Leases by the Beneficiary for the payment to the Beneficiary of any sum due the Grantor under any Lease or otherwise upon any default of the Grantor and the exercise by the Beneficiary of its rights and remedies hereunder shall be sufficient to warrant any such lessee or tenant to make such payment to the Beneficiary without the necessity for further consent by the Grantor and after the occurrence of an Event of Default, the Grantor hereby grants the Grantor's power of attorney to the Beneficiary for such purpose, said power being coupled with an interest and irrevocable for the term hereof.  The Beneficiary shall not be liable for any loss sustained by the Grantor or any other person relative to the Trust Estate before or after default or from any act or omission of the Beneficiary while in possession of the Trust Estate, except for loss arising from the Beneficiary's willful misconduct or gross negligence, nor shall the Beneficiary be obligated to perform or discharge any obligation, duty or liability relative to the Trust Estate or any portion thereof or to the maintenance or operation of same under or by reason of this assignment.  This assignment shall not operate to place responsibility for the control, care, management or repair of the Trust Estate, nor the carrying out of any of the terms and conditions of any Lease, on the Beneficiary.

(g)     IT IS EXPRESSLY A CONDITION AND COVENANT OF THIS ASSIGNMENT AND THE ENTRY OF ANY PERSON UPON THE TRUST ESTATE, IN ANY CAPACITY WHATSOEVER, INCLUDING, BUT

15

WITHOUT WAY OF LIMITATION, ANY LESSEE OR TENANT UNDER THE LEASES, THAT THE BENEFICIARY SHALL HAVE NO RESPONSIBILITY OR LIABILITY FOR ANY WASTE COMMITTED ON THE TRUST ESTATE, OR FOR ANY NEGLIGENCE IN THE MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE TRUST ESTATE BY THE GRANTOR RESULTING IN LOSS, INJURY OR DEATH TO ANY SUCH PERSON. THE RIGHT, TITLE AND INTEREST OF THE BENEFICIARY HEREUNDER ARE CONDITIONAL, AND THE BENEFICIARY SHALL BE DEEMED, AND HAVE THE RIGHTS OF AND PROTECTIONS AFFORDED, A MORTGAGEE NOT IN POSSESSION OF THE TRUST ESTATE UNTIL SUCH EVENT AS THE BENEFICIARY IS IN ACTUAL POSSESSION, MANAGEMENT AND CONTROL THEREOF.

(h)    Upon payment of the Note and all other Obligations and the performance and observance of the provisions hereof, this assignment shall cease and terminate and all of the right, title, interest, claim and demand of the Beneficiary in the Leases shall revert to the Grantor or to such other person as may be legally entitled thereto, and the Beneficiary shall at the request of the Grantor or any such person deliver to the Grantor or any such person an instrument, in recordable form if requested, canceling and discharging such assignment.

Section 13.    Events of Default, Remedies Upon Default.

(a)    An "Event of Default" hereunder shall occur:

(i)    if the Grantor shall fail to make any payment of principal or interest with respect to the Note or any of the Obligations on the due date thereof, whether at maturity, by notice to prepay or otherwise (and after the expiration of any applicable grace or cure period);

(ii)    if the Grantor shall fail to observe and perform any other covenant, condition or agreement on the part of the Grantor under this Deed of Trust for a period of thirty (30) days after notice, specifying such failure and requesting that it be remedied, is given to the Grantor by the Beneficiary, unless the Beneficiary shall agree in writing to an extension of such time prior to its expiration, or in the case of any such default that cannot be cured within such thirty (30) day period, if the Grantor shall fail to proceed promptly to cure the same and thereafter prosecute the curing of the same with due diligence; or

(iii)    if an Event of Default under the Loan Agreement shall occur after the expiration of any applicable grace or cure period.

16

(b)     Upon the occurrence and continuation of an Event of Default, the Beneficiary may declare all payments under the Note and all other Obligations to be immediately due and payable in an amount sufficient to pay all the principal of and premium, if any, and accrued interest on the Note and all such other Obligations, whereupon the same shall become immediately due and payable.

