# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| **In re:** | ) |
| | ) **Case No. 24-31702-SHB** |
| **SALEM POINTE CAPITAL, LLC,** | ) |
| | ) **Chapter 11** |
| **Debtor.** | ) |
| | ) |

**AGREED PROTECTIVE ORDER FOR PARTIES-IN-INTEREST**
**TO HAVE ACCESS TO CBRE DATA ROOM FOR LIMITED PURPOSE**

This matter came before the Court on the ~~Joint~~Oral Motion ~~(Dkt.     )~~ for entry of this

Agreed Protective Order for Parties-in-Interest to Have Access to CBRE Data Room for Limited

Purpose.

REPRESENTATIONS OF THE PARTIES

A.      Gary M. Murphey was appointed the Chapter 11 Trustee ("the Trustee") for the

Salem Pointe Capital, LLC (the "Debtor") in this bankruptcy case (~~the~~ "this Chapter 11 Case")

on August 13, 2025 (Dkt. 628).  On May 8, 2026, the Court approved the retention of CBRE,

Inc. ("CBRE") as real estate professional (Dkt. 913, the "Retention Order").

B.      CBRE is in the process of marketing the Debtor's golf club and related assets and certain real property, all as more particularly described in the Retention Order (collectively, the "Property"). As part of marketing the Property, CBRE is establishing a "data room" containing a variety of documents and other data for prospective purchasers to review as part of due diligence in determining whether to make an offer to purchase the Property (the "Data Room"). A potential purchaser may be required to provide information to CBRE sufficient to convince CBRE that the potential purchaser has the financial wherewithal to purchase the Property (the "Financial Sufficiency Information"). Also, each potential purchaser is required to execute a nondisclosure agreement (the "NDA") before accessing the Data Room. The NDA limits the use of any information in the data room to a potential purchase of the Property.

C.      Certain parties-in-interest have requested the ability to access the Data Room for the limited purpose of ensuring information therein is not materially misleading[1] to potential purchasers. The Trustee and CBRE are willing to permit such access to the Data Room under the limitations contained herein.

**NOW, THEREFORE, BASED UPON THE FOREGOING REPRESENTATIONS, AND BASED ON THE AGREEMENT OF THE PARTIES AS INDICATED BY SIGNATURES OF COUNSEL BELOW, AND BEING OTHERWISE PROPERLY AND SUFFICIENTLY ADVISED, THE COURT HEREBY ORDERS THAT**:

1.      If a Party-in-Interest (hereafter, a "Party") desires to access the data room for the purpose of verifying that the information contained therein is not materially misleading, such Party can only request such access through their attorney.

a.  Such attorney must be an attorney who has entered an appearance in this Chapter 11 Case ("Counsel of Record"). Counsel of Record are permitted

---

[1] The term "materially misleading," as used herein, refers to objectively inaccurate factual information that would reasonably affect a potential purchaser's valuation or due diligence conclusions. The term does not include disagreements over interpretation, emphasis, or business judgment.

access to the Data Room.  The defined term "Counsel of Record" includes attorneys who have entered an appearance in this Chapter 11 Case, even if such attorney is not a signatory to this Agreed Protective Order.

b.  If such Counsel of Record represents a group of Parties, only a maximum of two (2) individuals of the Parties will be permitted to have access to the Data Room.  As an example, if a Counsel of Record represents 20 individuals who are all Parties, only a maximum of two (2) of those individuals would be permitted to access the Data Room.

c.  If such Counsel of Record represents a Party that is an entity (corporation, partnership, limited liability company, or other similar entity) consisting of more than one individual or groups of individuals, only a maximum of two (2) individual representatives of the Party may access the Data Room.

d.  Any Counsel of Record and any individual representative of a Party or Parties seeking access to the Data Room must, before receiving such access:

i.  Provide their names and their connection to this Chapter 11 Case to counsel for the Trustee, who will provide that information to CBRE;

ii.  Execute a NDA provided by CBRE.

iii.  Provided, however, that neither Parties nor Counsel of Record are required to provide Financial Sufficiency Information to CBRE to obtain access to the Data Room pursuant to this Agreed Protective Order.

Failure to provide the information above or to sign a NDA will prevent a Counsel of Record or a Party from having access to the Data Room.

