**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **SALEM POINTE CAPITAL, LLC,** | ) | **Case No. 3:24-bk-31702-SHB** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**RARITY BAY PARTNERS' PRELIMINARY OBJECTION TO THE CHAPTER 11 PLAN
FOR REORGANIZATION FILED BY PLAN PROPONENTS THE CLUB AT RARITY
BAY, INC. AND BEP RARITY BAY, LLC (Doc. 971)**

Comes now Rarity Bay Partners ("RBP"), a secured and unsecured creditor, by and through counsel, and objects to the Plan for Reorganization filed by The Club at Rarity Bay, Inc. ("TCRB") and BEP Rarity Bay, LLC ("BEP") (collectively, the "Plan Proponents") (Doc. 971, the "Plan"). RBP submits this preliminary objection while reserving its right to file a more robust objection in compliance with any objection deadline subsequently set by the Court.

The Plan, which provides for the sale of assets to BEP, an infusion of capital from TCRB, and the cancelation of the interests of existing equity holders, among other things, is entirely unconfirmable and not feasible. For one, the Plan proposes that RBP finance the new purchasers. What's more, the Plan proposes to ignore various state-court rulings, take escrowed proceeds, release lis pendens, and use fees that are assigned to RBP to pay debts.

Confirmation of a Chapter 11 Plan requires that a plan of reorganization comply with all of the requirements of Section 1129 of the Bankruptcy Code and a plan can only be "crammed down" on a dissenting impaired class only if the plan does not discriminate unfairly, and is fair and equitable. *See* 11 U.S.C. § 1129(b)(1). The burden of establishing each of these requirements rests squarely with the plan proponents. The proposed Plan is patently unconfirmable under 11 U.S.C. § 1129. It is not fair and equitable, nor is it feasible. The Court should reject the Plan.

11379932:v3

Although a bankruptcy court has broad equitable powers to approve plans of reorganization, "a bankruptcy court's exercise of its equitable powers is cabined by the provisions of the Bankruptcy Code." *In re Dow Corning Corp.*, 456 F.3d 668, 678 (6th Cir. 2006). To that end, a plan is only confirmable if "all of the requirements of § 1129(a)—save acceptance by each class of creditors"—are met, and the plan is fair and equitable. *See ibid.*; 11 U.S.C. § 1129(b).

The proposed Plan is unconfirmable, as its treatment of RBP's secured claim is neither fair nor equitable. RBP specifically objects to the following provisions of the Plan, while reserving its rights to supplement this objection to confirmation:

1.    **TCRB lacks standing to propose the Plan.**

As a preliminary matter, TCRB is not a party in interest and therefore lacks standing to propose a Chapter 11 Plan under 11 U.S.C. § 1121(c). The term "party-in-interest," is broadly described to include "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee"; however, this list is not exhaustive. *See* 11 U.S.C. § 102(3).

Even with this broad definition, TCRB cannot meet the definition of a party-in-interest. TCRB is neither a creditor, nor a lot owner, nor a member of the club, nor holder of any interest in the Rarity Bay development. TCRB is a Tennessee nonprofit corporation that was formed April 22, 2025, while this Chapter 11 case was already pending. TCRB does not hold a claim in the bankruptcy. Upon information and belief, TCRB does not own a lot or land in the Rarity Bay development. TCRB was formed, upon information and belief, solely to pursue a purchase of the Debtor's assets. An interested purchaser of a Chapter 11 debtor's assets or business is not a party in interest with standing under 11 U.S.C. § 1121(c). *In re Crescent Mfg. Co.*, 122 B.R. 979, 980-

81 (Bankr. N.D. Ohio 1990). TCRB has no legitimate interest in the Debtor that qualifies it to propose a plan and therefore confirmation must be denied.

2. **The Plan Proponents engaged in improper solicitation prior to filing the Plan.**

Improper solicitation occurs when a plan proponent attempts to solicit votes for or against a reorganization plan without first providing a court-approved disclosure statement that contains "adequate information" under 11 U.S.C. § 1125(a). The provision is "designed to 'discourage the undesirable practice of soliciting acceptance or rejection at a time when creditors and stockholders were too ill-informed to act capably in their own interests.'" *In re Heritage Org., LLC*, 376 B.R. 783, 794 (Bankr. N.D. Tex. 2007) (quoting *In re Clamp-All Corp.*, 233 B.R. 198, 208 (Bankr. D. Mass. 1999)).

