**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

In re:

SALEM POINTE CAPITAL, LLC,　　　　　　　　Case No. 3:24-bk-31702-SHB
　　　　Debtor.　　　　　　　　　　　　　　Chapter 11

**PLAN OF REORGANIZATION FOR**
**SALEM POINTE CAPITAL, LLC**

**June 17, 2026**

**MARY D. MILLER, PLLC**

/s/ Mary D. Miller
Mary D. Miller (013209)
P.O. Box 5339
Knoxville, TN 37928
(865) 934-4000
mmillerservice@millerlaw.solutions
*Attorneys for The Club at Rarity Bay, Inc.*

and

**BUTLER SNOW LLP**

/s/ William R. O'Bryan, Jr.
William R. O'Bryan, Jr. (005433)
C.E. Hunter Brush (031046)
1320 Adams Street, Suite 1400
Nashville, TN 37208
(615) 651-6724
Bill.OBryan@butlersnow.com
Hunter.Brush@butlersnow.com

and

R. Campbell Hillyer (22124)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
(901) 380-7326
cam.Hillyer@butlersnow.com
*Attorneys for BEP Rarity Bay, LLC*

**PLAN OF REORGANIZATION**

The Club at Rarity Bay, Inc. ("TCRB") and BEP Rarity Bay, LLC ("BEP"), as the Plan Proponents, propose the following plan for the reorganization of Salem Pointe Capital, LLC (the "Debtor") and its financial affairs and to provide distributions to Creditors as the respective interests may appear in accordance with the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**SUMMARY**

As described more fully below, this Plan provides for (i) the sale of certain of the Debtor's assets to BEP; (ii) the release of certain settlement funds being held in escrow to Rarity Bay Partners, LLC ("RBP"); (iii) the infusion of capital from TCRB; (iii) the cancelation of the interests of existing equity holders in the Debtor and the issuance of new equity interests in the Reorganized Debtor to TCRB; (v) the assumption and rejection of certain executory contracts and unexpired leases; (vi) the restructuring of the Debtor's secured debt to RBP, other secured and unsecured creditors; and (vii) the approval of various settlements among the Debtor and parties in interest in the Chapter 11 Case.

Creditors holding Allowed Unsecured Claims (other than two (2) classes of unsecured creditors which creditors' Claims are being resolved by receipt of certain other settlement consideration) will receive (a) guaranteed distributions valued at one million dollars ($1,000,000), funded in annual installments of one hundred thousand dollars ($100,000) for a period of ten (10) years, and (b) the proceeds, if any, of certain litigation claims described herein. This Plan also provides for the payment in full of all Allowed Administrative Claims and Allowed Priority Claims.

**ARTICLE 1**

**DEFINITIONS**

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the definitions set forth in this Article 1. The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. Any reference in this Plan to a document being in a particular form means that the document shall be in substantially such form. Any reference in this Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time. Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural. In computing any period of time prescribed or allowed by the Plan, the provisions of FED. R. BANKR. P. 9006(a) shall apply.

The following terms (which appear in this Plan as capitalized terms) have the following meanings as used in this Plan (any capitalized terms used in this Plan that are not defined in this Article 1 shall have the meanings set forth in the body of the Plan):

**1.01 "2019 Settlement Agreement"** means that certain settlement agreement by and between BEP and the Debtor dated as of September 30, 2019, that resolved the claims at issue between the Debtor and BEP in the consolidated matter of *Salem Pointe Capital, LLC vs. BEP Rarity Bay, LLC and Bald Eagle Ventures, LLC*, 3:18-cv-00443 (E.D. Tenn.) and then was challenged by RBP and became the subject of the claims asserted in the case of *Salem Pointe Capital, LLC v. BEP, et al.*, being Adv. Proc. No. 3:25-ap-03006 (the "RBP Adversary") pending in the Bankruptcy Court, having been removed from the Knox County, Tennessee Chancery Court.

**1.02 "Administrative Claim"** means a Claim for payment of an administrative expense under §503(b) or § 1114(e)(2) of the Bankruptcy Code and entitled to priority under §507(a)(2) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating its businesses, including wages, salaries or commissions for services rendered after the Petition Date, (b) Professional Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. §1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims by virtue of a Final Order entered by the Bankruptcy Court.

**1.03 "Administrative Claim Bar Date"** means the last day to file an application for allowance of an Administrative Claim (other than (i) quarterly U.S. Trustee fees, (ii) Professional Fee Claims, and (iii) Administrative Claims for goods and services provided by third party non-professionals in the ordinary course of the Debtor's business), which shall be 30 days after the Effective Date unless otherwise established by a Final Order.

**1.04 "Allowed Administrative Claim"** means an Administrative Claim to the extent it is or becomes an Allowed Claim.

**1.05 "Allowed Amount"** means the amount of an Allowed Claim.

**1.06 "Allowed Claim" and "Allowed Interest"** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was filed on or before the Bar Date, (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties.

**1.07 "Assignment of Rights Agreement"** means that certain agreement between the Debtor and Salem Pointe Capital Partners relating to the assignment of right to purchase real property dated as of May 18, 2015.

**1.08 "Avoidance Actions"** means any and all Rights of Action, claims or Causes of Action against any Person, including specifically but without limitation, ORNL Credit Union and RBP (as defined below), arising under but not limited to Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code including any such Right of Action, claim or Cause of Action for which complaint asserting any of the foregoing was pending on the Effective Date or whether such Right of Action, claim or Cause of Action may be commenced after the Effective Date.

**1.09 "Bankruptcy Code"** means title 11 of the United States Code, as was in effect on the Petition Date, as amended by any amendment applicable to the Chapter 11 Case.

**1.10 "Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Tennessee, Knoxville Division having jurisdiction over this Chapter 11 Case or, in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Eastern District of Tennessee and any appellate or other court that is competent to exercise jurisdiction over the Confirmation of this Plan.

**1.11 "Bar Date"** means May 21, 2025 as to non-governmental Creditors and May 28, 2025 as to governmental creditors.

3

**1.12 "Business Day"** means any day other than a Saturday, Sunday or any other day on which national banks in Knoxville, Tennessee are required or authorized to close by law or executive order.

**1.13 "Cash"** means legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

**1.14 "Causes of Action"** means, subject to the releases, exculpations, and injunctions set forth in this Plan, any and all claims, causes of action, and/or enforceable rights of a Person against third parties, or assertable by a Person or on behalf of its creditors, its estate, or itself, whether brought in the Bankruptcy Court or any other forum for recovery or avoidance, that has not been settled or resolved as of the Effective Date, of, among other things: (a) obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 of the Bankruptcy Code or other sections of the Bankruptcy Code or any applicable law (including, without limiting the generality of the foregoing, applicable state incorporations of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyances Act, and/or Statute of Elizabeth), including, but not limited to, those actions that may be asserted against the parties identified in this Plan and the Avoidance Actions; (b) damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon – (i) indebtedness owing to a Person, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate, limited liability company or partnership laws, (vi) breaches of fiduciary or agency duties, including, but not limited to, the duties of care and/or loyalty, (vii) recharacterization, (viii) illegal dividends, (ix) misrepresentations, (x) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (xi) corporate waste, (xii) corporate opportunity, (xiii) any theory of recovery against a lending institution not otherwise released by the Plan, including any action or any action causing harm to a Person, (xiv) equitable or legal subordination, (xv) indemnity rights against third parties, (xvi) claims against partners of a general partnership for the general partnership's debts including, without limitation, claims arising under TENN. CODE ANN. § 61-1-306, the Tennessee Revised Uniform Partnership Act (TENN. CODE ANN. § 61-1-101, *et seq.*) its and predecessor enactments, or any other similar applicable state statutory or common law cause of action or remedy, and (xvii) any other action listed in Bankruptcy Rule 7001; (c) damages or other relief based upon any other claim of a Person to the extent not specifically compromised or released pursuant to the Plan; and (d) any claims or causes of action that the Debtor or its estate possesses as against its current and/or former directors and officers. For the avoidance of doubt, the term "Causes of Action" shall include, without limitation, the Avoidance Actions and those specific claims and causes of actions set forth in Section 7.10 of this Plan.

**1.15 "Chapter 11 Case"** means Case No. 3:24-bk-31702-SHB, filed on September 29, 2024 under chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

**1.16 "Claim"** means any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmetered, disputed, undisputed, legal, equitable, secured, or unsecured.

**1.17 "Claimant"** means a Person asserting a Claim against the Debtor, its property or the Estate.

4

**1.18 "Class 10 Guaranteed Payment"** means the annual payment of $100,000 to be made by the Reorganized Debtor on the first Business Day following each anniversary of the Effective Date for a period of ten (10) years, for a total of $1,000,000.

**1.19 "Club"** means The Club at Rarity Bay, Inc..

**1.20 "Club Membership Agreement"** means an agreement between the Debtor and another person relating to (i) a social membership in the Club; or (ii) a golf membership in the Club.

**1.21 "Collection Rights Agreement"** means that certain agreement dated as of May 12, 2017 between the Debtor and Salem Pointe Capital Partners relating to the Debtor's collection of certain sums alleged to have been due and owing to the Debtor from BEP.

**1.22 "Confirmation"** means the entry of a Final Order of the Bankruptcy Court confirming this Plan.

**1.23 "Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.24 "Confirmation Hearing"** means the hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

**1.25 "Confirmation Order"** means the Final Order of the Bankruptcy Court confirming this Plan.

**1.26 "Consummation"** shall mean the instant upon which the first distributions of cash or property have been made to any class of Creditors under this Plan, at which time this Plan shall be deemed fully consummated, and on which date this Plan shall be fully effective

**1.27 "Creditor"** means any Person that holds a Claim against the Debtor that arose or is deemed to have arising on or before the Petition Date, including an Allowed Claim against the Debtor's Estate of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**1.28 "Debtor"** means Salem Pointe Capital, LLC.

**1.29 "Deficiency Claim"** means an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claims of such Creditor exceed the sum of (a) any set off rights of the Creditor permitted under §553 of the Bankruptcy Code, plus (b) the Secured Claim of such Creditor; provided, however, that if the holder of a Secured Claim or the Class of which such Claim is a member makes the election provided in §1111(b)(2) of the Bankruptcy Code, there shall be no Deficiency Claim in respect of such Claim.

**1.30 "Disclosure Statement"** means the Disclosure Statement with respect to the Plan, including all exhibits and schedules thereto, filed by the Debtor and approved by the Court pursuant to § 1125 of the Bankruptcy Code, as may be amended from time to time.

**1.31 "Disputed Claim"** means a Claim as to which a proof of claim has been filed or deemed filed, as to which an objection has been or may be timely filed by the Debtor, the Reorganized Debtor, the Plan Proponent, or any other party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by this Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Before an objection has been or may be timely filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in the proof of claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent, or unliquidated, on the Schedules of Assets and Liabilities.

**1.32 "Disputed Claims Reserve"** means a reserve to be held in trust for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

**1.33 "Distribution"** means the Cash and other property required by the Plan to be distributed to the holders of Allowed Claims and Allowed Interests.

**1.34 "Distribution Date"** means, in respect of the Class 10 Guaranteed Payment, the first Business Day following each anniversary of the Effective Date, and, in respect of the payments under the GUC Trust, the date or dates upon which the GUC Trustee shall determine in accordance with the provisions of the GUC Trust.

**1.35 "Effective Date"** means the first Business Day after which all of the conditions specified in Section 13.01 of this Plan have been satisfied or waived.

**1.36 "Estate"** means the estate created in the Chapter 11 Case for the Debtor pursuant to section 541 of the Bankruptcy Code.

**1.37. "Equity Security Interest"** means an Allowed Interest which is a membership interest in the Debtor.

**1.38 "Final Order"** means an Order as entered on the docket as to which the time to appeal or seek review or rehearing has expired and as to which no appeal, review, re-argument or petition for *certiorari* is pending, or as to which any appeal, review, re-argument or petition for *certiorari* that has been sought has been resolved by the highest court with appropriate jurisdiction, or if pending, no stay shall have been obtained.

**1.39 "GUC Trust"** means the trust for the benefit of holders of allowed general unsecured claims established on the Effective Date pursuant to Article 8 of this Plan.

**1.40 "GUC Trust Agreement"** means the agreement in substantially the form attached hereto as **Exhibit 1** to be executed as of the Effective Date establishing the GUC Trust pursuant to this Plan.

**1.41 "GUC Trust Assets"** means all Causes of Action, Avoidance Actions, and Rights of Action and the proceeds thereof.

