**All objections to the motion having been withdrawn or adjudicated at the June 25, 2026 hearing, the motion is granted. The objections of Rarity Bay Partners relating to its assertion under 11 U.S.C. § 363(k) and the potential stalking horse bid were overruled for reasons stated on the record at the June 25, 2026 hearing. References to the approved notices attached to the Motion to Sell are to the attachments to Doc. 1005 with revisions discussed at the June 25, 2026 hearing.**



**SO ORDERED.**
**SIGNED this 26th day of June, 2026**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Suzanne H. Bauknight
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | |
|---|---|
| **In re:** | ) |
| | ) **Case No. 24-31702-SHB** |
| **SALEM POINTE CAPITAL, LLC,** | ) |
| | ) **Chapter 11** |
| **Debtor.** | ) |
| | ) |

### ORDER: (I) APPROVING SALE PROCEDURES; (II) SCHEDULING A SALE APPROVAL HEARING; (III) APPROVING THE FORM OF NOTICES OF THE MOTION TO SELL AND SALE APPROVAL HEARING AND OBJECTTION DEADLINE; (IV) APPROVING PROCEDURES AND NOTICE TO ESTABLISH CERTAIN CURE AMOUNTS FOR EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED</u>

This matter came before the Court on the Second Motion by Gary M. Murphey, Chapter 11 Trustee (the "<u>Trustee</u>") for Salem Pointe Capital, LLC ("<u>SPC</u>" or the "<u>Debtor</u>") Pursuant to 11 U.S.C. §§ 363(B), (F), (K), And (M), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to: (A) Approve Sale Procedures, (B) Schedule a Sale Approval Hearing and Objection Deadline, (C) Approve the Form of Notices of the Motion to Sell, the Sale Approval Hearing, and Objection Deadline, (D) Approve Procedures to Establish Certain Cure Amounts for Executory Contracts And Unexpired Leases that May be Assumed and a Notice Related Thereto; (E) Approve the Sale

of Certain Assets Free and Clear of Claims, Liens, Encumbrances, and Other Interests; and, (F)

Approve the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

(Dkt. 938, the "Motion to Sell"),[1] and the Trustee first seeking an order concerning A-D above;

and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the court

having considered the procedures motion, and it appearing that the relief requested in the

procedures motion is in the best interests of the debtor's bankruptcy estate, its creditors, and other

parties in interest; and objections, if any, having been withdrawn, resolved, or overruled by the

court, and after due deliberation and sufficient cause appearing therefor;

## THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.      With regard to the relief granted herein, notice of the Motion to Sell was adequate

and sufficient under the circumstances of this Chapter 11 Case, and such notice complied with all

applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

the Local Rules of Court for the United States Bankruptcy Court for the Eastern District of

Tennessee (the "Local Rules").

B.      The sale procedures, set forth in the Motion to Sell and below (the "Sale

Procedures") are reasonable and appropriate under the circumstances of the Debtor's Chapter 11

Case.

C.      The Notice of Auction and Sale Hearing, substantially in the form attached to the

Motion to sell as Exhibit E (the "Creditor Notice"), and the Notice attached to the Motion to Sell

---

[1]Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the
Motion to Sell.

1

as Exhibit F (the "Club Member Notice") and the Assumption and Assignment Procedures and

Notice, attached to the Motion to Sell as Exhibit G (the "Assumption and Assignment

Procedures"), and as revised to the extent each such exhibit was discussed and described as being

revised at the hearings on June 18, 2026 and June 25, 2026, are each calculated to provide adequate

notice concerning the proposed sale of the Debtor's Assets, and are intended to provide due and

adequate notice of the relief sought in the Sale Motion.