(c)     All rights of action under this Deed of Trust or in respect of the Note or any other Loan Document, if permitted by applicable law, may be enforced by the Beneficiary without the production of the Note, this Deed of Trust or any other Loan Document at any trial or other proceeding relating thereto. The Beneficiary shall have the right to enter upon the Trust Estate to such extent and as often as the Beneficiary, in its sole discretion, deems necessary or desirable in order to cure any default by the Grantor.  In the event of an uncured default, the Beneficiary may take possession of all or any part of the Trust Estate together with the books, papers and accounts of the Grantor pertaining thereto and may hold, operate and manage the same, and from time to time make all needful repairs and improvements as shall be deemed expedient by the Beneficiary; and the Beneficiary may lease any part of the Trust Estate in the name of and for the account of the Grantor and collect, receive and sequester the rent, revenues, receipts, earnings, income, products and profits therefrom, and out of the same and from any moneys received from any receiver of any part thereof pay, and set up proper reserves for the payment of, all proper costs and expenses of so taking, holding and managing the same, including reasonable compensation to the Beneficiary, its agents and counsel, and any charges of the Beneficiary hereunder, and any taxes and assessments and other charges prior to the lien of this Deed of Trust which the Beneficiary may deem it proper to pay, and all expenses of such repairs and improvements, and apply the remainder of the moneys so received in accordance with the provisions hereof.

(d)     The Beneficiary shall have the right, upon the occurrence and continuation of an Event of Default, to the appointment of a receiver to collect the rents and profits from the Trust Estate without consideration of the value of the premises or the solvency of any person liable for the payment of the amounts then owing, and all amounts collected by the receiver shall, after expenses of the receivership, be applied to the payment of the indebtedness hereby secured, and the Beneficiary, at its option, in lieu of an appointment of a receiver, shall have the right to do the same.  If such receiver should be appointed or if there should be a sale of the Trust Estate, as provided below, the Grantor, or any person in possession of the Trust Estate, as tenant or otherwise, shall become a tenant at will of the receiver or of the purchaser and may be removed by a writ of ejectment, summary ejectment or other lawful remedy.

17

(e)  Upon the occurrence and continuation of an Event of Default, the Beneficiary shall have the right to assign to any other person, for lawful consideration, any rents, revenues, earnings, income, products and profits receivable under this Deed of Trust, provided that the proceeds of any such assignment shall be applied as provided in this Deed of Trust.

(f)  Upon the occurrence and continuation of an Event of Default, the Trustee is hereby authorized and empowered, upon application of the Beneficiary, to expose to sale the Trust Estate at public auction for cash, after first having complied with all applicable requirements of Tennessee law with respect to the exercise of powers of sale contained in deeds of trust, to enter and take possession of the Trust Estate and before or after such entry to advertise the sale of the Trust Estate for twenty-one days by three weekly notices in some newspaper published in Loudon County, Tennessee, and sell the Trust Estate for cash to the highest bidder, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, and all other exemptions now or hereafter available, all of which are hereby expressly waived; and the Trustee shall execute a conveyance to the purchaser in fee simple, and deliver possession to the purchaser, which the Grantor binds itself shall be given without obstruction, hindrance or delay.  The Grantor further hereby authorizes the Beneficiary to take whatever marketing activities are deemed reasonable by the Beneficiary to sell or lease the Trust Estate and agrees to cooperate with the Beneficiary or its representatives in such sale and lease efforts, including but not limited to entering into a marketing, sale or lease agreement for the sale or lease of the Trust Estate satisfactory to the Beneficiary in its reasonable judgment.

The Trustee may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may without further notice, be made at the time and place to which it is so adjourned.  The Trustee may offer for sale in any order interests comprising the Trust Estate separately or together as an entire interest.  The sale or lease of a part of the Trust Estate shall not affect the lien conveyed to the Beneficiary by the Grantor in this Deed of Trust encumbering the remaining Trust Estate.

The Grantor agrees that in the event of a sale or further lease hereunder the Beneficiary shall have the right to bid thereat and to become the purchaser.  The Trustee may require the successful bidder at any sale to deposit immediately with the Trustee cash or a certified check in an amount determined by the Trustee, provided notice of such requirement is contained in the advertisement of the sale. The bid may be rejected if the deposit is not immediately made and thereupon the next highest bidder may be declared to be the purchaser.  The sale of the Trust Estate or any part thereof or any interest therein, whether pursuant to foreclosure, power of sale or otherwise under this Deed of Trust, shall, to the extent permitted by law, forever bar any claim with respect to the Trust Estate by the Grantor.

18

(g)    If upon the occurrence and continuation of an Event of Default, the Beneficiary may exercise in addition to all other rights and remedies granted to it in this Deed of Trust and in any other instrument or agreement securing, evidencing or relating to the Loan, all rights and remedies of a secured party under the UCC.