2.  If any Party or Counsel of Record finds information in the Data Room that they believe may be materially misleading, such Party ~~should~~may notify their Counsel of Record, who ~~should~~may in turn notify Counsel for the Trustee.  Only if Counsel for the Trustee does not respond to the concern within ~~four~~three (4̶3) business days, or if Counsel does not adequately address the concern (in the Party's reasonable opinion), then the Party may bring the matter to the Court's attention.  However, no Party or Counsel of Record may otherwise use this Agreed

3

Protective Order or any alleged inaccurate information as a basis to delay, object to, or otherwise interfere with the Sale Process.

3.      The Parties and Counsel of Record accessing the Data Room all acknowledge the Data Room contains information that may be private, sensitive, proprietary, confidential financial, or otherwise protected from public use or disclosure.

      a.      In addition to whatever restrictions are contained in the NDA regarding use of information from the Data Room, no person receiving access to the Data Room pursuant to this Agreed Protective Order is permitted to use any such information for any purpose other than:

            i.     to advise the Trustee and CBRE of materially misleading information; and/or,

            ii.    to support or oppose in this Chapter 11 Case: (a) approval of any sale, or (b) confirmation of any plan.

      b.      Any other use of any information from the Data Room is a violation of this Order, subject to paragraph 7 below.

      c.      Any violation of this Order or the NDA shall subject the violating Party and/or Counsel of Record to possible sanctions, which could include: revocation of Data Room access, contempt remedies, and/or an obligation to reimburse the estate for all reasonable fees, costs, and expenses incurred as a result of the violation, including the Trustee's fees and the Trustee's attorneys' fees.

4.      Without limiting the breadth of the restriction in paragraph 2 above, the Parties and Counsel of Record specifically agree that they will not use any information from the Data Room for personal or business purposes or in litigation against the Debtor or CBRE or for use in preparing, proposing, confirming, or opposing a Plan of Reorganization, other than as set forth in paragraph 3.a.ii. above.

4

5.        Other than contacting CBRE to execute a NDA and obtain access to the Data Room, Parties or Counsel of Record shall not otherwise contact CBRE personnel other than through coordination with counsel for the Trustee, subject to paragraphs 6 and 8 below.  Nothing in this Agreed Protective Order authorizes any Party to interfere with CBRE's marketing process or communicate directly with potential purchasers.

6.        Nothing in this Agreed Order prevents any Party from using information from the Data Room if such Party separately qualifies with CBRE as a potential purchaser of the Property (including submitting Financial Sufficiency Information), in which case such Party would have the right to use and rely on the information contained in the Data Room for purposes of formulating an offer to purchase the Property.  To clarify, notwithstanding anything in this Agreed Protective Order, nothing herein prohibits any Party from contacting CBRE or responding to CBRE regarding any Party's potential bid for the Property or any portion of the Property.

7.        In some cases, for convenience of potential purchasers, the Data Room may contain some documents and/or other information from the public record, from the record of This Chapter 11 Case, or that is otherwise publicly available (collectively, "<u>Public Information</u>").  Nothing in this Agreed Order prevents any ~~party~~<u>Party</u> from using Public Information, even if it is contained in the Data Room.  But under <u>no</u> circumstances are any documents or other information prepared by or compiled by CBRE to be considered Public Information (for example, without limitation, offering memoranda, pro formas, compiled financial information).

8.      Nothing in this Agreed Protective Order prohibits any Party from communicating with any employee, officer, or affiliate of CBRE with regard to any property or transaction that is unrelated to the Debtor and the Property.

9.      Nothing in this Agreed Protective Order is intended to waive any privilege or work product protection.

# # #

**APPROVED FOR ENTRY:**

/s/ Paul G. Jennings
Paul G. Jennings, BPR No. 014367
Gene L. Humphreys, BPR No. 021807
Bass, Berry & Sims PLC
21 Platform Way South, Suite 3500
Nashville, TN  37203
615-742-6200
pjennings@bassberry.com
ghumphreys@bassberry.com
*Counsel for Chapter 11 Trustee*

/s/
Michael W. Ewell
Frantz, McConnell & Seymour, LLP
550 W. Main Street, Suite 500
Knoxville, TN 37902
(865)546-9321
mewell@fmsllp.com
*Counsel for Rarity Bay Community Association, Inc.*

/s/
William R. O'Bryan, Jr.
Clinton Edward Hunter Brush
Butler Snow LLP
Neuhoff Building
1320 Adams Street, Suite 1400
Nashville, TN 37208