The Plan Proponents filed and served the Chapter 11 Plan without even filing a disclosure statement. Further, upon information and belief, the Plan Proponents engaged in improper solicitation of votes from unsecured creditors prior to filing the Plan. Upon information and belief, the Plan Proponents held meetings and votes over the last 6-8 weeks and engaged in communications with Lorts Homeowners, Hoban Homeowners and RBCAI in regard to how they would vote on the Plan. These actions violate 11 U.S.C. § 1125(b). Votes improperly solicited may be designated by the Court under 11 U.S.C. § 1126(e), with the effect of disqualifying the creditor from voting or disallowing its vote. *See* Collier on Bankruptcy ¶ 1126.06.

3. **The Plan Proponents cannot force RBP to finance their Plan.**

The Plan proposes that RBP finance the Plan Proponent's purchase of Debtor assets and the cash infusion. Specifically, the Plan proposes that "if and when such the RBP Secured Claim becomes an Allowed Secured Claim, the BEP Purchase Price and the BEP Additional Funds shall be delivered to RBP for a credit against and reduction in its Allowed Secured Claim." Plan, Doc. 971, at § 7.01.

A pre-petition lender's agreement to loan money to one entity does not indicate that the lender would be willing or should be forced to lend money to a successor entity with different management, objectives, and resources, may be compelling. *In re Cannonsburg Env't Assocs., Ltd.,* 72 F.3d 1260, 1267 (6th Cir. 1996).

RBP's Loans were entered into with the Debtor, rather than the proposed successor entity. The Loans, on their express terms, are not assignable:

> 23. NON-ASSIGNABLE BY BORROWER: Borrower shall not assign this Agreement or any part of any advance to be made hereunder, nor encumber the same by mortgage or other lien without the prior written consent of Credit Union. Any assignment or encumbrance made without such consent of Credit Union shall constitute an immediate default under this Agreement, the Note, Deed of Trust and other Loan Documents.

*See* Proof of Claim No. 5, Loan Agreement, para. 23.

Further, the Loan Documents prohibit a transfer of the ownership interest in the Debtor. Specifically, the Deed of Trusts state:

> (h) Transfer of Trust Estate or Interest in Grantor. The Grantor shall not sell, convey, transfer, assign or encumber or permit any sale, conveyance, transfer, assignment or encumbrance of the Trust Estate or any part thereof or interest therein by operation of law or otherwise, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement. The Grantor shall neither permit nor cause any sale, conveyance, transfer, encumbrance or assignment of any ownership interest in the Grantor, without the prior written consent of the Beneficiary or except as may otherwise be provided in the Loan Agreement. If applicable, the above prohibition shall not be deemed to apply to Grantor entering into one or more leases relating to the Improvements in the ordinary course of Grantor's business.

*See* Proof of Claim No. 5, Deed of Trust, para. 1(h). The Loan Agreement contains similar language:

> (i) Transfer of Interest by Owners: Until all amounts due under the Note have been paid in full, no owner of an interest (whether record or beneficial) evidencing an ownership interest in the Borrower ("Owners") shall sell, transfer, assign, pledge, hypothecate or
>
> encumber any of such ownership interest in the Borrower without the prior written consent of Credit Union.

4

*See* Proof of Claim No. 5, Loan Agreement, para. 7(i).

RBP simply cannot be forced to serve as refinancier for the benefit of the Plan Proponents. TCRB is a newly formed non-profit without the financial history necessary to qualify for a loan. It is contrary to the Bankruptcy Code to confirm a plan that facilitates a third-party purchaser at the expense of protecting the rights of secured creditors.  *See generally RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012).