**1.42 "GUC Trustee"** means the trustee of the GUC Trust selected by the Reorganized Debtor.

**1.43 "HOA"** means Rarity Bay Community Association, Inc.

**1.44 "Impaired"** means the treatment of an Allowed Claim or Allowed Interest under this Plan unless, with respect to such Claim or Interest, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

**1.45 "Order"** means an order or judgment of the Bankruptcy Court as entered on the docket.

**1.46 "Person"** means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit (as that term is defined in the Bankruptcy Code) or any agency or subdivision thereof or any other entity.

**1.47 "Petition Date"** means September 29, 2024.

**1.48 "Plan"** means this Plan of Reorganization, any Amended Plan of Reorganization, and any amendment to the Plan of Reorganization or any Amended Plan of Reorganization filed by the Plan Proponents. If any further Amended Plan or amendments to the Plan of Reorganization or any Amended Plan of Reorganization has been filed, then "Plan" means the most recent amended plan filed with the Court or most recent plan along with any amendments thereto.

**1.49 "Plan Ballot"** means the form of ballot or ballots that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

**1.50 "Plan Document"** means any and all documents contemplated to be executed in connection with this Plan.

**1.51 "Plan Proponent"** means, collectively, BEP and TCRB.

**1.52 "Preserved Actions"** means all Causes of Action (including, without limitation, all Avoidance Actions) transferred to the GUC Trust pursuant to this Plan.

**1.53 "Priority Claim"** means any Claim to the extent entitled to priority in payment under §507(a) of the Bankruptcy Code.

**1.54 "Priority Tax Claim"** means any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**1.55 "Pro Rata"** means the proportion that the dollar amount of an Allowed Claim or Allowed interest in a class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

**1.56 "Professional Fee Claims"** means Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

**1.57 "Professionals"** means any Court-approved professional Person, including lawyers, accountants, financial advisors, investment bankers and restructuring advisors, employed by the Debtor in this Chapter 11 Case at any time before the Effective Date.

**1.58 "Reorganized Debtor"** means the Debtor on and after the Effective Date.

**1.59 "Rights of Action"** includes (a) any Avoidance Actions, (b) any Cause of Action of the Debtor or the Estate; (c) any objection or other challenge to a Claim; and (d) any objection or other challenge to an Interest.

**1.60 "Schedules"** means the Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented from time to time, and filed with the Bankruptcy Court in accordance with §521(a)(1) of the Bankruptcy Code.

**1.61 "Secured Claim"** shall mean a Claim secured by a lien against property in which the Debtor has an interest, or which is subject to set-off under § 553 of the Bankruptcy Code to the extent of the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

**1.62 "Trustee"** means Gary M. Murphey, the chapter 11 trustee appointed August 13, 2025.

**1.63 "Unimpaired"** means a claim that is not Impaired as contemplated in 11 U.S.C. § 1124.

**1.64 "Unsecured Claim"** means a Claim not secured by a charge, mortgage or lien against or interest in property of the Estate, including, but not limited to, any Deficiency Claim and any claim for damages resulting from the rejection of an executory contract or unexpired lease.

**ARTICLE 2**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

| | | |
|---|---|---|
| **2.01** | **Class 1.** | All Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| **2.02** | **Class 2.** | The Secured Claims of Rarity Bay Partners (f/k/a Salem Pointe Capital Partners) ("<u>RBP</u>") to the extent such Claim becomes an Allowed Secured Claim. |
| **2.03** | **Class 3.** | The Secured Claim of the U.S. Small Business Administration to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.04.** | **Class 4.** | The Secured Claim of Deere Credit to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.05.** | **Class 5.** | The Secured Claim of Wells Fargo Equipment Finance to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.06** | **Class 6.** | The Secured Claim of US Bank Equipment Finance to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.07** | **Class 7.** | The Secured Claim of Kapitus Servicing to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.08** | **Class 8.** | The Secured Claim of PNC Bank to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.09** | **Class 9.** | The Secured Claim of HOA to the extent that such Claim becomes an Allowed Secured Claim. |
| **2.10** | **Class 10.** | All Allowed Unsecured Claims other than the Unsecured Claims in Classes 11 and 12. |

| 2.11 | **Class 11.** | All Allowed Unsecured Claims other than the Unsecured Claims in Classes 10 and 12, consisting of the Claims of the plaintiffs in the Hoban AP (as defined below). |

| 2.12 | **Class 12.** | All Allowed Unsecured Claims other than the Unsecured Claims in Classes 10 and 11, consisting of the Claims of the plaintiffs in the Hinkle AP and the Lorts AP (each as defined below). |

| 2.13 | **Class 13.** | All Allowed Unsecured Claims other than the Unsecured Claims in Classes 10, 11, and 12, consisting of the Allowed Unsecured Claims, if any of RBP. |

| 2.14 | **Class 14.** | All holders of Equity Security Interests in the Debtor. |

## ARTICLE 3

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

| 3.01 | **Unclassified Claims** | Under section § 1123(a)(1), Administrative Claims, and Priority Tax Claims are not classified. |

| 3.02 | **Administrative Expense Claims** | Each holder of an Allowed Administrative Claim will be paid in cash, in full on the Effective Date of this Plan, or upon such other terms as may be agreed upon by the holder of such claim and the Reorganized Debtor. |

| 3.03 | **Priority Tax Claims** | Each holder of a Priority Tax Claim will be paid in accordance and consistent with the provisions of § 1129(a)(9)(C) of the Bankruptcy Code. |

| 3.04 | **Statutory Fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. |

| 3.05 | **Prospective Quarterly Fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code. |

## ARTICLE 4

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01** **Allowed Claims and Interests shall be treated as follows under this Plan:**

| Class | | Impairment | Treatment |
| --- | --- | --- | --- |
| Class 1 | Priority Claims excluding those in Article 3 | Unimpaired | Class 1 is Unimpaired by this Plan. Each holder of an Allowed Class 1 Claim will be paid in full, in cash, upon the later of the Effective Date of this |

Plan, or the date on which such Claim is Allowed by a final non-appealable order.

| Class 2 | Secured Claims of RBP | Impaired | Class 2 is Impaired by this Plan. The Secured Claims of RBP in the approximate collective amount of $7,042,000, if and when such Claims becomes Allowed Claims, shall be paid as follows: |

To the extent the RBP Claims becomes an Allowed Secured Claims, such Allowed Secured Claims shall, on the Effective Date, be reduced by the following:

(a) $1,000,000, representing the amount of the BEP Purchase Price (as defined below);

(b) $1,000,000 representing the BEP Additional Funds as defined in Section 7.07 below;

(c) $500,000, representing the proceeds of the 2019 Settlement; and

(d) $200,000, representing escrowed funds consisting of social membership initiation fees in the Club ("SMIFs").

The above referenced funds shall be applied to pay Claim No. 5 and Claim No. 16 in full first and then toward reduction in Claim No. 4 to the extent such Claims become Allowed Secured Claims. The remaining Allowed Secured Claim balance of with interest at 6.65% amortized over 240 months with a balloon in 120 months. RBP shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date; provided, however, upon payment of the BEP Purchase Price (as defined below), the BEP Sale Property (as defined below) shall be released from any all liens, claims and interests of RBP including, but without limitation, all claims of liens lis pendens, restrictive covenants. There shall be no prepayment penalty. All existing loan documents evidencing the RBP Secured claim shall remain in full force and effect provided, however, that the Reorganized Debtor shall not be required to comply with any financial performance covenants, including without limitation the covenants or terms described in 2(d),

2(g), 2(j), 2(m), 7(j), 7(l), 13, 14, 15(h), or 16(g) of the existing loan documents.

In the case of *Salem Pointe Capital Partners (n/k/a Rarity Bay Partners) v. Salem Pointe Capital, LLC, et al.,* Adv. Proc. No. 2:25-ap-03006-SHB (the "RBP AP") (formerly pending in the Chancery Court of Monroe County, Tennessee at Case No. 19943) certain orders and judgments were entered. RBP recorded six (6) order and/or judgments. Five (5) of these were not final judgments as contemplated by TENN. CODE ANN. § 25-5-101 *et. seq.* The recordation of non-final judgments is ineffective to create a lien upon real property. The one Order of Final Judgment entered on September 23, 2024 and recorded on September 24, 2024 was recorded five (5) days before the Petition Date. Accordingly, the recordation of the Final Judgment is indisputably an avoidable preferential transfer under section 547(b) of the Bankruptcy Code. RBP has not filed a claim asserting that any of the amounts arising out of the judgments entered by the Chancery Court in the RBP AP are secured. To the extent that RBP asserts any claims arising out of the judgments entered by the Chancery Court in the RBP AP, such claims shall be treated as Class 13 Claims and the Confirmation Order shall provide that any and all orders and/or judgments of the Chancery Court recorded by RBP are avoided, void, and of no force effect.

| | | | |
|---|---|---|---|
| Class 3 | Secured Claim of U.S. Small Business Administration | Impaired | Class 3 is Impaired by this Plan. The Allowed Secured Claim of the U.S. Small Business Administration ("SBA") in the approximate amount of $150,000, if and when such Claim becomes Allowed Claim, shall be paid as follows:<br><br>Allowed Secured Claim as of the Effective Date with interest at 3.75% amortized over 270 months. SBA shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 3 Allowed Secured Claim is satisfied. |
| Clas 4. | Secured Claim of Deere Finance | Impaired | Class 4 is Impaired by this Plan. The Allowed Secured Claim of Deere in the approximate amount of $48,510, if and when such Claim becomes Allowed Claim, shall be paid as follows: |

11

|  |  |  |  |
|---|---|---|---|
|  |  |  | Allowed Secured Claim as of the Effective Date with interest at 8.75% amortized over 60 months. Deere shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 4 Allowed Secured Claim is satisfied. |
| Class 5. | Secured Claim of Wells Fargo Equipment Finance | Impaired | Class 5 is impaired by this Plan. The Allowed Secured Claim of Wells Fargo in the approximate amount of $103,200 if and when such Claim becomes Allowed Claim, shall be paid as follows: |
|  |  |  | Allowed Secured Claim as of the Effective Date with interest at 2.9% amortized over 60 months. Wells Fargo shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 5 Allowed Secured Claim is satisfied. |
| Class 6. | Secured Claim of US Bank Equipment Finance | Impaired | Class 6 is Impaired by this Plan. The Allowed Secured Claim of US Bank in the approximate amount of $103,631, if and when such Claim becomes Allowed Claim, shall be paid as follows: |
|  |  |  | Allowed Secured Claim as of the Effective Date with interest at 8.75% amortized over 60 months. US Bank shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 6 Allowed Secured Claim is satisfied. |
| Class 7 | Secured Claim of Kapitus Servicing | Impaired | Class 7 is Impaired by this Plan. The Allowed Secured Claim of Kapitus in the approximate amount of $137,800, if and when such Claim becomes Allowed Claim, shall be paid as follows: |
|  |  |  | Allowed Secured Claim as of the Effective Date with interest at 8.75% amortized over 60 months. Kapitus shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 7 Allowed Secured Claim is satisfied. |
| Class 8 | Secured Claim of PNC Bank | Impaired | Class 8 is Impaired by this Plan. The Allowed Secured Claim of PNC in the approximate amount of $272,000, if and when such Claim becomes Allowed Claim, shall be paid as follows: |

| | | | Allowed Secured Claim as of the Effective Date with interest at 8.75% amortized over 60 months. PNC shall retain its security interests in and liens upon the Reorganized Debtor's assets in the same priority as they existed on the Petition Date until such time as the Class 8 Allowed Secured Claim is satisfied. |
|---|---|---|---|
| Class 9 | Secured Claim of HOA | Impaired | Class 9 is Impaired by this Plan.  The Allowed Secured Claim of the HOA in the approximate amount of $30,000 shall be paid as follows:<br><br>The HOA shall receive the Class 9 Settlement Consideration (as defined below), in full and complete satisfaction of the Allowed Class 9 Secured Claim. |
| Class 10 | General Unsecured Claims | Impaired | Class 10 is Impaired by this Plan. Each holder of an Allowed Class 10 Claim will be paid in Cash, in annual distributions, its pro rata share of (a) the Class 10 Guaranteed Payment from the Reorganized Debtor; and (b) the distribution of funds held in the GUC Trust from the GUC Trustee on the Distribution Date in accordance with the provisions of the GUC Trust. |
| Class 11 | Hoban AP Unsecured Claims | Impaired | Class 11 is Impaired by this Plan. Each holder of an Allowed Class 11 Claim shall receive its proportionate share of the Class 11 Settlement Consideration (as defined below), in full and complete satisfaction of the Allowed Class 11 Unsecured Claims. |
| Class 12 | Hinkle AP and Lorts AP Unsecured Claims | Impaired | Class 12 is Impaired by this Plan. Each holder of an Allowed Class 12 Claim shall receive its proportionate share of the Class 12 Settlement Consideration (as defined below), in full and complete satisfaction of the Allowed Class 12 Unsecured Claim. |
| Class 13 | RBP Unsecured Claims | Impaired | Class 13 is Impaired by this Plan. Each holder of an Allowed Class 13 Claim will be paid in Cash, in annual distributions, its pro rata share of the Class 10 Guaranteed Payment from the Reorganized Debtor. Class 13 shall not receive any distribution of funds held in the GUC Trust from the GUC Trustee until such time as all Class 10 Claims have been paid in full. |