D.      The entry of this Order is in the best interests of the Debtor, its estates, its creditors,

and other parties in interest.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, THE COURT HEREBY ORDERS THAT**:

1.      The Motion to Sell shall be, and hereby is, GRANTED to the extent set forth herein.

2.      The Sale Procedures are approved in their entirety and are set forth as follows:

a.   The deadline to submit bids is **July 23, 2026 at 12:00 noon** (Eastern Time) the "Bid Deadline").

b.   The minimum bid is **$8,900,000.00**. For certain Excepted Parties (as defined in the Retention Order) the minimum bid is **$8,655,000.00.**

c.   The Trustee may, in an exercise of his reasonable business judgment select a Qualified Bidder to act as a stalking horse bidder in connection with the 363 Transaction (the "Stalking Horse Bidder," and such Qualified Bidder's bid, a "Stalking Horse Bid") and enter into a purchase agreement with such Stalking Horse Bidder (such agreement, the "Stalking Horse APA").

(i)      In connection with such Stalking Horse APA and in recognition of the Stalking Horse Bidder's expenditure of time, energy, and resources, the Trustee may determine to provide a breakup fee (the "Breakup Fee"); *provided* that with respect to any Stalking Horse APA Agreement, the Breakup Fee shall in no event exceed three percent (3%) of the Purchase Price; and *provided further* that if the Stalking Horse Bidder is an Excepted Party (as defined in the Retention Order), no such Breakup Fee will be provided.

(ii)      If a Stalking Horse Bidder is selected, then no later than two (2) Business Days after selecting a Stalking Horse Bidder, but in no event later than **July 9, 2026**, the Trustee shall file with the Court and serve a notice that:

(A)    identifies the Stalking Horse Bidder and a summary of the material terms of the applicable Stalking Horse Bid, including the Purchase Price and the portion of the Assets to which such Stalking Horse Bid relates;

(B)    attaches a copy of the corresponding Stalking Horse APA;

(C)    directs CBRE to place the Notice in the Data Room and notify all Potential Bidders of the Stalking Horse Bid and the Stalking Horse APA; and

(D)    sets a Minimum Overbid Amount to start the Auction at the Purchase Price of the Stalking Horse Bid, plus 3% (to cover the Breakup Fee).

(iii)    Parties-in-interest have an opportunity to object to the Stalking Horse Bidder or the Stalking Horse Bid as part of their right to object to the approval of the Sale in accordance with procedures below.

d.   Any person desiring to conduct due diligence that may lead to a bid for the Assets (a "Potential Bidder") will be required to execute and deliver to the Trustee a form confidentiality agreement to be provided by CBRE. CBRE shall maintain a "data room" that will include such due diligence ("Data Room"). Unless the Court provides otherwise, in addition to the executed confidentiality agreement, access to the Data Room may require a Potential Bidder to provide proof of available funds or firm commitment of financing sufficient to consummate the purchase of the Assets.

e.   A bid is a Qualified Bid if it:

i.    Is in a form substantially similar to the form APA in the Data Room;

ii.    States that: there are no conditions precedent to the Potential Bidder entering into the APA; there are no due diligence contingencies to the bid; there are no financing contingencies; all necessary internal, shareholder, member, and/or board approvals have been obtained; it is binding and irrevocable until Court Approval of the Successful Bid;

iii.    Provides information about the Potential Bidder's ability and qualifications to continue to operate the Club;

iv.    Discloses the entity that will be bidding, and includes the names and contacts information of the Potential Bidder who can answer questions about the bid;

v.    Includes a good faith deposit in the amount of $500,000 ("Earnest Money Deposit"), which will: be credited toward a Successful Bid (as defined below); or, if not a Successful Bid or Back-up Bid, returned to the Qualified Bidder as provided below.

vi.    Provides proof of funds, consisting either of proof of cash or other immediately available liquid funds or firm commitment financing in an

3

amount sufficient to cover the amount of the Qualified Bid plus additional amounts that might be bid at the Auction.

vii.      Designates—at least preliminarily—which executory contracts and unexpired leases are to be assumed and assigned, and include sufficient financial information to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned.

f.   If more than one (1) Qualified Bid is received by CBRE, an **Auction** will be held on **August 6, 2026, at 9:00 a.m.** (Eastern Time) at the offices of Bass, Berry & Sims PLC, 1700 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902, or at any such other location as the Trustee may hereafter designate.