(h)    Without limiting the generality of the foregoing, the Grantor expressly agrees that in any such event the Beneficiary, without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of time and place of public or private sale) to or upon the Grantor or any other person (all and each of which demands, advertisements and/or notices are hereby expressly waived), may forthwith collect, receive, appropriate and realize upon the collateral in the Trust Estate governed by the UCC (the "UCC Collateral") or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or sell or otherwise dispose of and deliver such UCC Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange broker's board or at any of the Beneficiary's offices or elsewhere at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Beneficiary shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the UCC Collateral so sold, free of any right or equity of redemption in the Grantor released.

The Grantor further agrees, at the Beneficiary's request, to assemble the UCC Collateral, make it available to the Beneficiary at places which the Beneficiary shall select which shall be reasonably convenient to the Beneficiary and the Grantor, whether at the Grantor's premises or elsewhere. The Beneficiary shall, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care, safekeeping or otherwise of any or all of the UCC Collateral or in any way relating to the rights of the Beneficiary hereunder, including reasonable attorneys' fees and legal expenses, apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale to the payment in whole or in part of the Note and all other Obligations, in such order as the Beneficiary may elect, the Grantor remaining liable for any deficiency remaining unpaid after such application, and only after so paying over such net proceeds and after the payment by the Beneficiary of any other amount required by any provision of law, including Section 9-608 of the UCC, need the Beneficiary account for the surplus, if any, to the Grantor.

To the extent permitted by applicable law, the Grantor waives all claims, damages, and demands against the Beneficiary arising out of the repossession, retention or sale of the UCC Collateral. The Grantor agrees that the Beneficiary need not give more than ten (10) days' prior notice (which notification shall be

deemed given when mailed, postage prepaid, addressed to the Grantor at its address set forth hereinafter) of the time and place of any public sale or of the time after which a private sale may take place with respect to UCC Collateral and that such notice is reasonable notification of such matters.

(i)     The Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Trust Estate are insufficient to pay all amounts to which the Beneficiary is entitled, the Grantor also being liable for the fees of any attorneys employed by the Beneficiary to collect such deficiency.

(j)     The Grantor hereby waives, to the fullest extent it lawfully may, the benefit of all appraisement, valuation, stay, moratorium, exemption from execution, extension and redemption laws and any statute of limitations, now or hereafter in force, and all rights of marshalling in the event of the sale of the Trust Estate or any part thereof or any interest therein.

(k)     The Beneficiary and the Trustee (with the permission of the Beneficiary) may grant any extension, forbearance or other indulgence, may release any part of the Trust Estate from the lien hereof and may release any person from liability without affecting the personal liability of any person liable for payment of the indebtedness secured hereby or the lien hereof.

(l)     The foregoing shall in no way be construed to limit the powers of sale or to restrict the discretion the Beneficiary or the Trustee may have under the provisions of Tennessee law, as the same may be from time to time amended. Each legal, equitable or contractual right, power or remedy of the Beneficiary or the Trustee now or hereafter provided herein or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power and remedy, and the exercise or beginning of the exercise by the Beneficiary or the Trustee of any one or more of such rights, powers and remedies shall not preclude the simultaneous or later exercise of any or all such other rights, powers and remedies.

(m)     If the indebtedness secured hereby is now or hereafter further secured by chattel mortgages, deeds of trust, security agreements, pledges, contracts of guaranty, assignments of leases, or other security, the Beneficiary may, at its option, exhaust its remedies under any one or more of said security instruments, and this Deed of Trust, either concurrently or independently, and in such order as the Beneficiary may determine. The exercise of any rights under any of said security instruments shall not constitute a release or waiver of rights under any other security instruments.

Section 14.  Application of Proceeds:  The proceeds of (a) the operation and management of the Trust Estate, (b) any sale of a part of the Trust Estate or any interest therein, whether pursuant to

foreclosure, power of sale or otherwise, and (c) any insurance policies or condemnation awards or other sums received by the Trustee after the occurrence of an Event of Default shall be applied to pay:

First:  The costs and expenses of sale, reasonable attorneys' fees, the Trustee's commissions, court costs and any other expenses or advances made or incurred in the protection of the rights of the Beneficiary or the Trustee or in the pursuance of any remedies hereunder;

Second:  Any lien prior to the lien of this Deed of Trust which the Beneficiary or the Trustee may consider necessary or desirable to discharge;

Third:  Any indebtedness secured by this Deed of Trust and at the time due and payable (whether by acceleration or otherwise), including all amounts of principal and interest at the time due and payable with respect to the Note; and

Fourth:  The balance, if any, to the persons then entitled thereto under the Loan Agreement or applicable law.