615-651-6700
bill.obryan@butlersnow.com
Hunter.brush@butlersnow.com
*Counsel for BEP Rarity Bay, LLC*


/s/ _____
Mary D. Miller
Mary D Miller, PLLC
PO Box 5339
Knoxville, TN 37928
865-934-4000
mmillerservice@millerlaw.solutions
*Counsel for The Club at Rarity Bay, Inc.*


 /s/ _____
M. Aaron Spencer, BPR No. 029911
Woolf, McClane, Bright, Allen & Carpenter, PLLC
900 S. Gay Street, 9th Floor
Knoxville, TN 37902-1810
865-215-1000
aspencer@wmbac.com

and

Erika R. Barnes, BPR No. 028628
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
615-782-2252
ebarnes@stites.com

*Counsel for Rarity Bay Partners*


 /s/ _____
Mary D. Miller
Mary D Miller, PLLC
PO Box 5339
Knoxville, TN 37928
865-934-4000
mmillerservice@millerlaw.solutions
*Counsel for The Club at Rarity Bay, Inc.*
 /s/ _____
Austin L. McMullen

7

Bradley Arant Boult Cummings, LLP
1221 Broadway
Ste. 2400
Nashville, TN 37203
615-252-2307
amcmullen@bradley.com

and

Melanie E. Davis
KIZER & BLACK, ATTORNEYS, PLLC
217 E. Broadway Avenue
Maryville, Tennessee 37804
Telephone: (865) 982-1625
mdavis@kizerblack.com

*Counsel for Plaintiffs in Adversary Proceeding 26-ap-03006, and for Richard E. Hoban, Ed Harless, Donna Harless, Julia B. Misslin, Peter A. Misslin, Peter Misslin, Trustee of the Peter A. Misslin Living Trust Under Agreement Dated August 24, 1998, Julia B. Misslin, Trustee of the Julia B. Misslin Living Trust Under Agreement Dated August 24, 1998, John D. Wood, Kim R. Wood, John D. Wood and Kim R. Wood, Trustees of The Wood Living Trust Dated November 15, 2003, a Revocable Living Trust, Bart Whitman, Michael Guido, and J. Carey McHugh*

~~50365357.4~~50365357.6

| Summary report: Litera Compare for Word 11.13.0.54 Document comparison done on 6/24/2026 11:48:03 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://bassberry.cloudimanage.com/bbs/50365357/4 - Agreed Protective Order CBRE Data Room.docx | |
| **Modified DMS:** iw://bassberry.cloudimanage.com/bbs/50365357/6 - Agreed Protective Order CBRE Data Room.docx | |
| **Changes:** | |
| Add | 19 |
| Delete | 12 |
| Move From | 7 |
| Move To | 7 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 45 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Case No. 24-31702-SHB** |
| **SALEM POINTE CAPITAL, LLC,** | ) | |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |
| | ) | |

**AGREED PROTECTIVE ORDER FOR PARTIES-IN-INTEREST
TO HAVE ACCESS TO CBRE DATA ROOM FOR LIMITED PURPOSE**

This matter came before the Court on the Oral Motion for entry of this Agreed Protective Order for Parties-in-Interest to Have Access to CBRE Data Room for Limited Purpose.

REPRESENTATIONS OF THE PARTIES

A.    Gary M. Murphey was appointed the Chapter 11 Trustee ("the Trustee") for the Salem Pointe Capital, LLC (the "Debtor") in this bankruptcy case ("this Chapter 11 Case") on August 13, 2025 (Dkt. 628).  On May 8, 2026, the Court approved the retention of CBRE, Inc. ("CBRE") as real estate professional (Dkt. 913, the "Retention Order").

B.    CBRE is in the process of marketing the Debtor's golf club and related assets and certain real property, all as more particularly described in the Retention Order (collectively, the

"Property"). As part of marketing the Property, CBRE is establishing a "data room" containing a variety of documents and other data for prospective purchasers to review as part of due diligence in determining whether to make an offer to purchase the Property (the "Data Room"). A potential purchaser may be required to provide information to CBRE sufficient to convince CBRE that the potential purchaser has the financial wherewithal to purchase the Property (the "Financial Sufficiency Information"). Also, each potential purchaser is required to execute a nondisclosure agreement (the "NDA") before accessing the Data Room. The NDA limits the use of any information in the data room to a potential purchase of the Property.