4.      **The Plan is not feasible due to lack of financing.**

The Plan Proponents cannot show the Plan is feasible, and therefore the Plan is unconfirmable.  In order to be confirmed, a plan must be feasible. *In re Griswold Bldg., LLC*, 420 B.R. 666, 697 (Bankr. E.D. Mich. 2009). This requirement is found in 11 U.S.C. § 1129(a)(11). *Id.* The Court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *Id*. (quoting 11 U.S.C. § 1129(a)(11)). "Feasibility is a mandatory requirement for confirmation." *Id.* (quoting *In re Made in Detroit, Inc.*, 299 B.R. 170, 175 (Bankr. E.D. Mich. 2003). The Plan Proponents bear the burden of proving by a preponderance of the evidence that the plan is not likely to fail." *Id.* (quoting *In re Eastland Partners Limited Partnership*, 149 B.R. 105, 108 (Bankr. E.D. Mich. 1992)). "'[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.' " *In re Griswold Bldg., LLC*, 420 B.R. 666, 697 (Bankr. E.D. Mich. 2009) (quoting *In re Eastland Partners Limited Partnership*, 149 B.R. 105, 108 (Bankr .E.D. Mich.1992)). "To provide such reasonable assurance, a plan must provide a realistic and workable framework for reorganization. The plan cannot be based on 'visionary promises;' it must be doable." *Id.* (quoting *Made in Detroit*, 299 B.R. at 176 (citations omitted). "Feasibility determinations must be firmly rooted in predictions based on objective fact." *Id*

5

(quoting *Danny Thomas Properties II L.P. v. Beal Bank, S.S.B.* (*In re Danny Thomas Properties II L.P.*), 241 F.3d 959, 964 (8th Cir. 2001) (internal quotation marks and citation omitted).

The Plan is not feasible absent the financing extended from RBP, which RBP has not agreed to extend to a successor of the Debtor. RBP objects to the confirmation of the Plan that is dependent on RBP providing financing to a successor entity with different management, objectives, and resources, from those of the debtor.  *See In re Cannonsburg Env't Assocs., Ltd.,* 72 F.3d at 1267.

The balance of the Plan is likewise not feasible, which will be addressed in a supplement upon review of the to-be-filed disclosure statement. Confirmation of the Plan must be denied because the Plan is not feasible and would inevitably be followed by the liquidation, or the need for further financial reorganization.

5.    **Likewise, the Plan is not fair and equitable because the financing is not feasible.**

The Plan does not meet the "fair and equitable" requirement and therefore must be denied. If a debtor's proposal to pay a lender over an extended repayment period is found not to be feasible then it cannot be fair and equitable. *See In re Trenton Ridge Invs., LLC,* 461 B.R. 440, 503–04 (Bankr. S.D. Ohio 2011). The Court recognizes that feasibility and fair and equitable treatment are separate statutory requirements. But, quite simply, if a debtor's proposal to pay a lender over an extended repayment period is not feasible, then it cannot be fair and equitable—at least not in the broad, nontechnical sense of that term—to allow the debtor to attempt to repay the lender over the extended period. *Cf. In re Orchards Vill. Invs., LLC*, No. 09–30893, 2010 WL 143706, at \*20 (Bankr. D.Or. Jan. 8, 2010) ("No evidence was presented to establish that the reorganized Debtor will be able to refinance its debt at the end of the 7–year term of the TIC Plan.... Were I to overrule NSA's cramdown objections, I would be permitting the TIC Investors to speculate on an uncertain future lending environment not only with their own funds, but with NSA's money as well. I find

6

that is not authorized or appropriate under § 1129(b)(2)(A)(i)(II)”); *In re Kennedy*, 158 B.R. 589, 600 (Bankr. D. N.J. 1993) (holding that 20–year repayment period provided for in Chapter 11 plan did not provide creditor fair and equitable treatment and stating that “[a]mong the factors considered in each case to determine whether a particular plan is fair and equitable have been the debtor's demonstration of feasibility, the protections and risks to the secured creditors, and the general reasonableness of the proposals in light of the circumstances posed.”). Accordingly, the Court cannot conclude that the Plan provides fair and equitable treatment of RBP's claims.