13

| Class 14 | Equity Security Holders | Impaired | Class 14 is Impaired by this Plan and is deemed to reject the Plan. The existing Equity Security Interests in the Debtor will be canceled on the Effective Date and the holders of Equity Security Interests in the Debtor shall not receive or retain any property or interest in the Debtor on account of their existing Equity Security Interests. For the avoidance of doubt, no member of TCRB shall be liable individually or personally for any of the debts of the Reorganized Debtor under the Plan. |
|---|---|---|---|

## ARTICLE 5

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

| | | |
|---|---|---|
| 5.01 | **Objections to Claims** | The Reorganized Debtor and the GUC Trustee reserve the right to object to any Claim or Interest both prior to and after the Effective Date. |
| 5.02 | **Disputed Claim Reserve** | No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a Final Order. A Disputed Claims Reserve shall be established by the Reorganized Debtor and/or the GUC Trustee for the treatment of Disputed Claims. The Reorganized Debtor and/or the GUC Trustee shall deposit into a Disputed Claims Reserve an amount equal to the Pro Rata share of the Distribution allocable to such Disputed Claims, in accordance with the distribution scheme contemplated in the Plan, as if such Claims were Allowed Claims. Amounts deposited into the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan. Once such Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Reorganized Debtor is authorized to pay the Allowed Amount of such Claim without further approval from or notice to any person or entity. |
| 5.03 | **Settlement of Disputed Claims** | The Reorganized Debtor and the GUC Trustee will have the power and authority to settle and compromise a disputed claim with approval from the Bankruptcy Court in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |
| 5.04 | **Disallowance of Late Filed Proofs of Claims** | Except as otherwise provided in the Plan or agreed to by the Reorganized Debtor, any proof of claim filed by the holder of a Claim after the Bar Date is hereby disallowed without further notice. |
| 5.05 | **Bar Date to File Objections to Claims** | All objections to Claims shall be filed not later than one hundred eighty (180) days after the Effective Date; provided, however, such bar date may be extended by order of the Bankruptcy Court, after notice and opportunity for hearing. |

## ARTICLE 6

### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01 Assumed Executory Contracts and Unexpired Leases**

The Debtor shall assume the following executory contracts and unexpired leases as of the Effective Date:

(a) The 2019 Settlement Agreement (as modified by Section 14.05 of this Plan) (the "2019 Settlement Documents"); and

(b) Such other executory contracts and unexpired leases as the Plan Proponent may identify prior to confirmation in any supplement or amendment to this Plan.

**6.02 Rejected Executory Contracts and Unexpired Leases**

The Debtor shall reject the following executory contracts and unexpired leases as of the Effective Date:

(a) The Collection Rights Agreement;

(b) The Assignment of Right to Purchase Real Property dated as of May 18, 2015 by and between the Debtor and Salem Pointe Capital Partners, as predecessor in interest to RBP;

(c) All agreements of any kind or nature between the Debtor and RBP;

(d) All Club Membership Agreements, including, without limitation, any rights of first offer or refusal to purchase the Club;

(e) The Community Services Agreement dated as of April 18, 2018 and effective as of November 1, 2017, by and between Rarity Bay Community Association and Salem Pointe Capital, LLC; and

(f) Such other executory contracts and unexpired leases as the Plan Proponent may identify prior to confirmation in any supplement or amendment to this Plan.

**6.03 Effect of Non-assumption**

Except for executory contracts and unexpired leases that have been assumed, and, if applicable, assigned, before the Effective Date or under section 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

**6.04 Effect of Rejection of Collection Rights Agreement and Assumption of 2019 Settlement Agreement.**

Upon rejection of the Collection Rights Agreement and assumption of the 2019 Settlement Agreement, there shall be no continuing basis for the assertion of any liens lis pendens upon any lots owned by BEP and, accordingly, the Confirmation Order shall provide that (a) all liens lis pendens shall be released upon the Effective Date and (b) the Confirmation Order may be recorded in the appropriate county land records to effectuate the release of all such liens lis pendens and the Bankruptcy Court shall enter an order in *Salem Pointe Capital Partners (n/k/a Rarity Bay Partners) v. Salem Pointe Capital, LLC, et al.,* Adv. Proc. No. 2:25-ap-03006-SHB (the "RBP AP") terminating and

15

declaring that all liens lis pendens are void and of no further force or effect.

| | | |
|---|---|---|
| **6.05** | **Claims arising From Rejection** | Any Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than sixty (60) days after the date of the entry of the Confirmation Order and any such Claim, to the extent it is or becomes an Allowed Claim, shall be treated as a Class 10 Claim hereunder. |
| **6.06** | **Survival of Restrictive Covenants** | The covenants, agreements, terms, conditions, and representations contained in the restrictive covenants and declarations governing the Rarity Bay Subdivision shall remain in full force and effect, except as otherwise provided in the Plan and specifically, except for the Sixth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay and Amendment of Bylaws for Rarity Bay Community Association, Inc., which Sixth Amendment is being declared void and ineffective pursuant to Section 14.04 of the Plan and except for the termination of the Declarant Rights as provided for in Section 14.03 of the Plan. |

## ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE PLAN

| | | |
|---|---|---|
| **7.01** | **Sale of Certain Property** | For the fair value cash sum of one million dollars ($1,000,000) (the "BEP Purchase Price") and the BEP Settlement Consideration set forth in Section 14.05 of this Plan, the Reorganized Debtor shall convey to BEP that certain real property owned by the Debtor listed on Schedule 7.01 attached hereto (the "BEP Sale Property") generally consisting of fifty one (51) lots situated in Phase 17 and located near Turnstone Lane (the "Phase 17 Lots"), eight (8) lots located near Shearwater Drive (the "Shearwater Lots"), approximately three (3) acres situated near the community garden and dog park (the "3 Acres"), and approximately 11.2 acres located near Keeble Road (the "11.2 Acres"). |

For the BEP Additional Funds (as defined below), the Reorganized Debtor and TCRB shall provide one million two hundred fifty thousand dollars ($1,250,000) in credits that may be applied by BEP (or conveyed by BEP to subsequent purchasers of any lot owned by BEP) to the then current value/price for membership certificates, initiation fees, dues, or like charge necessary to apply or maintain a golf or social membership marketed by the Reorganized Debtor.

The BEP Purchase Price and BEP Additional Funds are conditioned upon the negotiation, execution, and delivery of (a) an agreement (the "Use Agreement"), satisfactory to BEP in its sole and absolute discretion, permitting the Phase 17 Lots or other property not previously annexed into the Rarity Bay development, to enjoy the rights to access, utility connection and use of the amenities afforded properties withing the Rarity Bay development (which such rights shall be fully transferrable upon a sale by BEP of such property); and (b) an agreement

16

(the "ARG Agreement"), satisfactory to BEP, in its sole and absolute discretion, governing the architectural design process for certain of BEP's existing lots and the BEP Sale Property.

If and when such the RBP Secured Claim becomes and Allowed Secured Claim, the BEP Purchase Price and the BEP Additional Funds shall be delivered to RBP for a credit against and reduction in its Allowed Secured Claim. The BEP Sale Property shall be free and clear of all liens, claims, interests, and encumbrances, including, specifically but without limitation, all claims of liens lis pendens, and, solely as to the Phase 17 Lots, any restrictive covenants. In respect of the property identified on Schedule 14.02 attached hereto, the liens of HOA against such properties shall continue to exist in the same priority as they existed on the Petition Date.

The Reorganized Debtor shall convey to HOA an easement over the property described in Schedule 7.01(b) for the location of an approximately 1,800 square foot building and for a parking area for said building (the "RBCAI Easement"), the size and location of such parking area to be mutually agreed to by the Reorganized Debtor and HOA. Such building and parking area shall be utilized for the storage of maintenance materials and equipment utilized for the maintenance of common areas and other property of HOA. The conveyance of the RBCAI Easement shall be granted  in consideration for the payment of approximately $30,000 by HOA (the "RBCAI Purchase Price"). If and when the RBP Secured Claim becomes an Allowed Secured Claim, the RBCAI Purchase Price shall be delivered to RBP for a credit against and reduction in its Class 2 Allowed Secured Claims. Upon payment of the RBCAI Purchase Price, the RBCAI Easement shall be free and clear of all liens, claims, interests, and encumbrances.

**7.02  Restructuring of RBP Secured Claim**

The RBP Secured Claim, to the extent such Claim becomes an Allowed Claim, after the reduction by the BEP Purchase Price, shall be paid in accordance with the provisions of Section 4.01.

**7.03  Cancelation of Equity Interests in The Debtor**

As provided in Section 4.01, existing Equity Security Interests in the Debtor shall be canceled on the Effective Date.

**7.04  Infusion of New Equity**

Upon the occurrence of the Effective Date, TCRB shall infuse the sum of one million five hundred thousand dollars ($1,500,000) (the "TCRB Equity Infusion") which amount shall be used first toward the satisfaction the Allowed unclassified claims in Sections 3.01 through 3.05. Any surplus of the TCRB Equity Infusion after satisfaction of the Allowed unclassified claims in Sections 3.01 through 3.05 shall be utilized to make the payments to the holders of Allowed Claims in Class 10.

| | | |
|---|---|---|
| **7.05** | **Issuance of New Equity Security Interests in Reorganized Debtor** | Upon the occurrence of the Effective Date, and the receipt by the Reorganized Debtor of the TCRB Equity Infusion, TCRB shall be issued one hundred percent (100%) of the Equity Security Interests in the Reorganized Debtor. |
| **7.06** | **Sale of Club Credits** | TCRB intends to market and sell membership certificates in TCRB to third parties, and in addition thereto, the Reorganized Debtor shall charge initiation fees along with monthly dues for the use of and membership in the club and the golf course to generate revenue for the operation of the club and golf course and to fund the repayment of the debts under the Plan. For the BEP Additional Funds, TCRB and the Reorganized Debtor will establish a credit account in the amount of one million two hundred fifty thousand dollars ($1,250,000) from which BEP or any subsequent purchaser of a lot owned by BEP that is identified by BEP may draw against until exhausted (the "Club Credit Account") for the payment of membership certificates in TCRB, the initial membership fees, initiation fees, dues, and any other fees or assessments of like nature for the use of and/or membership in the Club and the golf course (the "Club Credits") with such credits to be applied, charged, and assessed on the then current cost or charge for such membership certificate, initiation fee, dues, fees, or assessments. By way of example, but without limitation, a membership certificate in TCRB costs $12,500.00 as of the date of the filing of the proposed Plan. In the event that the cost of a membership certificate increases to $15,000.00 in 2027, then BEP would be charged $15,000.00 for such membership certificate and that amount would be deducted from the credits that BEP holds. Where BEP identifies a subsequent purchaser that may draw on the Club Credit Account, BEP shall also identify the amount of credit allocated to such subsequent purchaser. Any subsequent purchaser identified by BEP and allocated funds shall not be permitted to subsequently transfer any portion of their credit allocation. |
| **7.07** | **BEP Additional Funds** | BEP shall, subject to the provisions of Section 7.01 of this Plan, provide additional funds of $1,000,000 (the "BEP Additional Funds") which shall be delivered to the Reorganized Debtor in exchange for the sum of $1,250,000 in Club Credits which such credits may be parceled by BEP and sold to and used by prospective purchasers of lots from BEP. |
| **7.08** | **Corporate Governance** | From and after the Effective Date, the Reorganized Debtor will be governed by the members of the Reorganized Debtor. |
| **7.09** | **Approval of Settlements** | Upon the occurrence of the Effective Date, the settlements set forth in Article 14 of this Plan shall be implemented. The net result of the approval of the settlements in this Plan will be 1) to fully and finally resolve the Hoban AP, the Hinkle AP, the Lorts AP, resolve certain of the claims in the RBP AP, 2) provide the HOA with certain real property which it desires; 3) provide the Reorganized Debtor with certain real property which it desires; and 4) limit the Reorganized Debtor's ongoing indemnity obligations to BEP. |

18

| 7.10 | **Assumption of Executory Contracts** | Upon the occurrence of the Effective Date, the executory contracts to be assumed by the Debtor set forth in Article 6 of this Plan shall be implemented.  The net result of the assumption of the assumed executory contracts will be to implement certain of the settlements provided for in this Plan such that ongoing litigation and indemnification claims may be resolved. |
|------|-----|-----|
| 7.11 | **Pursuit of Avoidance Actions, Causes of Action, and Rights of Action** | All Preserved Actions, Avoidance Actions, Causes of Action, and Rights of Action shall be conveyed to the GUC Trust as set forth in Article 8 of this Plan.  For purposes of clarity but without limiting the foregoing, the following include specific types of Causes of Action, Avoidance Actions, and Rights of Action that comprise the Preserved Actions: |

    **(a)** <u>Causes of Action related to insurance policies</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies and occurrence contracts to which the Debtor is a party or pursuant to which the Debtor has any rights whatsoever. The Causes of Action reserved include Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or any other matters.