g.   Unless otherwise agreed to by the Trustee, only the Trustee and Qualified Bidders, and each of the foregoing's legal and financial professionals, are eligible to attend or participate at the Auction.  Rarity Bay Partners ("RBP") and its counsel and/or financial advisor(s) are also permitted to attend even if RBP is not otherwise a Qualified Bidder.

h.   The Trustee will permit parties-in-interest in this Chapter 11 Case to observe the Auction via a virtual platform, such as Zoom or Teams, and the Trustee will provide information about accessing that virtual platform at least forty-eight (48) hours in advance of the Auction, by filing a Notice of the same in the Chapter 11 Case via the ECF filing system.  The Trustee reserves the right to also provide such notice by mail.

i.   The Auction shall be in person, but the Trustee reserves the sole and exclusive right to designate a virtual platform, such as Zoom or Teams, as an alternative to in-person attendance. No later than forty-eight (48) hours prior to the Auction Date, the Trustee shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders.  At the Auction, only Qualified Bidders will be permitted to increase their bids by the Minimum Bid Increment, and to make any incremental bids thereafter. The Trustee may conduct the Auction in the manner he reasonably determines, in his business judgment, will achieve the maximum value for the Assets.

j.   If a Potential Bidder submits a bid that is not a Qualified Bid, the Trustee reserves the right to contact such Potential Bidder to correct or improve the bid—if possible—to make it a Qualified Bid.

k.   The Trustee will advise each Potential Bidder whether it is a Qualified Bidder at least 48 hours before the Auction.

l.   The Minimum Bid Increment at the Auction will be **$50,000**, after taking into account the Minimum Overbid Amount (if there is a Stalking Horse Bid).

m.   The Auction shall continue until there is one offer or a combination of offers that the Trustee determines, and subject to Bankruptcy Court approval, is the highest and best offer(s) from among the Qualified Bidders submitted at the Auction (the "Successful Bid(s)"). The Qualified Bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder" and shall have such rights and responsibilities of a purchaser, as set

forth in the APA. Immediately prior to the conclusion of the Auction, the Trustee shall notify all Qualified Bidders at the Auction of the name or names of the Successful Bidder(s) and the amount and other material terms of the Successful Bid(s).

n.   The Trustee shall also select an offer to serve as a back-up bid (the "Back-Up Bid" and, such Qualified Bidder submitting the Back-Up Bid, the "Back-Up Bidder"), which Back-Up Bid shall remain open and irrevocable until the Closing of the Sale with the Successful Bidder(s). In the event that the Successful Bidder fails to close the transaction contemplated by the Successful Bid, for any reason, the Trustee may elect to regard the Back-Up Bid as the highest and best bid for the Assets, and the Trustee will be authorized to consummate the transaction contemplated by the Back-Up Bid without further order of the Bankruptcy Court.

o.   The designation of the Successful Bidder and the Back-up Bidder at the Auction will close the Auction. The Trustee shall file a Notice of Auction Results within two (2) business days after the close of the Auction, identifying the Successful Bidder and the Back-Up Bidder.

p.   All Qualified Bidders shall be deemed to have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to due diligence, the submission of its bid, the Sale Procedures, or the Auction, and the Sale and Sale Approval Hearing.

q.   Notwithstanding anything to the contrary in these Initial Sale Procedures, all direct communications between and amongst Qualified Bidders must involve the Trustee and the Trustee's advisors.

r.   Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the Initial Sale Procedures or the sale and bidding process (including that it has no agreement with any other Bidder or Qualified Bidder to control the price) and (b) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Sale Transaction if selected as the Successful Bidder or the Back-Up Bidder.

s.   No later than the earlier of (a) three (3) business days following the entry of a Sale Approval Order, or (b) ten (10) business days following the end of the Auction, unless otherwise provided in an escrow agreement or a Qualified Bid, the Trustee shall return by check or wire the full amount of each Earnest Money Deposit submitted by a party that is not a Successful Bidder(s) or a Back-up Bidder(s). A defaulting Successful Bidder's Earnest Money Deposit shall be forfeited to the Trustee, subject to the terms set forth in the Successful Bidder's purchase agreement.