Section 15. <u>Payment of Costs, Attorneys' Fees and Expenses</u>. Upon the occurrence of an Event of Default, the Grantor shall pay any and all reasonable costs, attorneys' fees and other expenses of whatever kind incurred by the Beneficiary or the Trustee in connection with (a) obtaining possession of the Trust Estate, (b) the protection and preservation of the Trust Estate, (c) the collection of any sum or sums secured hereby, (d) any litigation involving the Trust Estate, this trust, any benefit accruing by virtue of the provisions hereof, or the rights of the Trustee or the Beneficiary hereunder, (e) the presentation of any claim under any administrative or other proceeding in which proof of claim is required by law to be filed, (f) any additional examination of the title to the Trust Estate which may be reasonably required by the Beneficiary or the Trustee, or (g) taking any steps whatsoever in enforcing this Deed of Trust, in claiming any benefit accruing by virtue of the provisions hereof, or in exercising the rights of the Beneficiary hereunder or the Trustee.

Section 16. <u>Advances by Beneficiary</u>. The Beneficiary is authorized, for the account of the Grantor, to make any required payments under any lien prior hereto, or under this Deed of Trust, the non-payment of which would constitute a default, including but not limited to payments on the Note and payments of taxes and insurance premiums. All sums so advanced shall bear interest from the date of the advance to the date of repayment at the highest rate provided for in the Note, shall attach to and become part of the Obligations secured hereby, and shall become payable at any time on demand therefor. The failure by the Grantor to make payment after demand shall, at the option of the Beneficiary, constitute an Event of Default hereunder.

Section 17. <u>The Trustee</u>.

21

(a)     The Trustee shall be under no duty to take any action hereunder except as expressly required, or to perform any act which would involve him in expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to his satisfaction.

(b)     All reasonable expenses, charges, counsel fees and other disbursements incurred by the Trustee in and about the administration and execution of the trusts hereby created, and the performance of his duties and powers hereunder, shall be secured by this Deed of Trust prior to the indebtedness represented by the Note, and shall bear interest at the highest rate provided for in the Note.  The Beneficiary shall at any time have the irrevocable right to remove the Trustee herein named without notice or cause and to appoint his successor by an instrument in writing, duly acknowledged, in such form as to entitle such written instrument to be recorded in the State of Tennessee and in the event of the resignation of the Trustee herein named, the Beneficiary shall have the right to appoint his successor by such written instrument, and any successor Trustee so appointed shall be vested with title to the Trust Estate, and shall possess all the powers, duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though named herein as Trustee.  The Trustee shall be clothed with full power to act when action hereunder shall be required, and to execute any conveyance of the Trust Estate required or permitted hereby.  Any requirement that the Trustee, or any successor in trust, make oath or give bond, is expressly waived.  The Trustee, or anyone acting in his stead, shall have, in his discretion, authority to employ all proper agents and attorneys in the execution of this trust and/or in the conducting of any sale made pursuant to the terms hereof, and to pay for such services rendered out of the proceeds of the sale of the Trust Estate, should any be realized; and if no sale be made then the Grantor hereby undertakes and agrees to pay the cost of such services rendered to the Trustee.

Section 18.     General Indemnity by Grantor.

(a)     The Grantor shall indemnify, save, and hold harmless the Beneficiary and its directors, officers, agents, attorneys, and employees (collectively, the "Indemnitees") from and against: (i) any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any person if the claim, demand, action, or cause of action directly or indirectly relates to a claim, demand, action, or cause of action that the person asserts or may assert against Grantor, any affiliate of Grantor or any officer, director, partner, member or shareholder of Grantor, as applicable, (ii) any and all claims, demands, actions or causes of action that are asserted against any Indemnitee if the claim, demand, action or cause of action directly or indirectly relates to this Deed of Trust, the use of proceeds of the Note, or the relationship of Grantor and Beneficiary under this Deed of Trust or any transaction contemplated pursuant to this Deed of Trust, (iii) any administrative or investigative proceeding by any governmental authority

22

directly or indirectly related to a claim, demand, action or cause of action described in clauses (i) or (ii) above, and (iv) any and all liabilities, losses, costs, or expenses (including attorneys' fees and disbursements) that any Indemnitee suffers or incurs as a result of any of the foregoing; provided, however, that Grantor shall have no obligation under this Section to the Beneficiary with respect to any of the foregoing arising out of the gross negligence or willful misconduct of the Beneficiary or the breach by the Beneficiary of this Deed of Trust or from the transfer or disposition of the Note by the Beneficiary.