C.  Certain parties-in-interest have requested the ability to access the Data Room for the limited purpose of ensuring information therein is not materially misleading[1] to potential purchasers. The Trustee and CBRE are willing to permit such access to the Data Room under the limitations contained herein.

**NOW, THEREFORE, BASED UPON THE FOREGOING REPRESENTATIONS, AND BASED ON THE AGREEMENT OF THE PARTIES AS INDICATED BY SIGNATURES OF COUNSEL BELOW, AND BEING OTHERWISE PROPERLY AND SUFFICIENTLY ADVISED, THE COURT HEREBY ORDERS THAT**:

1.  If a Party-in-Interest (hereafter, a "Party") desires to access the data room for the purpose of verifying that the information contained therein is not materially misleading, such Party can only request such access through their attorney.

    a.  Such attorney must be an attorney who has entered an appearance in this Chapter 11 Case ("Counsel of Record"). Counsel of Record are permitted access to the Data Room. The defined term "Counsel of Record" includes attorneys who have entered an appearance in this Chapter 11 Case, even if such attorney is not a signatory to this Agreed Protective Order.

---

[1] The term "materially misleading," as used herein, refers to objectively inaccurate factual information that would reasonably affect a potential purchaser's valuation or due diligence conclusions. The term does <u>not</u> include disagreements over interpretation, emphasis, or business judgment.

2

b.  If such Counsel of Record represents a group of Parties, only a maximum of two (2) individuals of the Parties will be permitted to have access to the Data Room.  As an example, if a Counsel of Record represents 20 individuals who are all Parties, only a maximum of two (2) of those individuals would be permitted to access the Data Room.

c.  If such Counsel of Record represents a Party that is an entity (corporation, partnership, limited liability company, or other similar entity) consisting of more than one individual or groups of individuals, only a maximum of two (2) individual representatives of the Party may access the Data Room.

d.  Any Counsel of Record and any individual representative of a Party or Parties seeking access to the Data Room must, before receiving such access:

  i.  Provide their names and their connection to this Chapter 11 Case to counsel for the Trustee, who will provide that information to CBRE;

  ii.  Execute a NDA provided by CBRE.

  iii.  Provided, however, that neither Parties nor Counsel of Record are required to provide Financial Sufficiency Information to CBRE to obtain access to the Data Room pursuant to this Agreed Protective Order.

Failure to provide the information above or to sign a NDA will prevent a Counsel of Record or a Party from having access to the Data Room.

2.  If any Party or Counsel of Record finds information in the Data Room that they believe may be materially misleading, such Party may notify their Counsel of Record, who may in turn notify Counsel for the Trustee.  Only if Counsel for the Trustee does not respond to the concern within three (3) business days, or if Counsel does not adequately address the concern (in the Party's reasonable opinion), then the Party may bring the matter to the Court's attention.  However, no Party or Counsel of Record may otherwise use this Agreed Protective Order or any alleged inaccurate information as a basis to delay, object to, or otherwise interfere with the Sale Process.

3.      The Parties and Counsel of Record accessing the Data Room all acknowledge the Data Room contains information that may be private, sensitive, proprietary, confidential financial, or otherwise protected from public use or disclosure.

a.      In addition to whatever restrictions are contained in the NDA regarding use of information from the Data Room, no person receiving access to the Data Room pursuant to this Agreed Protective Order is permitted to use any such information for any purpose other than:

i.     to advise the Trustee and CBRE of materially misleading information; and/or,

ii.    to support or oppose in this Chapter 11 Case: (a) approval of any sale, or (b) confirmation of any plan.

b.      Any other use of any information from the Data Room is a violation of this Order, subject to paragraph 7 below.

c.      Any violation of this Order or the NDA shall subject the violating Party and/or Counsel of Record to possible sanctions, which could include: revocation of Data Room access, contempt remedies, and/or an obligation to reimburse the estate for all reasonable fees, costs, and expenses incurred as a result of the violation, including the Trustee's fees and the Trustee's attorneys' fees.

4.      Without limiting the breadth of the restriction in paragraph 2 above, the Parties and Counsel of Record specifically agree that they will not use any information from the Data Room for personal or business purposes or in litigation against the Debtor or CBRE or for use in preparing, proposing, confirming, or opposing a Plan of Reorganization, other than as set forth in paragraph 3.a.ii. above.