6.      **The Plan proposes actions contrary to State Court Orders and is therefore not feasible.**

Although § 1129(a)(11) does not require a plan's success to be guaranteed, the plan must nevertheless propose “a realistic and workable framework[.]” *In re Hurricane Memphis, LLC*, 405 B.R. 616, 624 (Bankr. W.D. Tenn. 2009).  In considering feasibility, “a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation[.]” *In re Am. Cap. Equip.*, LLC, 688 F.3d 145, 156 (3d Cir. 2012) (quoting *In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007). “In order to present a reasonable assurance of success, the court must be able to determine whether the things which are to be done under confirmation can be done as a practical matter under the facts.” *Hurricane Memphis*, 405 B.R. at 625.

At the most elementary level, a Plan that provides for actions that run contrary to state-court orders or processes cannot be feasible, as there is no practical path to its implementation under the facts.  See, e.g., *In re Melcher*, No. BAP NC-05-1343-KRYB, 2006 WL 6810966, at *7 (B.A.P. 9th Cir. May 31, 2006), *aff'd*, 300 F. App'x 455 (9th Cir. 2008) (reversing confirmation of a Chapter 11 plan that ran contrary to state-court orders).

In this case, the Plan proposes to unilaterally unwind a decade of litigation and court rulings in contravention of RBP's rights, without any legal basis for doing so. Further, many of the

7

"executory contracts" that the Plan proposes to reject are not executory and therefore not subject to rejection under 11 U.S.C. § 365.

The Plan improperly proposes to reject the Assignment of Right to Purchase Real Property dated as of May 18, 2015 (the "Assignment of Right"). *See* Plan, Section 6.02(b).

The Plan further proposes to reject the Collection Rights Agreement and release all liens lis pendens in contravention of state court orders, for the benefit of BEP and at the behest of RBP's rights.   *See* Plan, Section 6.02(a).

The Plan proposes to reject "All agreements of any kind or nature between the Debtor and RBP;" – without regard to whether the agreements are executory or otherwise subject to rejection. *See* Plan, Section 6.02(c).

The Plan proposes to reject All Club Membership Agreements. *See* Plan, Section 6.02(d).

The Plan proposes to assume the 2019 Settlement Agreement, but improperly proposes to modify the Agreement.  *See* Plan, Sections 6.01(a) and 14.05.

The Plan improperly proposes to declare void the Sixth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay and Amendment of Bylaws for Rarity Bay Community Association, Inc. (the "Sixth Amendment"). *See* Plan, Section 14.04. This strips away RBP's rights under the Sixth Amendment, including its right to collect social membership initiation fees.

The Plan proposes to terminate the Declarant Rights in which RBP claims an ownership interest and/or on which RBP holds perfected liens. *See* Plan, Section 14.03.

Furthger, the Plan is contingent on actions by the RBCAI which are prohibited and an attempt at an end-run around established court rulings.

This list is by no means conclusive – it is merely representative of the Plan's contravention to prior state court orders.

7.      **The Plan classifies unsecured creditors into multiple classes to gerrymander votes.**

The Plan classifies general unsecured claims, the Hoban AP unsecured claims, the Hinkle AP and Lorts AP unsecured claims, and the RBP unsecured claims into separate classes, without justification.  To the extent that this plan treatment is an attempt to obtain a consenting class in order to utilize the cram down procedures permitted by §1129(b), RBP objects to this classification.

8.      **The Plan treatment of RBP's unsecured claims is less favorable than the treatment of other general unsecured claims.**

On its face, the Plan proposes to treat RBP's unsecured claims in a separate, lesser category (Class 13) than other general unsecured claims (Class 10).  The Plan expressly states "Class 13 shall not receive any distribution of funds held in the GUC Trust from the GUC Trustee until such time as all Class 10 Claims have been paid in full." *See* Plan at p. 13.

A rebuttable presumption that a plan unfairly discriminates will arise when the following elements exist: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution. *In re Dow Corning Corp.*, 244 B.R. 705, 710 (Bankr. E.D. Mich. 1999), *aff'd in relevant part*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd in part and remanded*, 280 F.3d 648 (6th Cir. 2002).

The Plan Proponents cannot rebut the presumption of unfair discrimination, as there is no justification to treat RBP's unsecured claims less favorably than other unsecured claims.