    **(b)** <u>Claims, defenses, crossclaims and counterclaims related to litigation and possible litigation</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action (including, but not limited to, all claims, defenses, crossclaims and counterclaims) against Person(s) that are party to or that may become party to litigation, arbitration or other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including, but not limited to the following actions currently pending or pending as of the Petition Date:

        (i)    All claims the Debtor may have against partners of a general partnership, including, without limitation RBP and its successors and predecessors in interest and affiliates, for a general partnership's debts including, without limitation, claims arising under TENN. CODE ANN. § 61-1-306, the Tennessee Revised Uniform Partnership Act (TENN. CODE ANN. § 61-1-101, *et seq.*) its and predecessor enactments, or any other similar applicable state statutory or common law cause of action or remedy;

        (ii)    RBP AP (as defined above); and

        (iii)    *Taylor v. Salem Pointe Capital, LLC,* Adv. Proc. No. 3:25-ap-03005-SHB (the "Taylor AP").

For the avoidance of doubt, the Hoban AP, the Hinkle AP, and the Lorts AP (each as defined below) are being settled in accordance with the provisions of Article 14 of this Plan.

**(c)** <u>Causes of Action related to accounts receivable and accounts payable</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action against or related to all entities or individuals that owe or that may in the future owe money to the Debtor. Further, unless otherwise released in the Plan, the Debtor expressly reserves all Causes of Action against or related to all entities or individuals that assert or may assert that the Debtor owes money to them.

**(d)** <u>Causes of Action related to tax refunds and taxes</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action against or related to all entities that owe or that may in the future owe money related to tax refunds of the Debtor. Further, the Debtor expressly reserves all Causes of Action against or related to all entities that assert or that may in the future assert the Debtor owes taxes to them.

**(e)** <u>Causes of Action related to contracts and/or leases</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action, based in whole or in part upon any and all contracts and leases, including, but not limited to those identified in the Debtor's Schedule G, as may be amended, to which the Debtor has any right whatsoever. The Causes of Action reserved include Causes of Actions against vendors, suppliers of goods or services, or any other parties: (i) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (ii) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (iii) for failure to fully perform or to condition such performance on additional requirements under contracts with the Debtor before the assumption or rejection, if applicable; (iv) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, lender, lessor, or other party; (v) for any liens held by the Debtor; (vi) counter-claims and defenses related to any contractual obligations; (vii) turnover actions; and (viii) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claim.

**(f)** <u>Causes of Action related to deposits, adequate assurance postings and other collateral postings</u>. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action based in whole or in part

upon any and all postings of security deposits, adequate assurance payments or any other type of deposit or collateral

**(g)** Causes of Action related to Avoidance Actions. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves any and all potential claims or causes of action for Avoidance Actions, including potential claims or causes of action against the Debtor's current or former directors, officers, or insiders (as defined in the Bankruptcy Code) under chapter 5 of the Bankruptcy Code and those related to transfers identified in the Debtor's statement of financial affairs, as may be amended.

**(h)** Causes of Action related to commercial tort claims. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all commercial tort claims against any individual or entity, including, but not limited to, claims and causes of action of the Debtor against any of the Debtor's current or former directors, officers, insiders or affiliates, including claims against the Debtor's current or former directors and officers for (i) wrongful acts such as gross mismanagement, material misrepresentations, misstatements, errors, neglect, or breach of duty in connection with the Debtor's operations, practices, financial condition, or otherwise, including the Debtor's financial health and financial projections and (ii) acts, errors, misstatements, misleading statements, omissions or breaches of duty in connection with the purchase or sale of, or offer to purchase or sell, securities issued by the Debtor.

**(i)** Causes of Action related to recharacterization. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action against any Holder of a Claim to recharacterize any asserted Claim as equity in the Debtor.

**(j)** Causes of Action related to subordination. Unless otherwise released by the Plan or order of the Bankruptcy Court, the Debtor expressly reserves all Causes of Action against RBP and its successors and predecessors in interest and affiliates for the subordination of any of its or their claims in this Chapter 11 Case.

## ARTICLE 8

### GUC TRUST

**8.01    Establishment of GUC Trust**

On the Effective Date, the GUC Trust will be established pursuant to the GUC Trust Agreement, which will be filed with the Bankruptcy Court. Upon establishment of the GUC Trust, all GUC Trust Assets shall be deemed transferred to the GUC Trust without any further action of the

21

Debtor, the Reorganized Debtor, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtor.

| 8.02 | **Transfer of GUC Trust Assets** | Pursuant to Bankruptcy Code section 1141, all transfers and contributions made pursuant to this Section 8.02 shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests. Upon completion of the transfer of the GUC Trust Assets to the GUC Trust, neither the Debtor nor the Reorganized Debtor will have any further interest in, or with respect to, the GUC Trust Assets, or the GUC Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the GUC Trustee and the GUC Trust's beneficiaries) will treat the transfer of assets to the GUC Trust in accordance with the terms of this Plan, as a transfer to the GUC Trust's beneficiaries, followed by a transfer by such GUC Trust's beneficiaries to the GUC Trust, and the GUC Trust's beneficiaries will be treated as the grantors and owners thereof. |

| 8.02 | **Purpose of GUC Trust** | The GUC Trust shall be established for the purpose of liquidating the GUC Trust Assets, prosecuting, settling, or foregoing pursuit of Causes of Action transferred to the GUC Trust, to maximize recoveries for the benefit of the GUC Trust's beneficiaries, and making distributions in accordance with this Plan to the GUC Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The GUC Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the GUC Trust's beneficiaries treated as grantors and owners of the trust. |

| 8.03 | **GUC Trustee** | **(i) Retention of GUC Trustee**. The GUC Trustee is the person chosen by the Reorganized Debtor to serve as the trustee of the GUC Trust. Pursuant to Bankruptcy Code section 1123(b)(3), the GUC Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such Rights of Action, Causes of Action, and Avoidance Actions transferred to the GUC Trust in accordance with the best interests of and for the benefit of the GUC Trust's beneficiaries. In the event that the GUC Trustee resigns, is removed, terminated or otherwise unable to serve as the GUC Trustee, then a successor shall be appointed. Any successor GUC Trustee appointed shall be bound by and comply with the terms of this Plan, the Confirmation Order and the GUC Trust Agreement. |

**(ii) Responsibilities and Authority of the GUC Trustee.** The responsibilities and authority of the GUC Trustee shall include: (a) calculating and implementing all Distributions for the GUC Trust's beneficiaries; (b) administering and paying taxes, including, among other things, (i) filing of tax returns, and (ii) representing the interest and account of the GUC Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) liquidating the GUC Trust Assets, including through the commencement

22

of Causes of Action at the discretion of the GUC Trustee, and providing payments to the GUC Trust's beneficiaries in accordance with the provisions of this Plan; (d) retaining and paying at normal and customary rates on a monthly basis or on a contingency fee basis professionals in connection with the GUC Trustee's performance of its duties under this Plan and GUC Trust Agreement; (e) distributing information statements as required for federal income tax and other applicable tax purposes; (f) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; and (g) such other responsibilities as may be vested in the GUC Trustee pursuant to this Plan, the GUC Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of this Plan.

**(iii) Powers of the GUC Trustee.** The powers of the GUC Trustee to administer the GUC Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) in accordance with Bankruptcy Code section 345, the power to invest funds in, and withdraw, make Distributions and pay taxes and other obligations owed by the GUC Trust from funds held by the GUC Trustee in accordance with this Plan and GUC Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and professionals to assist the GUC Trustee with respect to its responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle any Causes of Action on behalf of the GUC Trust without prior Bankruptcy Court approval but in accordance with the GUC Trust Agreement, (d) the power to object to and settle Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the GUC Trustee pursuant to this Plan, the GUC Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan. The GUC Trustee may incur any reasonable and necessary expenses in liquidating and converting the GUC Trust Assets to Cash.

The GUC Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution from a GUC Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to, or on behalf of, such Holder under this Plan unless and until such Holder has made arrangements satisfactory to the GUC Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the GUC Trust shall, pending the implementation of such arrangements, be treated as

an undeliverable Distribution to be held by the GUC Trustee, as the case may be, until such time as GUC Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

**(iv) Prosecution of Causes of Action.** Pursuant to Bankruptcy Code section 1123(b), the GUC Trustee, on behalf of and for the benefit of the GUC Trust's beneficiaries, shall be vested with and shall retain and may enforce any Causes of Action, Rights of Action, or Avoidance Actions transferred to the GUC Trust that were held by, though, or on behalf of the Debtor and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date. The GUC Trustee will have the sole power to pursue, prosecute, resolve, compromise, and settle any Causes of Action on behalf of the GUC Trust without prior Bankruptcy Court approval. The recoveries from any Causes of Action, Rights of Action, or Avoidance Actions transferred to the GUC Trust will be deposited into the GUC Trust and distributed in accordance with the GUC Trust Agreement, and this Plan.

**(v) Compensation of GUC Trustee.** The GUC Trustee shall be compensated as set forth in the GUC Trust Agreement. The GUC Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Confirmation Order, and the GUC Trust Agreement. The GUC Trustee shall not be required to file a fee application to receive compensation. (vi) Retention and Payment of Professionals. The GUC Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the GUC Trustee in the performance of his duties and compensate such professionals from the assets of the GUC Trust as set forth in the GUC Trust Agreement. Such attorneys, accountants, and other professionals and agents shall not be required to file fee applications with the Bankruptcy Court to receive compensation and reimbursement of expenses.

**(vii) Limitation on Liability of the GUC Trustee.** The GUC Trustee and its professionals shall be entitled to indemnification against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the GUC Trustee or its professionals may incur or sustain by reason of being or having been a GUC Trustee or professionals of the GUC Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the GUC Trustee or his professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under the Tennessee Rules of Professional Conduct.