3.      **Any objection to the relief requested in the Motion to Sell with regard to the Sale Approval Hearing must be filed so as to be received by the Trustee's counsel and the U.S. Trustee no later than August 18, 2026 and such objections shall be served in accordance**

**with the Sale Notices.  This includes any objection to: (i) events at the Auction, including the Successful Bidder and/or the Successful Bidder's APA, including any Break-up Fee; or (ii) the Sale as opposed to confirmation of a proposed Plan**.

4.      The Trustee is authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.  However, nothing in the Sale Procedures requires the Trustee to take any action, or to refrain from taking any action, with respect to the Sale Procedures, to the extent that the Trustee determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or fiduciary duties under applicable law.

5.      The Trustee shall have sole and absolute discretion, subject to the Court's review, consistent with his fiduciary duties and the reasonable exercise of his business judgment, to interpret the Sale Procedures, including determining compliance, waiving immaterial defects, and requesting supplemental information, subject to the inherent authority of the Court to interpret and enforce this Order.

6.      A status conference shall be conducted on **August 20, 2026, at 10:00 a.m.** (Eastern Time), at the United States Bankruptcy Court for the Eastern District of Tennessee, Howard H. Baker Jr. United States Courthouse, Courtroom 1-C, 800 Market Street, Knoxville, TN 37902, and may be adjourned from time to time.

7.      The Sale Approval Hearing shall be conducted on **September 3, 2026, at 9:00 a.m.** (Eastern Time), at the United States Bankruptcy Court for the Eastern District of Tennessee, Howard H. Baker Jr. United States Courthouse, Courtroom 1-C, 800 Market Street, Knoxville, TN 37902, and may be adjourned from time to time.

8.      A copy of the proposed order approving the sale (the "Sale Approval Order") is attached as Exhibit D to the Motion to Sell.

9.      To the extent the Trustee provided notice to parties via the Court's electronic servicing system, no further notice is required to those parties.  Within five (5) business days following entry of this Order, the Trustee shall serve the one or more of the Sale Notices (as applicable) via U.S. Mail, postage prepaid on the following parties (to the extent any such party is not represented by counsel in this Chapter 11 Case): (a) all creditors of the Debtor; (b) lessors of real and personal property; (c) known counterparties to contracts that may be assumed; (d) all Club Members based on the last known addresses in the Debtor's records; (e) all parties listed on the Debtor's mailing matrix.  Service of the Sale Notices in accordance with the above shall constitute valid and sufficient service of the Motion to Sell in all respects, regardless of any prior service of the Motion to Sell.

10.      The Assumption and Assignment Procedures are approved in their entirety.  Within five (5) business days following entry of this Order, the Trustee shall serve by first class mail the Notice of Assumption and Assignment Procedures on all parties to executory contracts and unexpired leases that may be assumed and assigned, as provided above.

11.      Compliance with the foregoing notice provisions shall constitute sufficient notice of the Trustee's proposed sale of the Debtor's Purchased Assets free and clear of all liens, claims, interests, and encumbrances, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Trustee.

12.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), and 7062 or otherwise, the terms and conditions of this Order shall be effective and enforceable

on or after the seventh calendar day after its entry, after which no stay of execution shall apply to this Order.

13.     The Trustee is directed to consider any plan of reorganization that is proposed on or before the Bid Deadline.

14.     In the event of any inconsistency between the Motion to Sell and this Order, this Order shall govern.   The Trustee shall have sole and absolute discretion, consistent with his fiduciary duties, to interpret the Sale Procedures, including determining compliance, waiving immaterial defects, and requesting supplemental information.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

# # #

**APPROVED FOR ENTRY:**

 /s/ Paul G. Jennings
Paul G. Jennings, BPR No. 014367
Gene L. Humphreys, BPR No. 021807
Bass, Berry & Sims PLC
21 Platform Way South, Suite 3500
Nashville, TN  37203
Tel:  (615) 742-6200
Fax:  (615) 742-6293
pjennings@bassberry.com
ghumphreys@bassberry.com
*Counsel for Chapter 11 Trustee*

50377259.7

9