(b)     If any claim, demand, action or cause of action is asserted against any Indemnitee, such Indemnitee shall promptly notify Grantor, but the failure to so promptly notify Grantor shall not affect Grantor's obligations under this Section unless such failure materially prejudices Grantor's right to participate in the contest of such claim, demand, action or cause of action, as hereinafter provided.  If requested by Grantor in writing and so long as no Event of Default shall have occurred and be continuing, such Indemnitee shall in good faith contest the validity, applicability and amount of such claim, demand, action or cause of action and shall permit Grantor to participate in such contest.  Any Indemnitee that proposes to settle or compromise any claim or proceeding for which Grantor may be liable for payment of indemnity hereunder shall give Grantor written notice of the terms of such proposed settlement or compromise reasonably in advance of settling or compromising such claim or proceeding and shall obtain Grantor's concurrence thereto.

(c)     Each Indemnitee is authorized to employ counsel at the expense of the Grantor in enforcing its rights hereunder and in defending against any claim, demand, action, or cause of action covered by this Section; provided, however, that each Indemnitee shall endeavor, but shall not be obligated, in connection with any matter covered by this Section which also involves other Indemnitees, to use reasonable efforts to avoid unnecessary duplication of effort by counsel for all Indemnitees.

(d)     Any obligation or liability of Grantor to any Indemnitee under this Section shall survive the expiration or termination of this Deed of Trust and the repayment of the Note and all other Obligations.

Section 19. WAIVER OF JURY TRIAL.  THE BENEFICIARY AND THE GRANTOR HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (ORAL OR WRITTEN), OR ACTIONS OF THE BENEFICIARY OR THE GRANTOR. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BENEFICIARY ACCEPTING THIS DEED OF TRUST.

23

Section 20. Miscellaneous.

(a) Notices. All notices, approvals, consents, requests and other communications hereunder shall be given in the manner provided in the Loan Agreement at the following addresses:

if to the Grantor:

Salem Pointe Capital, LLC
302 Rarity Bay Parkway
Vonore, Tennessee 37885
Attn: Michael D. Ayres

if to the Trustee or the Beneficiary:

ORNL FEDERAL CREDIT UNION
Attn: Richard Bettis
2077 Town Center Blvd, Suite 203
Knoxville, Tennessee 37922

(b) Offset. In addition to, and not in limitation of, all rights of offset that the Beneficiary or other holder of the Note may have under applicable law upon the occurrence of any Event of Default hereunder or any event which, upon notice or the lapse of time, or both, would become an Event of Default hereunder, the Beneficiary or such other holder of the Note and, to the extent permitted by applicable law, any participant in the Note, shall have the right to appropriate and apply to the payment thereof any and all balances, credits, deposits, accounts or monies of the Grantor or any subsidiary of the Grantor then or thereafter maintained with the Beneficiary or any of its subsidiaries or affiliates or such other holder of the Note.

(c) Liens. The holder(s) of the lien created by this instrument has not and will not consent to any contract or to any work or to the furnishing of any materials which might be deemed to create a lien or liens superior to the lien of this instrument, either under Tenn. Code Ann. §66-11-108, as amended, or otherwise.

(d) Successors and Assigns. This Deed of Trust shall be binding upon, inure to the benefit of and be enforceable by the parties hereto, their successors, heirs, personal representatives and assigns, and the Beneficiary and its successors and assigns; provided, however, that the Grantor shall not assign its rights or

obligations hereunder without the express prior written consent of the Beneficiary.

(e)    <u>Amendments and Supplements</u>.  This Deed of Trust may be amended and supplemented only by a written instrument executed by the Grantor and the Beneficiary.

(f)    <u>Applicable Law</u>.  This Deed of Trust shall be governed by, and construed in accordance with, the applicable laws of the State of Tennessee.