5.      Other than contacting CBRE to execute a NDA and obtain access to the Data Room, Parties or Counsel of Record shall not otherwise contact CBRE personnel other than through coordination with counsel for the Trustee, subject to paragraphs 6 and 8 below.  Nothing in this

4

Agreed Protective Order authorizes any Party to interfere with CBRE's marketing process or communicate directly with potential purchasers.

6.      Nothing in this Agreed Order prevents any Party from using information from the Data Room if such Party separately qualifies with CBRE as a potential purchaser of the Property (including submitting Financial Sufficiency Information), in which case such Party would have the right to use and rely on the information contained in the Data Room for purposes of formulating an offer to purchase the Property.  To clarify, notwithstanding anything in this Agreed Protective Order, nothing herein prohibits any Party from contacting CBRE or responding to CBRE regarding any Party's potential bid for the Property or any portion of the Property.

7.      In some cases, for convenience of potential purchasers, the Data Room may contain some documents and/or other information from the public record, from the record of This Chapter 11 Case, or that is otherwise publicly available (collectively, "Public Information").  Nothing in this Agreed Order prevents any Party from using Public Information, even if it is contained in the Data Room.  But under no circumstances are any documents or other information prepared by or compiled by CBRE to be considered Public Information (for example, without limitation, offering memoranda, pro formas, compiled financial information).

8.      Nothing in this Agreed Protective Order prohibits any Party from communicating with any employee, officer, or affiliate of CBRE with regard to any property or transaction that is unrelated to the Debtor and the Property.

9.      Nothing in this Agreed Protective Order is intended to waive any privilege or work product protection.

# # #

5

**APPROVED FOR ENTRY:**

/s/ Paul G. Jennings
Paul G. Jennings, BPR No. 014367
Gene L. Humphreys, BPR No. 021807
Bass, Berry & Sims PLC
21 Platform Way South, Suite 3500
Nashville, TN  37203
615-742-6200
pjennings@bassberry.com
ghumphreys@bassberry.com
*Counsel for Chapter 11 Trustee*


/s/
Michael W. Ewell
Frantz, McConnell & Seymour, LLP
550 W. Main Street, Suite 500
Knoxville, TN 37902
(865)546-9321
mewell@fmsllp.com
*Counsel for Rarity Bay Community Association, Inc.*


/s/
William R. O'Bryan, Jr.
Clinton Edward Hunter Brush
Butler Snow LLP
Neuhoff Building
1320 Adams Street, Suite 1400
Nashville, TN 37208
615-651-6700
bill.obryan@butlersnow.com
Hunter.brush@butlersnow.com
*Counsel for BEP Rarity Bay, LLC*


/s/
Mary D. Miller
Mary D Miller, PLLC
PO Box 5339
Knoxville, TN 37928
865-934-4000
mmillerservice@millerlaw.solutions
*Counsel for The Club at Rarity Bay, Inc.*

6

/s/
M. Aaron Spencer, BPR No. 029911
Woolf, McClane, Bright, Allen & Carpenter, PLLC
900 S. Gay Street, 9th Floor
Knoxville, TN 37902-1810
865-215-1000
aspencer@wmbac.com

and

Erika R. Barnes, BPR No. 028628
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
615-782-2252
ebarnes@stites.com

*Counsel for Rarity Bay Partners*


/s/
Austin L. McMullen
Bradley Arant Boult Cummings, LLP
1221 Broadway
Ste. 2400
Nashville, TN 37203
615-252-2307
amcmullen@bradley.com

and

Melanie E. Davis
KIZER & BLACK, ATTORNEYS, PLLC
217 E. Broadway Avenue
Maryville, Tennessee 37804
Telephone: (865) 982-1625
mdavis@kizerblack.com

*Counsel for Plaintiffs in Adversary Proceeding 26-ap-03006, and for Richard E. Hoban, Ed Harless, Donna Harless, Julia B. Misslin, Peter A. Misslin, Peter Misslin, Trustee of the Peter A. Misslin Living Trust Under Agreement Dated August 24, 1998, Julia B. Misslin, Trustee of the Julia B. Misslin Living Trust Under Agreement Dated August 24, 1998, John D. Wood, Kim R. Wood, John D. Wood and Kim R. Wood, Trustees of The Wood Living Trust Dated November 15, 2003, a Revocable Living Trust, Bart Whitman, Michael Guido, and J. Carey McHugh*

7