9.    **The Plan was not proposed in good faith.**

The Plan Proponents have not proposed the Plan in good faith. As a result, the Plan does not comply with 11 U.S.C. § 1129(a)(3) and is unconfirmable.

Section 1129(a) allows a court to confirm a plan only if, *inter alia*: (3) The plan has been proposed in good faith and not by any means forbidden by law. . . .;  The Plan Proponents cannot show good faith.  The Plan defects raised throughout this objection show that the Plan Proponents have proposed the Plan with the primary intent to strip RBP of its bargained for rights without legal basis, for the benefit of the Plan Proponents.

Further, the Plan Proponents seek to make an end-run around the Trustee's sale process to purchase the Debtor's assets and equity for less than market value, in contravention of RBP's rights as a secured creditor and its rights under the Assignment of Right, Sixth Amendment, and other agreements.  Rather than meet the requirements to be a Qualified Bidder under the Trustee's proposed sales procedures, including showing proof of funds needed to close, the Plan Proponents filed the Plan.  In the same vein, the Plan proposes to improperly reject all agreements with RBP, and use fees and accounts that are assigned to or owned by RBP to pay estate debts. *See* Plan, Section 6.02.

10.    **The Amended Plan Does Not Satisfy the "Best Interests" Test as to RBP.**

Section 1129(a)(7) of the Bankruptcy Code provides that, in order to be confirmable, a chapter 11 plan must provide that all impaired claimholders will receive at least as much as they would "if the debtor were liquidated under chapter 7 . . . ."  Known as the "best interests" test, this requirement ensures that dissenting creditors may challenge a plan's treatment of them if it fails to provide them at least as much as they would get in a liquidation.  Moreover, the test is not class-specific, but must be satisfied with respect to any dissenting creditor. *See In re G-1 Holdings, Inc.*, 420 B.R. 216, 265 (Bankr. D. N.J. 2009) ("The best interest test focuses on individual dissenting

10

creditors rather than classes of claims.")  Thus, to be confirmable, RBP must receive under the Plan at least as much as it would in a liquidation.  It would not.

11.    **The Plan does not maximize estate assets.**

Finally, the Plan does not satisfy the two primary purposes of chapter 11 relief: "the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims." *In re Trenton Ridge Invs., LLC*, 461 B.R. 440, 469 (Bankr. S.D. Ohio 2011).  The Court cannot look at the Plan in isolation.  Rather, it must "examine the totality of the circumstances to determine whether the plan satisfies the purposes of . . . Chapter 11." *Id.*

The Plan and the Sale Motion, taken together, demonstrate that the Plan Proponents are attempting to gain controls of the Debtor's operations and control its assets at a discount, without obtaining financing like other bidders, at the expense of RBP and the other creditors.

WHEREFORE, RBP requests that this Court deny the proposed Plan, and specifically reserves its right to lodge further objections to the Plan prior to any potential confirmation.

Respectfully submitted,

WOOLF, MCCLANE, BRIGHT, ALLEN &
CARPENTER, PLLC

/s/ M. Aaron Spencer
M. Aaron Spencer, BPR No. 029911

P.O. Box 900
Knoxville, Tennessee 37901
(865)215-1000
(865)215-1001 (fax)
aspencer@wmbac.com

and

11

STITES & HARBISON, PLLC

*/s/ Erika R. Barnes*
Erika R. Barnes (BPR #028628)
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com
*Attorneys for Rarity Bay Partners*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, a copy of the foregoing **RARITY BAY PARTNERS' PRELIMINARY OBJECTION TO THE CHAPTER 11 PLAN FOR REORGANIZATION FILED BY PLAN PROPONENTS THE CLUB AT RARITY BAY, INC. AND BEP RARITY BAY, LLC (Doc. 971)** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties as indicated below as receiving notice via electronic filing.  Parties may access this filing through the Court's electronic filing system.