**8.04 Termination of GUC Trust**

The GUC Trust shall be dissolved upon the earlier of the distribution of all of its assets to the GUC Trust's beneficiaries and the fifth anniversary of the creation of the GUC Trust, provided that, if warranted by the facts and circumstances involved (including, without limitation, in resolving

24

any Causes of Action) upon application to, and if approved by, the Bankruptcy Court upon a finding such extension is necessary for purposes of resolving such Causes of Action and/or distributing the GUC Trust Assets to GUC Trust's beneficiaries, the term of the GUC Trust may be extended by the GUC Trustee for a specified, finite term. Notwithstanding the foregoing, the GUC Trust shall be automatically terminated in the event that a final decree is entered closing the Chapter 11 Case.

| | | |
|---|---|---|
| 8.05 | **Exculpation Relating to the GUC Trust** | No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any Claim or cause of action against the GUC Trustee, the GUC Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan or the GUC Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under the Tennessee Rules of Professional Conduct. |

## ARTICLE 9

### DISCHARGE

| | | |
|---|---|---|
| 9.01 | **Discharge** | The Debtor will be discharged from any debt that arose before the entry of the Confirmation Order to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6). |

## ARTICLE 10

### EFFECT OF REJECTION BY ONE OR MORE
### CLASSES OF CLAIMS OR INTERESTS

| | | |
|---|---|---|
| 10.01 | **Impaired Classes to Vote** | Each Impaired class of Claims and Equity Security Interests shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim or Equity Security Interest shown as fixed, liquidated and undisputed in the Debtor's Schedules and is not the subject of a subsequently filed objection as to such fixed, liquidated, undisputed amount. |
| 10.02 | **Acceptance by Class** | A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Equity Security Interests of such class that have voted to accept or reject the Plan. |

25

| | | |
|---|---|---|
| 10.03 | **Reservation of Cramdown Rights** | In the event that any Impaired Class shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Plan Proponent reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code. |

## ARTICLE 11

### EFFECT OF CONFIRMATION

| | | |
|---|---|---|
| 11.01 | **Vesting of Property of the Estate** | In accordance with § 1141(b) of the Bankruptcy Code, upon entry of the Confirmation Order, all property of the estate shall vest in the Reorganized Debtor without further action or further order of the Bankruptcy Court. |
| 11.02 | **Free and Clear Nature of Vested Property** | In accordance with § 1141(c) of the Bankruptcy Code, except as otherwise expressly provided in this Plan or the Confirmation Order, all property dealt with by this Plan is free and clear of all Claims and interests of Creditors, holders of Equity Security Interests in the Debtor, and general partners in the Debtor. |
| 11.03 | **Legally Binding Effect** | The provisions of this Plan shall bind all Creditors and holders of Equity Security Interests in the Debtor, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims against, and Equity Security Interests in, the Debtor shall be precluded and enjoined from (i) asserting any Claim against the Debtor, the Reorganized Debtor or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; (ii) asserting any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability; and (iii) otherwise interfering with the Debtor's administration of assets and claims under the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all Claims and Interests dealt with under the Plan and all pending legal proceedings, if any, against the Debtor and its assets and properties and any proceedings not yet instituted against the Debtor or its assets and properties, except as otherwise provided in the Plan, concerning Claims and Equity Security Interests dealt with under the Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this Chapter 11 Case pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. |
| 11.04 | **Limited Protection of Certain Parties in Interest** | Except as specifically limited herein, the Debtor, the Reorganized Debtor, and the Estate hereby release the Plan Proponent, the Trustee, each of their Professionals and any of its or their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, and any other professional persons employed by any of them, collectively referred to as "<u>Protected Persons</u>" from any and all liability under any theory of liability for any act or omission occurring on or |

26

after the Petition Date in connection or related to the Debtor, the Chapter 11 Case, or the Estate, including, but not limited to, (i) negotiating, drafting or executing Petition, Schedules, Statement of Financial Affairs, Disclosure Statement, Plan or any other actions performed in furtherance of the confirmation of the Plan; (ii) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); and (iii) formulating, preparing or disseminating the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

| | | |
|---|---|---|
| **11.05** | **Reserved** | Reserved |

| | | |
|---|---|---|
| **11.06** | **Continuation of Anti-Discrimination Provisions of Bankruptcy Code** | A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Reorganized Debtor or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit. Moreover, a Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor. All licenses, permits, charters, franchises, or other similar grants to the Debtor are hereby transferred and assigned on the Effective Date (which transfer and assignment is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) to the Reorganized Debtor on the Effective Date without the need for further application or approval by any Governmental Unit. |

| | | |
|---|---|---|
| **11.07** | **Preservation of Claims and Rights** | Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of |

27

any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief and every Claim, Cause of Action, Right of Action or claim for relief shall vest in the Reorganized Debtor as provided in § 11.01.

**The Reorganized Debtor reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, and/or any Distribution Date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtor, may have against (i) any insurer and/or insurance policies in which either the Debtor and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; and (ii) any recipient of a transfer identified in the Debtor's statements of financial affairs, including any amendments thereto, filed in this Chapter 11 Case for claims of breach of fiduciary duty, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under 11 U.S.C. § 549, turnover under 11 U.S.C. §§ 542 and 543, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement, counter-claims, claims to determine the extent and validity of liens under 11 U.S.C. § 506 and any other claims that the Estate may have against any Person that is not a Protected Person. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Reorganized Debtor relating to any claims, Causes of Action or Rights of Action referred to in this Article 11, or otherwise. Except as specifically set forth herein until the conveyance of the Rights of Action to the GUC Trust, the Reorganized Debtor shall constitute the representative of the Estate for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code. Upon the later of (a) the Effective Date and (b) the conveyance of the Rights of Action to the GUC Trust, the GUC Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtor without need for further order of the Bankruptcy Court.**

| 11.08 | **Termination of Trustee's Services and Discharge of Trustee** | On the Effective Date, the services of the Trustee shall terminate, and the Trustee shall be discharged and relieved of all rights, powers, duties, and obligations of a trustee under § 1106 of the Bankruptcy Code, and all such rights, powers, duties, and obligations of a trustee shall be vested in the Reorganized Debtor or the GUC Trustee, each as the case may be. |

28

# **ARTICLE 12**

## **RETENTION OF JURISDICTION**

**12.01  Exclusive Bankruptcy Court Jurisdiction**

The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case to the maximum extent provided by law for the following purposes following the Confirmation Date:

**(a)** To determine any and all objections to the allowance and classification of Claims or Interests;

**(b)** To determine the validity and priority of any lien;

**(c)** To determine the Allowed Amount of any Claim, whether Secured or Unsecured;

**(d)** To allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate;

**(e)** To approve the assumption or rejection of executory contracts and unexpired leases and the effect thereof;

**(f)** To determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease;

**(g)** To consider and approve any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order;

**(h)** To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan, the Confirmation Order, Commitment, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or related to any of the foregoing, including, without limitation, the RBP Adversary;

**(i)** To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor;

**(j)** To issue orders in aid of execution and implementation of this Plan and the Confirmation Order, to the extent authorized by § 1142 of the Bankruptcy Code or provided by the terms of this Plan; and

**(k)** To hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code.

**12.02  Limitation on Jurisdiction**

In no event shall the provisions of this Plan be deemed to confer upon the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE 13

### CONDITIONS TO CONFIRMATION OF PLAN

| | | |
|---|---|---|
| **13.01** | **Conditions Precedent to Effective Date** | The following are conditions precedent to the occurrence of the Effective Date: |

      **(a)** The Confirmation Order, in a form and in substance reasonably satisfactory to the Plan Proponent, shall have been entered by the Bankruptcy Court and such Confirmation Order shall have become a Final Order;

      **(b)** The form of all documents necessary or appropriate to give effect to the transactions contemplated under the Plan, if any, have been approved and executed;

      **(c)** All documents and agreements necessary to implement the Plan, including, without limitation (i) the Use Agreement; and (ii) the ARG Agreement; (iii) the recording of any covenants necessary to carry out the intent of the consideration given for the BEP Purchase Price and/or BEP Additional Funds, all of which such agreements shall have (x) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements; (y) been tendered for delivery; and (z) been effected and/or executed;

      **(d)** All required consents, approvals, and authorizations, if any, have been obtained;

      **(e)** There shall be no stay of the Confirmation Order in effect;

      **(f)** The Plan Proponent shall have determined that the Reorganized Debtor is holding good, sufficient, and available funds from which the payments required to be made on the Effective Date may be made; and

      **(g)** All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

| | | |
|---|---|---|
| **13.02** | **Annulment of Plan if Conditions Not Waived or Satisfied** | The Plan Proponent reserves the right to waive any of the conditions precedent to the Effective Date. If any of the conditions precedent are not waived and are not satisfied within ninety (90) days of the Confirmation Date or can no longer occur, the Chapter 11 Case shall be converted to a case under chapter 7 of the Bankruptcy Code and any property of the Estate shall be administered by a chapter 7 trustee. |
| **13.03** | **Withdrawal of Plan** | Plan Proponent reserves the right to withdraw this Plan at any time prior to the Confirmation Date and an election by either BEP or TCRB to withdraw this Plan shall be sufficient to effect such withdrawal. |

30

## ARTICLE 14

## <u>COMPROMISES AND SETTLEMENTS</u>

14.01 **Effect of Confirmation Order**

Pursuant to Bankruptcy Rule 9019 and applicable provisions of the Bankruptcy Code, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Security Interests, liens and controversies resolved pursuant to the Plan, including, without limitation, all liens, Claims and interests arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

14.02 **Class 9 Settlement and Settlement Consideration**

The holder of the Allowed Class 9 Claim and the Plan Proponent have reached the following compromise and settlement and have agreed to the following provisions which shall constitute the Class 9 Settlement Consideration:

(a) Upon delivery of the Use Agreement and the ARG Agreement, BEP shall

    (i)      convey by quitclaim deed HOA that certain real property set forth on Schedule 14.02(a) attached hereto; and

    (ii)      at the election of HOA either (A) convey by quitclaim deed to HOA that certain real property set forth on Schedule 14.02(b) attached hereto; or (B) cooperate with and agree not to oppose in any fashion HOA's foreclosure upon the real property set forth on Schedule 14.02(b).

(b) HOA and the Reorganized Debtor have agreed to settle HOA's rejection damages claim arising from the rejection of the Community Services Agreement as provided herein. Said rejection damages claim shall be settled by HOA waiving any claim for rejection damages and the Reorganized Debtor waiving any claim for damages against the HOA for any alleged sums due and owing under the Community Services Agreement to the date of rejection.

14.03 **Class 11 Settlement and Settlement Consideration**

The holders of Allowed Class 11 Claims and the Plan Proponents have reached the following compromise and settlement and have agreed to the following provisions which shall constitute the "<u>Class 11</u>

Settlement Consideration" to be provided in full satisfaction of the Allowed Class 11 Claims:

(a)  An order shall be entered in Adv. Proc. No. 3:24-ap-03032, *Rick Hoban, Ed Harless, Julia & Pete Misslin, John & Kim Wood, Bart Whitman, Michael Guido, and J Carey McHugh v. Salem Pointe Capital, LLC, Michael Ayres, and Rarity Bay Community Association, Inc.* (the "Hoban AP"), (i) declaring that (A) the developer or declarant rights, as provided for in the restrictive covenants of record in trust book 444, page 248, and book no. V, page 232, in the Register's Office for Loudon County, Tennessee and in the restrictive covenants of record in book M112, pages 323-362, in the Register's Office for Monroe County, Tennessee, as amended, (collectively, the "Declarant Rights"), have been terminated, relinquished, and are no longer of any force or effect; and (B) to the extent that the Declarant Rights were held by the Debtor as of the Petition Date, the Debtor terminates, relinquishes, and ratifies and confirms that such Declarant Rights are, or shall no longer be, of any force or effect; (ii) dismissing with prejudice plaintiffs' remaining claims for relief in the Hoban AP; and (iii) upon the Effective Date, plaintiffs shall withdraw any proofs of claims filed in the Chapter 11 Case to the extent such proofs of claims assert damages arising from the operative facts alleged in the Hoban AP; provided, however, that this settlement shall not affect the right of any holder of a Class 11 Claim from asserting entitlement to any other claim which such holder may assert against the Debtor.

**(b) IN ADDITION TO THE PROVISIONS OF THE ABOVE-REFERENCED SETTLEMENT, THE ORDER CONFIRMING THIS PLAN SHALL CONSTITUTE A DETERMINATION, BINDING UPON ALL PARTIES, SUCCESSORS AND ASSIGNS TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, INCLUDING BANKRUPTCY CODE SECTION 1141, THAT THE DECLARANT RIGHTS HAVE BEEN TERMINATED, RELINQUISHED AND ARE NO LONGER OF ANY FORCE OR EFFECT.**

14.04  **Class 12 Settlement and Settlement Consideration**

The holders of Allowed Class 12 Claims and the Plan Proponents have reached the following compromise and settlement and have agreed to the following provisions which shall constitute the "Class 12 Settlement Consideration" to be provided in full satisfaction of the Allowed Class 12 Claims:

(a) An order shall be entered in Adv. Proc. No. 3:25-ap-03024, *Eric Hinkle and Karen Hinkle v. Salem Pointe Capital, LLC* (the "Hinkle AP"), and in Adv. Proc. No. 26-ap-03006, *Russell and Traci Lorts, et al. v. Salem Pointe Capital, LLC* (the "Lorts AP"), (i) declaring that the following are invalid and unenforceable: (A) any provision in any deed ("Mandatory Membership Deed") purporting to require a grantee to be a "Social Member" of the Club; (B) the Sixth Amendment to the Restrictive Covenants and Amendment to Bylaws recorded at Book M249, Page 374 in the Register's Office for Monroe County, Tennessee

32

and at Book T1248, Page 517 in the Register's Office for Loudon County, Tennessee (together, "Sixth Amendment"); and (C) any other document, deed, or instrument, including any plat or survey, purporting to require the holder to be members of, or pay mandatory membership dues to, the Club; and (ii) dismissing with prejudice plaintiffs' remaining claims for relief in the Hinkle AP and Lorts AP. Upon the Effective Date, plaintiffs shall withdraw any proofs of claims filed in the Chapter 11 Case to the extent such proofs of claims assert damages arising from the operative facts alleged in the Hinkle AP and Lorts AP; provided, however, that this settlement shall not affect the right of any holder of a Class 12 Claim from asserting entitlement to any other claim which such holder may assert against the Debtor.