(g)    <u>Counterparts</u>.  To facilitate execution, this Deed of Trust may be executed in as many counterparts as may be required.  It shall not be necessary that the signature on behalf of the parties hereto appear on each counterpart hereof, and it shall be sufficient that the signature on behalf of each party hereto appear on one or more such counterparts. All counterparts shall collectively constitute a single agreement.

*[signatures on the following page]*

IN WITNESS WHEREOF, the Grantor has executed this Deed of Trust and the Beneficiary has accepted this Deed of Trust as of the date first set forth above.

**GRANTOR**:

**SALEM POINTE CAPITAL, LLC**
a Tennessee limited liability company

By: _____
        Michael D. Ayres
Its:    President

**ACCEPTED**:

**BENEFICIARY**:

**ORNL FEDERAL CREDIT UNION**
a Tennessee banking corporation
organized under the National Credit Union Act

By:_____
    Richard Bettis
Its:    Senior Loan Officer

STATE OF TENNESSEE )
COUNTY OF KNOX )

Before me, Robin A. Morgan , Notary Public of the State and County aforesaid, personally appeared MICHAEL D. AYRES, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the President of SALEM POINTE CAPITAL, LLC, a Tennessee limited liability company, the within named bargainor, and that he as such President being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President of SALEM POINTE CAPITAL, LLC.

WITNESS my hand and seal at office on this the 7th day of November, 2023.

Notary Public

My Commission Expires: 2.2.25

STATE OF TENNESSEE )
COUNTY OF KNOX )

Before me, a notary public of the state and county mentioned, personally appeared RICHARD BETTIS, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be Senior Loan Officer (or such other officer authorized to execute the instrument) of ORNL FEDERAL CREDIT UNION, a Tennessee banking corporation organized under the National Credit Union Act, the within named bargainor, (the "Credit Union") and that he as such Senior Loan Officer executed the foregoing instrument for the purpose therein contained, by personally signing the name of the Credit Union by himself as such Senior Loan Officer of ORNL Federal Credit Union.

WITNESS my hand and seal at office on this the 7th day of November, 2023.

Notary Public

My Commission Expires: 2.2.25

27

record in Book 228, Page 698, Book 234, Page 166 and Book 234, Page 168, Register's Office for said County.

Being part of the same property conveyed to TELLICO LAKE PROPERTIES, L.P., A LIMITED PARTNERSHIP WITH TELLICO COMMUNITIES, INC., A TENNESSEE CORPORATION, AS THE GENERAL PARTNER, by deed from THE TELLICO RESERVOIR DEVELOPMENT AGENCY, dated July 22, 1994, of record in Book 218, Page 529, Register's Office for Monroe County, Tennessee.

Pursuant to Order entered on April 17, 2015 in the United States District Court Eastern District of Tennessee in Knoxville in *Stooksbury v. Ross, et al.*, Case No. 3:09-CV-498-TAV-HBG, STERLING P. OWEN, IV, was authorized to sell the property in his capacity as Receiver.

Reference is hereby made to Affidavit of Sterling P. Owen, IV, Receiver, dated May 12, 2015, of record in Book M249, Page 238, Register's Office for Monroe County, Tennessee.

Also, being part of the same property conveyed to SALEM POINTE CAPITAL, LLC, A TENNESSEE LIMITED LIABILITY COMPANY, by deed from STERLING P. OWEN, IV, IN HIS CAPACITY AS RECEIVER FOR TLP, dated May 18, 2015, of record in Book 374, Page 104, Register's Office for Monroe County, Tennessee and in Book D376, Page 435, Register's Office for Loudon County, Tennessee.

**BK/PG: T1671/362-408**

**23010165**

| 47 PGS:AL-TRUST DEED | |
|---|---|
| PAM BATCH: 194999 | |
| 11/09/2023 - 10:00 AM | |
| VALUE | 250000.00 |
| MORTGAGE TAX | 285.20 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 235.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 1.00 |
| TOTAL AMOUNT | 523.20 |

STATE OF TENNESSEE, LOUDON COUNTY
**TAMMY GALLAHER**
REGISTER OF DEEDS

**BK/PG: R-41/535-581**

**23007293**

| 47 PGS:AL-TRUST DEED | |
|---|---|
| HEATHER BATCH: 110347 | |
| 12/01/2023 - 11:58 AM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 238.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 240.00 |

STATE OF TENNESSEE, MONROE COUNTY
**KIMBERLY ESTES BIVENS**
REGISTER OF DEEDS

SP 11/2015