James R. Moore, Esq.
Brenda G. Brooks, Esq.
Moore and Brooks
6223 Highland Place Way
Suite 102
Knoxville, TN 37919
*Attorneys for the Debtor*
***Via Electronic Filing***

Salem Pointe Capital, LLC
403 Rarity Bay Parkway
Vonore, TN 37885
*Debtor*
***Via Electronic Filing Pursuant to Doc. No. 4 – Debtor Requests to Begin Electronic Noticing***

William R. O'Bryan, Jr., Esq.
C.E. Hunter Brush, Esq.
Robert Campbell Hillyer, Esq.
Butler Snow LLP
150 Third Avenue South, Ste. 1600
Nashville, TN 37201
*Attorneys for BEP Rarity Bay, LLC Bald Eagle Ventures, LLC, et al.*
***Via Electronic Filing***

United States Trustee
c/o Tiffany A. DiIorio, Esq.
800 Market Street, Suite 114
Howard H. Baker Jr.
U.S. Courthouse
Knoxville, TN  37902
***Via Electronic Filing***

Thomas H. Dickenson, Esq.
Jason L. Rogers, Esq.
Hodges, Doughty & Carson, PLLC
P.O. Box 869
Knoxville, TN 37901
*Attorneys for ORNL FCU*
***Via Electronic Filing***

Erno Lindner, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
*Attorney for Kapitus, LLC*
***Via Electronic Filing***

Mary D. Miler, Esq.
Mary D. Miller, PLLC
P.O. Box 52227
Knoxville, TN 37950
*Attorney for John D. Wood and Kim R. Wood, Trustees, Bart Whitman, Donna Harless, Ed Harless, Richard E. Hoban, et al.*
***Via Electronic Filing***

Tennessee Department of Revenue
c/o TN Attorney General's Office
Bankruptcy Division
c/o William McCormick, Esq.
P.O. Box 20207
Nashville, TN 37202
***Via Electronic Filing***

Michael W. Ewell, Esq.
Frantz, McConnell & Seymour, LLP
550 W. Main Street, Suite 500
Knoxville, TN 37902
*Attorney for Rarity Bay Community Association, Inc.*
***Via Electronic Filing***

Adam Uriah Holland, Esq.
Duncan, Holland, & Fleenor, P.C.
518 Georgia Avenue, Ste. 100
Chattanooga, TN 37403
*Attorney for Barbara Keller Taylor
and Charlton Taylor*
***Via Electronic Filing***

Wynne du Mariau Caffey-Knight, Esq.
Trent R. Kinkaid, Esq.
Elmore, Stone & Caffey, PLLC
5616 Kingston Pike, Ste. 301
Knoxville, TN 37919
*Attorneys for Salem Pointe Partners
now known as Rarity Bay Partners*
***Via Electronic Filing***

Mary D. Miller, Esq.
Miller Law
Mary D. Miller, PLLC
P.O. Box 52227
Knoxville, TN 37950
*Attorney for The Club at Rarity
Bay, Inc.*
***Via Electronic Filing***

Gary M. Murphey
3330 Cumberland Blvd.
Suite 500
Atlanta, GA 30339
*Chapter 11 Trustee*
***Via Electronic Filing***

Paul G Jennings, Esq.
Gene L. Humphreys, Esq.
Sara K. Morgan, Esq.
Bass Berry & Sims PLC
21 Platform Way, Suite 3500
Nashville, TN 37203
*Attorneys for Gary M. Murphey,
Chapter 11 Trustee*
***Via Electronic Filing***

Melanie E. Davis, Esq.
Kizer & Black, Attorneys, PLLC
217 E. Broadway Avenue
Maryville, TN 37804
*Attorneys for Russell Lorts and
Traci Lorts, et al.*
***Via Electronic Filing***

Austin L. McMullen, Esq.
William L. Norton, III, Esq.
Bradley Arant Boult Cummings, LLP
1221 Broadway, Ste. 2400
Nashville, TN 37203
*Attorneys for Russell Lorts and Traci
Lorts, et al.*
***Via Electronic Filing***

Ronald J. Attanasio, Esq.
625 Market Street, Suite 700
Knoxville, TN 37902
*Attorneys for Eric and Karen Hinkle*
***Via Electronic Filing***

/s/ Erika R. Barnes
Attorney

14