**(b) IN ADDITION TO THE PROVISIONS OF THE ABOVE-REFERENCED SETTLEMENT, THE ORDER CONFIRMING THIS PLAN SHALL CONSTITUTE A DETERMINATION, BINDING UPON ALL PARTIES, SUCCESSORS AND ASSIGNS TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, INCLUDING BANKRUPTCY CODE SECTION 1141, THAT THE FOLLOWING ARE INVALID AND UNENFORCEABLE: ANY PROVISION IN ANY MANDATORY MEMBERSHIP DEED PURPORTING TO REQUIRE A GRANTEE TO BE A "SOCIAL MEMBER" OF THE CLUB; (B) THE SIXTH AMENDMENT; AND (C) ANY OTHER DOCUMENT, DEED, OR INSTRUMENT PURPORTING TO REQUIRE THE HOLDER OF AN ALLOWED CLASS 12 CLAIM, THEIR SUCCESSORS OR ASSIGNS, TO BE MEMBERS OF, OR PAY MANDATORY MEMBERSHIP DUES TO, THE CLUB.**

**14.05 BEP Settlements**

In consideration of the entry into the Use Agreement and ARG Agreement as part of the consideration for the various other agreements and settlements contained in this Plan:

(a) Upon delivery of the Use Agreement and the ARG Agreement, BEP shall, at the election of HOA either (i) convey by quitclaim deed to HOA that certain real property set forth on Schedule 14.02 attached hereto; or (ii) cooperate with and agree not to oppose in any fashion HOA's foreclosure upon the real property set forth on Schedule 14.02.

(b) BEP and the Reorganized Debtor agree that the indemnification provision of Section 6 of the 2019 Settlement Agreement shall be and hereby is modified to provide that from and after the Effective Date, the Reorganized Debtor shall have no further indemnification obligation to BEP under the 2019 Settlement Agreement and that the Reorganized Debtor shall have no obligation or liability to pay BEP any amounts under Section 6 of the 2019 Settlement Agreement except for any payments or rights it may to payment of any Allowed Unsecured Claim as a member of Class 10 under the terms of the Plan. BEP agrees that any of its claims for indemnification arising after the Petition Date but

before the Effective Date shall, despite being entitled to payment as an administrative expense, be treated as part of BEP's Allowed Class 10 Unsecured Claim. For the avoidance of doubt, the modification of Section 6 of the 2019 Settlement Agreement shall apply prospectively only and BEP shall be entitled to an Allowed Class 10 Unsecured Claim for all indemnification obligations owed to BEP as of the Effective Date;

(c) Each of TCRB and BEP agree to waive any claim for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code; and

(e) Such other consideration as may be agreed upon among BEP and others, in BEP's sole and absolute discretion.

## ARTICLE 15

### MISCELLANEOUS PROVISIONS

**15.01 Bar Date for Administrative Claims**

No Administrative Claim, other than Professional Fee Claims and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date. Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules. Any Administrative Claim, other than Professional Fees Claims and United States Trustee fees, not filed in accordance with this section shall be barred and the Reorganized Debtor shall have no liability for payment of any such Administrative Claim. Further, no Person other than the Plan Proponent shall be entitled to assert any claim under section 503(b)(3)(D) of the Bankruptcy Code.

**15.02 Objections to Administrative Claims**

Objections to Applications for payment of Administrative Claims may be filed by any party in interest. In order to be considered, such objections must be filed on or before the 21st day following the date on which the application was filed or such other date as the Bankruptcy Court may fix. Any objections will be determined by the Bankruptcy Court.

**15.03 Payment of Professional Fees**

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within 60 days of the Effective Date (or such later time as the Court may fix) and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, applicable local rules. The failure to file an application by the

foregoing deadline shall constitute a waiver of all such Professional Fee Claim.

| | | |
|---|---|---|
| **15.04** | **Payment of United States Trustee Fees** | Within 30 days of the date that such payments are due, the Reorganized Debtor shall pay all amounts owing to the United States Trustee as fees and costs imposed in connection with this Chapter 11 Case. |
| **15.05** | **Satisfaction of Liabilities** | The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtor and/or the Estate, as well as assets, properties, and interests in property of the Debtor and/or the Estate. The Reorganized Debtor shall not be responsible for any pre-Effective Date obligations of the Debtor except those expressly assumed in this Plan. |
| **15.06** | **Compliance with Tax Requirements** | In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtor shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtor within thirty (30) days from the date of such request, the Debtor may, at his option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received. |
| **15.07** | **Timing of Distributions** | Unless otherwise specified herein, when a provision of this Plan requires that a payment shall be made on a certain date, such payment may be made (i) at any time prior to the date on which such payment is due; (ii) in more frequent intervals than set forth in such provision of the Plan; or (iii) not more than 14 days after the date any such payment is due. Notwithstanding the foregoing, no payment shall be considered late or otherwise result in a default unless the Debtor has failed to make the payment after the passage of 30 days following the receipt by the Debtor of a written notice advising that a payment has not been received in accordance with the times set forth in this paragraph. |
| **15.08** | **Filing of Documents in Public Records** | Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax. All state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for Filing and |

recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

| | | |
|---|---|---|
| **15.09** | **Right to Seek Further Orders** | The Reorganized Debtor, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan. |
| **15.10** | **Due Authorization by Creditors** | Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in this Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan; and (iii) indemnifies and holds harmless the Debtor, the Reorganized Debtor, the Plan Proponent and its and their professionals and representatives with respect to such Distributions. |
| **15.11** | **Filing of Additional Documentation** | On or before the Effective Date, the Debtor or Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. |
| **15.12** | **Implementation** | The Reorganized Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan. |
| **15.13** | **Substantial Consummation** | On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b). |
| **15.14** | **Governing Law** | Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Tennessee, without giving effect to any conflicts of law principles. |
| **15.15** | **Conflict** | Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or this Plan are inconsistent with (i) the Disclosure Statement or (ii) any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan. |
| **15.16** | **Severability** | The provisions of this Plan shall not be severable unless such severance is agreed to by the Plan Proponent and such severance would constitute a permissible modification of this Plan pursuant to § 1127 of the Bankruptcy Code. |
| **15.17** | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| | | |
|---|---|---|
| **15.18** | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity, including, without limitation, the termination of the Declarant Rights, the termination of the Sixth Amendment, and the elimination of the requirement that any person or property be subject to mandatory membership in the Club as set for in Sections 14.03 and 14.04. |

**EXHIBIT 1**
[GUC Trust Agreement]

## GENERAL UNSECURED CREDITORS'
## TRUST AGREEMENT

This General Unsecured Creditors' Trust Agreement (this "<u>Agreement</u>") is made as of the Effective Date (defined below), by and between SALEM POINTE CAPITAL, LLC, as the Reorganized Debtor and (the "<u>Debtor</u>"), and _____, as trustee (the "<u>GUC Trustee</u>").[1]

## RECITALS

**WHEREAS**, on September 29, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Eastern District of Tennessee (the "<u>Bankruptcy Court</u>");

**WHEREAS**, on _____, 2026, The Club at Rarity Bay, Inc. ("<u>TCRB</u>") and BEP Rarity Bay, LLC ("<u>BEP</u>"), as the Plan Proponents,  filed a Plan of Reorganization for the Debtor pursuant to chapter 11 of the Bankruptcy Code;

**WHEREAS**, on _____, 2026, the Bankruptcy Court entered an order confirming the Plan (the "<u>Confirmation Order</u>");

**WHEREAS**, the Plan's Effective Date occurred on _____, 2026 (the "<u>Effective Date</u>");

**WHEREAS**, the Plan and the Confirmation Order provide for, on the Effective Date, the creation a liquidation trust (the "<u>GUC Trust</u>") and the creation of beneficial interests in the GUC Trust for Holders of Allowed Claims in Class 10 of the Plan (collectively, the "<u>Beneficiaries</u>" and, each individually, a "<u>Beneficiary</u>") and the transfer to the GUC Trust of all the GUC Trust Assets;

**WHEREAS**, the GUC Trust Assets are to be liquidated and distributed to the Beneficiaries, as set forth in the Plan;

**WHEREAS**, the Plan contemplates that the GUC Trust shall be created for the purpose of liquidating the GUC Trust Assets, prosecuting, settling, or foregoing pursuit of the Preserved Actions, Avoidance Actions, Causes of Action, and Rights of Action transferred to the GUC Trust, maximizing recoveries for the benefit of the Beneficiaries, and making distributions in accordance with the Plan, and with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to and consistent with the purpose of the GUC Trust and the Plan;

**WHEREAS**, the GUC Trust is established as a "grantor trust" for federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the trust; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual covenants and agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Debtor and the GUC Trustee hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

**Creation and Purpose of the GUC Trust.** The Reorganized Debtor and the GUC Trustee hereby create the GUC Trust for the primary purpose of liquidating and distributing the GUC Trust Assets to the Beneficiaries in accordance with the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. In particular, the GUC Trustee shall make timely distributions and not unduly prolong the duration of the GUC Trust.

**Declaration of Trust.** In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Reorganized Debtor and the GUC Trustee have executed this Agreement and, effective on the Effective Date, hereby irrevocably transfer to the GUC Trust, all of the right, title and interests of the Debtor in and to the GUC Trust Assets, to have and to hold unto the GUC Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns as provided for in this Agreement and in the Plan and the Confirmation Order.

**Vesting of GUC Trust Assets.** As of the Effective Date and upon execution of this Agreement, the GUC Trust Assets shall be vested in the GUC Trust pursuant to the terms of the Plan and the Confirmation Order, subject to the rights and interests of the Beneficiaries.

**Transfer of GUC Trust Assets.** Pursuant to Bankruptcy Code section 1141, and the Confirmation Order, all transfers and contributions made pursuant to Article 8 of the Plan are made free and clear of all Claims, Liens, encumbrances, charges, and other interests. Upon completion of the transfer of the GUC Trust Assets to the GUC Trust, neither the Debtor nor the Reorganized Debtor will have any further interest in, or with respect to, the GUC Trust Assets or the GUC Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the GUC Trustee, and the Beneficiaries) will treat the transfer of assets to the GUC Trust in accordance with the terms of the Plan, as a transfer to the Beneficiaries, followed by a transfer by such Beneficiaries to the GUC Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

All such GUC Trust Assets shall be delivered to the GUC Trust free and clear of interests, claims, Liens, or other encumbrances of any kind, except the Allowed Claims of the Beneficiaries. Moreover, on the Effective Date, all privileges with respect to any of the GUC Trust Assets, including the attorney/client privilege, to which the Debtor is entitled shall be automatically vested in, and available for assertion by or waiver on behalf of the GUC Trust. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtor or Reorganized Debtor shall, on the Effective

2

Date, execute such other and further documents as is reasonably necessary to effectuate the foregoing.

**Funding of the Trust.** The GUC Trust shall be funded with the GUC Trust Assets and any litigation funding obtained in the GUC Trustee's discretion.

**Acceptance by GUC Trustee.** The GUC Trustee hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the GUC Trust, the GUC Trustee hereby accepts the transfer of the GUC Trust Assets.

**Name of the GUC Trust.** The trust established hereby shall be known as the "The SPC Class 10 GUC Trust."

## ARTICLE II
## THE GUC TRUSTEE

**Appointment.** The GUC Trustee has been selected as set forth in the Plan. The GUC Trustee's appointment shall continue until the earlier of: (a) the termination of the GUC Trust; or (b) the GUC Trustee's resignation, death, dissolution, removal, or liquidation.

**General Powers.** Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the GUC Trustee may control and exercise authority over the GUC Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the business of the GUC Trust. No person dealing with the GUC Trust shall be obligated to inquire into the GUC Trustee's authority in connection with the acquisition, management, or disposition of GUC Trust Assets. Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Agreement, the GUC Trustee shall expressly be authorized, in the exercise of its business judgment, with respect to the GUC Trust and the GUC Trust Assets, to:

a) exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken with respect to the GUC Trust Assets by any officer, director, shareholder or other party acting in the name of the Debtor or its Estate with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party;

b) open and maintain bank accounts on behalf of or in the name of the GUC Trust, calculate and make distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the GUC Trust;

c) receive, manage, liquidate, invest, supervise, and protect the GUC Trust Assets, subject to the limitations provided herein; provided, however, that investments shall be limited to demand and time deposits or United State Treasury bills;

d) hold legal title to any and all GUC Trust Assets;

e) subject to the applicable provisions of the Plan, collect and liquidate all GUC Trust Assets;

f) review and, where appropriate, object to Claims and Interests, supervise and administer the resolution and settlement of, and distributions to, Holders Allowed Claims, the Beneficiaries, and creditors of the GUC Trust, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding in accordance with this Agreement, the Plan, and the Confirmation Order;

g) in accordance with this Agreement, pursue, prosecute, resolve, compromise, settle, or otherwise liquidate any Preserved Actions;

h) obtain litigation funding;

i) seek a determination of tax liability under Bankruptcy Code section 505; file, if necessary, any and all tax and information returns required with respect to the GUC Trust; make tax elections for and on behalf of the GUC Trust; and pay taxes, if any, payable for and on behalf of the GUC Trust;

j) [reserved];

k) pay all lawful, expenses, debts, charges, taxes and liabilities of the GUC Trust;

l) withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the GUC Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws or other laws of the United States or of any state or political subdivision thereof, including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and return to the GUC Trustee the appropriate IRS Form W-8 or IRS Form W-9 and setting a reasonable deadline for each Holder's return of such IRS Form W-8 or IRS Form W-9, as applicable;

m) take any action reasonably necessary to access any insurance policy or coverage made available to the GUC Trust pursuant to the terms of the Plan;

n) enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order or this Agreement and perform all obligations thereunder;

o) purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

p) take all other actions consistent with the provisions of the Plan which the GUC Trustee deems reasonably necessary or desirable to administer the GUC Trust;

q) implement, enforce or discharge all of the terms, conditions and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order and this Agreement;

r) calculate and implement all distributions for the Beneficiaries;

s) administer and pay taxes, including, among other things, (i) filing tax returns, and (ii) representing the interest and account of the GUC Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit, and distributing information statements as required for federal income tax and other applicable tax purposes;

t) retain and pay at normal and customary rates or on a contingency fee basis, on a monthly or other periodic basis, without prior Bankruptcy Court approval, professionals in connection with the GUC Trustee's performance of its duties under the Plan and this Agreement; and

**Compensation of GUC Trustee and its Professionals.** The GUC Trustee shall be entitled to receive reasonable compensation and reimbursement of expenses in connection with the performance of its duties, plus the reimbursement of reasonable out-of-pocket expenses. Professionals retained by the GUC Trustee shall be entitled to receive reasonable compensation and reimbursement of expenses from GUC Trust Assets, provided that, in the event that GUC Trust Assets are insufficient to compensate the GUC Trustee for the performance of its duties, the GUC Trustee may resign in accordance with the terms of this Agreement.

On or before the last day of each month following the month for which compensation or reimbursement is sought, each of the GUC Trustee's professionals seeking compensation shall serve a monthly statement on the GUC Trustee (unless any such professional and the GUC Trustee agree to different process). The GUC Trustee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving an objection on the professional setting forth the precise nature of the objection and the amount at issue. At the expiration of the fifteen (15) day period, the GUC Trustee shall pay from GUC Trust Assets 100% of the amounts requested, except for the portion of such fees and disbursements to which any objection has been made.

The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with the Bankruptcy Court. If the GUC Trustee or any professional fails to submit a monthly statement, it shall be ineligible to receive payment of fees and expenses therefor as provided in this Agreement until the monthly statement is submitted.

**General Duties, Obligations, Rights and Benefits of the GUC Trustee**. The GUC Trustee shall have all duties, obligations, rights and benefits assumed by, assigned to, or vested in the GUC Trust under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan. Such duties, obligations, rights and benefits include, without limitation, (a) calculating and implementing all distributions for the Beneficiaries; (b) administering and paying taxes, including, among other things, (i) filing of tax returns, and (ii) representing the interest and account of the GUC Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) liquidating the GUC Trust Assets, including through the commencement of Causes of Action at the discretion of the GUC Trustee, and providing payments to the Beneficiaries in accordance with the provisions of the Plan; (d) obtaining litigation funding; (e) retaining and paying at normal and customary rates on a monthly basis or on a contingency fee basis professionals in connection with the GUC Trustee's performance of its duties under the Plan and this Agreement; (f) distributing information statements as required for federal income tax and other applicable tax purposes; (g) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; and (h) such other responsibilities as may be vested in the GUC Trustee pursuant to the Plan, this Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan. In addition, after the Plan Confirmation Date, the GUC Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the fifteenth (15th) day of January, April, July, and October as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

**Replacement of the GUC Trustee.** The GUC Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor GUC Trustee. In the event of the resignation or removal of the GUC Trustee, the Bankruptcy Court may designate a person to serve as successor GUC Trustee based upon submissions from interested parties (including counsel for the former GUC Trustee) or, in the event a successor GUC Trustee is not appointed, upon notice and a hearing, enter an order approving the GUC Trustee's resignation. Upon its appointment, the successor GUC Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor, and all responsibilities of the predecessor GUC Trustee relating to the GUC Trust shall be terminated. In the event of the removal or resignation of any GUC Trustee, such GUC Trustee (or its estate or representatives) shall be entitled to seek compensation for all reasonable fees and expenses accrued through the effective date of termination, in accordance with the procedures set forth in this Agreement. The provisions of Article IV shall survive the resignation or removal of any GUC Trustee.

**GUC Trust Continuance.** The death, dissolution, resignation or removal of the GUC Trustee shall not terminate the GUC Trust or revoke any existing agency created by the GUC Trustee pursuant to this Agreement or invalidate any action theretofore taken by the GUC Trustee, and the successor GUC Trustee agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor GUC Trustee and all its successors or assigns.

# ARTICLE III
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

**The GUC Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action.** The GUC Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, abandon, hypothecate, encumber, or convey any or all of the GUC Trust Assets including, without limitation, the Preserved Actions, Avoidance Actions, Causes of Action, and Rights of Action, in each case as the sole representative of the Estate with respect thereto pursuant to Bankruptcy Code section 1123(b)(3).

**Settlement of Causes of Action.** The GUC Trustee will have the sole power to resolve, compromise, and settle any of the Preserved Actions, Avoidance Actions, Causes of Action, and Rights of Action on behalf of the GUC Trust without Bankruptcy Court approval.

# ARTICLE IV
## LIABILITY OF GUC TRUSTEE;
## INDEMNIFICATION RESERVE AND INSURANCE

**Standard of Care; Exculpation.** Neither the GUC Trustee nor any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the GUC Trustee shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the GUC Trust to any Holder of a Claim against, or Interest in, the Debtor, or to any Beneficiary of the GUC Trust, or any other person, for the acts or omissions of the GUC Trustee; provided, however, that the foregoing limitation shall not apply to any losses, claims, damages, liabilities or expenses suffered or incurred by any Holder of an Allowed Claim that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of the GUC Trustee, or any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the GUC Trustee, in which case the party committing such fraud, gross negligence or willful misconduct shall not be protected by this paragraph with respect to such acts.

**Indemnification.** Except as otherwise set forth in the Plan or Confirmation Order, the GUC Trustee, and any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the GUC Trustee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless and indemnified from time to time by the GUC Trust against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the GUC Trustee's acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan or the Confirmation Order; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of the GUC Trustee, or any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the GUC Trustee,

7

in which case the party committing such fraud, gross negligence or willful misconduct shall not be protected by this paragraph with respect to such acts. Satisfaction of any obligation of the GUC Trust arising pursuant to the terms of this section shall be payable only from the GUC Trust Assets, may, at the discretion of the GUC Trustee, be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a distribution of the GUC Trust Assets.

The GUC Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with this Agreement or the duties, acts or omissions of the GUC Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the GUC Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Agreement.

**Insurance.** The GUC Trust may purchase, using GUC Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the GUC Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Agreement.

**No Bond.** Notwithstanding any state law to the contrary, the GUC Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction, unless the GUC Trustee decides in its reasonable judgment to obtain such bond or other security.

## ARTICLE V
## PROVISIONS CONCERNING ADMINISTRATION
## OF THE GUC TRUST

**Register of Beneficiaries.** The GUC Trust shall cause to be maintained at all times a register of the Beneficiaries' names, addresses of record, amounts of Allowed Claims and Allowed Preferred Equity Interests, and ratable interests in the GUC Trust (the "Register"). The GUC Trust shall cause the Register to be kept at its office or at such other place or places as may be designated by the GUC Trustee from time to time.

**Books and Records.** The GUC Trust shall maintain in respect of the GUC Trust and the Beneficiaries books and records relating to the GUC Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the GUC Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Plan or the Confirmation Order, or as may be required by applicable law, nothing in this Agreement is intended to require the GUC Trust to file any accounting or seek approval of any court with respect to the

8

administration of the GUC Trust, or as a condition for making any payment or distribution out of the GUC Trust Assets.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

**Trust Beneficial Interests.** Each Holder of an Allowed Claim in Class 10 shall be entitled to receive a beneficial interest in the GUC Trust in accordance with the treatment of such Claim and Interest under the Plan and shall be entitled to distributions as set forth in the Plan.

**Interest Beneficial Only.** The ownership of a beneficial interest in the GUC Trust shall not entitle any Beneficiary to any title in or to the GUC Trust Assets or to any right to call for a partition or division of the GUC Trust Assets or to require an accounting.

**Absolute Owners.** The GUC Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purpose of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

**Change of Address.** A Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (copy served on the GUC Trustee) identifying such alternative distribution address. Absent such notice, the GUC Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the GUC Trustee.

**Standing.** Except as expressly provided in this Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the GUC Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the GUC Trust Assets.

## ARTICLE VII
## DISTRIBUTIONS

**Distributions to Beneficiaries from GUC Trust Assets**. All payments to be made by the GUC Trust to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Agreement and from the GUC Trust Assets (or from the income and proceeds realized from the GUC Trust Assets), if any, and only to the extent that the GUC Trust has sufficient GUC Trust Assets (or income and proceeds realized from the GUC Trust Assets) to make such payments in accordance with, and to the extent provided for, in the Plan, the Confirmation Order and this Agreement.

**No Distribution Pending Allowance.** No payment or distribution shall be made with respect to any Disputed Claim or Interest unless and until such Disputed Claim or Preferred Equity Interest becomes an Allowed Claim or Allowed Preferred Equity Interest, except for distributions into the Administrative and Priority Claims Reserve (to the extent the Disputed Claim is also an

9

Administrative or Priority Claim) in accordance with the Plan, Confirmation Order, and this Agreement.

**Distributions after Allowance.** Distributions to each Holder of a Disputed Claim or Interest, to the extent that such Claim or Interest ultimately becomes an Allowed Claim or Allowed Preferred Equity Interest, shall be made in accordance with the provisions of the Plan.

**Non-Cash Property.** Any non-Cash property of the GUC Trust may be sold, transferred or abandoned by the GUC Trustee. If, in the GUC Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the GUC Trustee believes, in good faith, such property has no value to the GUC Trust, the GUC Trustee shall have the right, subject to obtaining the approval of the Bankruptcy Court, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the GUC Trustee. Except in the case of fraud, willful misconduct or gross negligence, no party in interest shall have a cause of action against the GUC Trustee or any director, officer, employee, consultant or professional of the GUC Trustee, arising from or related to the disposition of non-Cash property in accordance with this section.

**Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**ARTICLE VIII**
**TAXES**

**Income Tax Status.** Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, it is intended that the GUC Trust shall be treated as a liquidation trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the GUC Trust. Any items of income, deduction, credit and loss of the GUC Trust shall be allocated for federal income tax purposes to the Beneficiaries, on a *pro rata* basis.

**Tax Returns.** The GUC Trustee, on behalf of the Debtor and the Estate, shall cause tax returns and all other appropriate or necessary documents related to municipal, state, federal, or other tax law to be prepared and filed timely. The GUC Trustee shall file any such tax returns as are necessary on behalf of the GUC Trust as a grantor trust.

**Valuations.** As soon as possible after the Effective Date, the GUC Trust shall make a good faith valuation of the GUC Trust Assets, and such valuation shall be used consistently by all parties (including, without limitation, the GUC Trust and the Beneficiaries) for all federal income tax purposes. The GUC Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the GUC Trust that are required by any governmental unit.

**Expedited Determination of Taxes.** The GUC Trust may request an expedited determination of taxes of the Debtor and of the GUC Trust under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Debtor and the GUC Trust for all taxable periods through the termination of the GUC Trust.

10

## ARTICLE IX
## TERMINATION OF GUC TRUST

**Termination of GUC Trust.** The GUC Trustee shall be discharged and the GUC Trust shall be terminated on the earlier of (a) the date on which (i) all Disputed Claims and Interests against the GUC Trust have been resolved, (ii) all of the GUC Trust Assets have been liquidated, (iii) all duties and obligations of the GUC Trustee hereunder have been fulfilled, (iv) all distributions required to be made by the GUC Trustee under the Plan and this Agreement have been made, and (v) the Chapter 11 Case has been closed; and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that the term of the GUC Trust may be further extended upon Court approval obtained prior to the conclusion of the previous term.

**Events Upon End of Term Termination.** At the conclusion of the term of the GUC Trust, the GUC Trustee shall distribute the remaining GUC Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order and this Agreement or as provided by further order of the Bankruptcy Court.

**Winding Up and Discharge of the GUC Trustee.** For the purposes of winding up the affairs of the GUC Trust at the conclusion of its term, the GUC Trustee shall continue to act as GUC Trustee until its duties under this Agreement have been fully discharged or its role as GUC Trustee is otherwise terminated under this Agreement and the Plan. Upon a motion by the GUC Trustee, the Bankruptcy Court may enter an order relieving the GUC Trustee, its agents and employees of any further duties, discharging the GUC Trustee and releasing its bond, if any.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**Recitals.** The recitals are incorporated into and made terms of this Agreement.

**Amendments.** The GUC Trustee may, with the approval of the Bankruptcy Court, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order, provided, however, the GUC Trustee may modify, supplement, or amend this Agreement without the approval of the Bankruptcy Court to clarify any ambiguity or inconsistency, or render this Agreement in compliance with its stated tax purposes, if such modification, supplement, or amendment does not materially and adversely affect the interests, rights, treatment or distributions of the Beneficiaries.

**Waiver.** No failure to exercise, or delay in exercising, any right, power or privilege hereunder by the GUC Trust or the GUC Trustee shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

11

**Irrevocability.** This Agreement and the GUC Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Agreement.

**Tax Identification Numbers.** The GUC Trustee may require any Beneficiary to furnish to the GUC Trustee its social security number or employer or taxpayer identification number as assigned by the IRS, and the GUC Trustee may condition any distribution to any Beneficiary upon the receipt of such identification number.

**Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. If any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**Division of GUC Trust.** Under no circumstances shall the GUC Trustee have the right or power to divide the GUC Trust unless authorized to do so by the Bankruptcy Court.

**Applicable Law.** The GUC Trust is made in the State of Tennessee. The GUC Trust, this Agreement, and the rights and obligations of the GUC Trustee are to be governed by and construed and administered according to the laws of the State of Tennessee; provided, however, that, except as expressly provided in this Agreement, there shall not be applicable to the GUC Trust, the GUC Trustee, or this Agreement any provisions of the laws (statutory or common) of the State of Tennessee pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust; (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (iv) fees or other sums payable to trustees, officers, agents or employees of a trust; (v) the allocation of receipts and expenditures to income or principal; (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of GUC Trust Assets; or (vii) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the GUC Trustee set forth or referenced in this Agreement.

**Retention of Jurisdiction.** Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the GUC Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Agreement, or any entity's rights or obligations in connection herewith, including, without limitation, any action against the GUC Trustee or any professional retained by the GUC Trustee, in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.

12

**Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the application of such provision to persons or circumstance other than those as to which it is held invalid or unenforceable and the remainder of this Agreement shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**Notices.** All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered: (a) in person; (b) by regular first-class mail; or (c) by overnight mail, registered mail, or certified mail, to the following addresses:

If to the GUC Trustee:

with a copy to:

If to a Beneficiary:

> To the name and distribution address set forth in the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**Integration.** This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated

13

hereunder. To the extent there is an inconsistency between the Plan or the Confirmation Order and this Agreement, the Plan or the Confirmation Order, as applicable, shall control.

**Interpretation.** The enumeration and section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

*[counterpart signature page follows]*

14

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**SALEM POINTE CAPITAL, LLC**


By:_____
    Name:
    Title:


**GUC TRUSTEE**


By:_____
    Name:
    Title:

100949987.v2

**Schedule 7.01**
[BEP Sale Property]

| | | Parcel ID | Lot | Acres | Location |
|---|---|---|---|---|---|
| Unplatted excess Land | Loudon County | 078 052.03 000 | LAND | 3.34 | RB Pkwy Near 13th hole |
| | Monroe County | 019 06500 000 | LAND | 11.2 | RB Pkwy Near Gate House |
| | Monroe County | D 019L 00100 000 | LAND | 1.12 | Turnstone Lane |
| | Monroe County | D 019L 02500 000 | LAND | 1.43 | Turnstone Lane |
| | Monroe County | D 019L 03600 000 | LAND | 0.85 | Turnstone Lane |
| Pod Lots | Monroe County | C 019L 00500 000 | 1467R-1 | 0.36 | Shearwater Dr |
| | Monroe County | C 019L 00400 000 | 1467R-2 | 0.24 | Shearwater Dr |
| | Monroe County | C 019L 00301 000 | 1468R | 0.21 | Shearwater Dr |
| | Monroe County | C 019L 00300 000 | 1469R | 0.18 | Shearwater Dr |
| | Monroe County | C 019L 00201 000 | 1470R-1 | 0.22 | Shearwater Dr |
| | Monroe County | C 019L 00200 000 | 1470R-2 | 0.19 | Shearwater Dr |
| | Monroe County | C 019L 00101 000 | 1471R-1 | 0.20 | Shearwater Dr |
| | Monroe County | C 019L 00100 000 | 1472R | 0.19 | Shearwater Dr |
| Scattered Lots | Loudon County | 078I 005.00 000 | 583R | 0.16 | 949 Rarity Bay Pkwy |
| | Loudon County | 078I 006.00 000 | 584R | 0.15 | 969 Rarity Bay Pkwy |
| | Loudon County | 078H 003.00 000 | 540 | 0.45 | 125 Mallard Dr |
| | Loudon County | 078G 006.00 000 | 1006 | 0.25 | 155 Hummingbird Dr |
| | Loudon County | 078G 008.00 000 | 1008 | 0.34 | 175 Hummingbird Dr |
| | Loudon County | 078G 020.00 000 | 1020 | 0.25 | 295 Hummingbird Dr |
| | Monroe County | 019D 01100 000 | 131 | 0.41 | 747 Wood Duck Dr |
| | Monroe County | 019D 01200 000 | 132 | 0.36 | 751 Wood Duck Dr |
| | Monroe County | 019D 01300 000 | 133 | 0.36 | 755 Wood Duck Dr |
| | Monroe County | 019D 01400 000 | 134 | 0.48 | 761 Wood Duck Dr |
| | Monroe County | 019E 06000 000 | 60 | 0.23 | 258 Osprey Cir |
| | Monroe County | 019E 05700 000 | 57 | 0.25 | 246 Osprey Cir |
| | Monroe County | 019L B 00500 000 | 1401 | 0.27 | 125 Turnstone Lane |
| | Monroe County | 019L B 00600 000 | 1402 | 0.33 | 129 Turnstone Lane |
| | Monroe County | 019L B 00700 000 | 1403 | 0.45 | 133 Turnstone Lane |
| | Monroe County | 019L B 00800 000 | 1404 | 0.28 | 135 Turnstone Lane |
| Phase 17 lots | Monroe County | 019.065.04 | LAND | 8.7 | Phase 17 |
| | Monroe County | D 019L 00200 000 | 1700 | 0.11 | Turnstone Lane |
| | Monroe County | D 019L 00300 000 | 1701 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 00400 000 | 1702 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 00500 000 | 1703 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 00600 000 | 1704 | 0.10 | Turnstone Lane |
| | Monroe County | D 019L 00700 000 | 1705 | 0.12 | Turnstone Lane |
| | Monroe County | D 019L 00800 000 | 1706 | 0.11 | Turnstone Lane |
| | Monroe County | D 019L 00900 000 | 1707 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 01000 000 | 1708 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 01100 000 | 1709 | 0.08 | Turnstone Lane |
| | Monroe County | D 019L 01200 000 | 1710 | 0.08 | Turnstone Lane |
| | Monroe County | D 019L 01400 000 | 1711 | 0.10 | Turnstone Lane |
| | Monroe County | D 019L 01600 000 | 1712 | 0.10 | Turnstone Lane |
| | Monroe County | D 019L 01800 000 | 1713 | 0.09 | Turnstone Lane |
| | Monroe County | D 019L 02000 000 | 1714 | 0.09 | Turnstone Lane |

101270888.v1

| Monroe County | D 019L 02200 000 | 1715 | 0.09 | Turnstone Lane |
|---|---|---|---|---|
| Monroe County | D 019L 02400 000 | 1716 | 0.18 | Turnstone Lane |
| Monroe County | D 019L 02600 000 | 1717 | 0.11 | Turnstone Lane |
| Monroe County | D 019L 02700 000 | 1718 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 02800 000 | 1719 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 02900 000 | 1720 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 03000 000 | 1721 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 03100 000 | 1722 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 03200 000 | 1723 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 03300 000 | 1724 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 03400 000 | 1725 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 03500 000 | 1726 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 03700 000 | 1727 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 03800 000 | 1728 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 03900 000 | 1729 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 04000 000 | 1730 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 04100 000 | 1731 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 04200 000 | 1732 | 0.09 | Turnstone Lane |
| Monroe County | D 019L 04300 000 | 1733 | 0.09 | Turnstone Lane |
| Monroe County | D 019L 04400 000 | 1734 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 04500 000 | 1735 | 0.07 | Turnstone Lane |
| Monroe County | D 019L 04600 000 | 1736 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 04700 000 | 1737 | 0.08 | Turnstone Lane |
| Monroe County | D 019L 04800 000 | 1738 | 0.14 | Turnstone Lane |
| Monroe County | D 019L 04900 000 | 1739 | 0.14 | Turnstone Lane |
| Monroe County | D 019L 05000 000 | 1740 | 0.09 | Turnstone Lane |
| Monroe County | D 019L 05100 000 | 1741 | 0.09 | Turnstone Lane |
| Monroe County | D 019L 05200 000 | 1742 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 05300 000 | 1743 | 0.12 | Turnstone Lane |
| Monroe County | D 019L 05400 000 | 1744 | 0.28 | Turnstone Lane |
| Monroe County | D 019L 02300 000 | 1745 | 0.24 | Turnstone Lane |
| Monroe County | D 019L 02100 000 | 1746 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 01900 000 | 1747 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 01700 000 | 1748 | 0.10 | Turnstone Lane |
| Monroe County | D 019L 01500 000 | 1749 | 0.11 | Turnstone Lane |
| Monroe County | D 019L 01300 000 | 1750 | 0.14 | Turnstone Lane |
| | | | | |

101270888.v1

**Schedule 7.01(b)**
[RBCAI Easement Property]

|  | County | Parcel ID | Lot | Acres | Location |
|---|---|---|---|---|---|
| Lots Subject to RBCAI Easement | | | | | |
|  | Monroe County | 019 06500 000 | LAND | 11.2 | RB Pkwy Near Gate House |
|  | Monroe County | 019 06505 001 | BUILDING | 0 | 288 Keeble Rd Maintenance |

101270888.v1

**Schedule 14.02(a)**
[Property to be conveyed to HOA in Section 14.02(a)]

| | County | Parcel ID | Lot | Acres | Location |
|---|---|---|---|---|---|
| Parcels from BEP to RBCAI Subject to Use Agreement | | | | | |
| | Loudon County | 078 052.03 000 | LAND | 3.34 | RB Pkwy Near 13th hole |
| | Monroe County | D 019L 00100 000 | LAND | 1.12 | Turnstone Lane |
| | Monroe County | 019 06500 000 | LAND | 11.2 | RB Pkwy Near Gate House. |
| | | | | | |
| | | | | | |
| | | | | | |

101270888.v1

**Schedule 14.02(b)**
[Property addressed in Section 14.02(b)]

100941414.v8

|  | County | Parcel ID | Lot | Acres | Location |
|---|---|---|---|---|---|
| Lots Subject to RBCAI Lien | Monroe County | 019L B 00500 000 | 1401 | 0.27 | 125 Turnstone Lane |
|  | Monroe County | 019L B 00600 000 | 1402 | 0.33 | 129 Turnstone Lane |
|  | Monroe County | 019L B 00700 000 | 1403 | 0.45 | 133 Turnstone Lane |
|  | Monroe County | 019L B 00800 000 | 1404 | 0.28 | 135 Turnstone Lane |

101270888.v1