**SO ORDERED.**
**SIGNED this 6th day of October, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

**Suzanne H. Bauknight**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

SALEM POINTE CAPITAL, LLC

Debtor

Case No. 3:24-bk-31702-SHB
Chapter 11

**SALE APPROVAL ORDER**

Before the Court is the Second Motion by Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to: (A) Approve Sale Procedures, (B) Schedule a Sale Approval Hearing and Objection Deadline, (C) Approve the Form of Notices of the Motion to Sell, the Sale Approval Hearing, and Objection Deadline, and (D) Approve Procedures to Establish Certain Cure Amounts for Executory Contracts and Unexpired Leases that May be Assumed and a Notice Related Thereto; (E) Approve the Sale of Certain Assets Free and Clear of Claims, Liens, Encumbrances, and Other Interests; (F) Approve the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases ("Sale Motion") filed on June 4, 2026 [Doc. 938]. After notice and hearing, the Court entered a "Sale Procedures Order" on June 26, 2026 [Doc. 1017], pursuant to which the Chapter 11 Trustee

("Trustee") conducted an auction on August 6, 2026 (the "Auction"), with the Trustee selecting Timbertop Land Company, LLC (together with its affiliates or assignees) ("Timbertop") as the "Successful Bidder" (as defined in the Sale Procedures Order), offering the highest and otherwise best offer for the "Purchased Assets" as described in the Asset Purchase Agreement ("APA") that is of record at Doc. 1283-1. Objections to the Sale Motion were filed by the plaintiffs in Adversary Proceeding No. 3:24-ap-03032-SHB ("Hoban Plaintiffs") and the plaintiffs in Adversary Proceeding No. 3:26-ap-03006-SHB ("Lorts Plaintiffs") (collectively, "Objecting Property Owners") and Rarity Bay Community Association, Inc. ("RBCAI"), both of which also objected to the proposed assumption and assignment of contracts or agreements as contemplated by the Amended Notice of (I) Trustee's Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property, and (II) Related Cure Amounts [Docs. 1149, 1060, 1105, 1155, 1209, 1212].[1]

The Court conducted an evidentiary hearing to consider approval of the Sale Motion and objections thereto on September 3, 11, 14, 16, 17, 18, 23, and 24, 2026, with closing arguments on September 25, 2026 ("the Sale Approval Hearing"). On October 5, 2026, the Court delivered from the bench its findings of fact and conclusions of law, overruling the remaining objections.[2] Those findings of fact and conclusions of law are incorporated herein by reference.

With appearances of all interested parties having been noted on the record of the Sale Procedures Order and the Sale Approval Hearing, and on all of the proceedings had before the

---

[1] All other objections were either withdrawn or overruled for failure to prosecute. The Objecting Property Owners and RBCAI are referred to collectively herein as "Objecting Parties."

[2] The Court also intends to issue a formal, written decision of its comprehensive findings of fact and conclusions of law that were delivered on October 5.

Court, and after hearing the arguments of counsel and weighing the evidence presented, the Court having found and determined that the relief sought in the Sale Motion is in the best interests of the debtor, Salem Pointe Capital, LLC ("Debtor"), its estate, its creditors, and all parties in interest and that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein, and after due and deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A. As demonstrated by the Trustee and representations of counsel made on the record at the Sale Procedures Hearing and/or the Sale Approval Hearing, the Trustee employed CBRE, Inc. to conduct an Auction. The Court finds that the bidding qualifications and solicitation were in compliance with the Sale Procedures Order and were conducted fairly, with adequate opportunity for parties to qualify and submit competing bids. The Trustee has undertaken his role leading to the Auction and entry into the APA in a diligent, non-collusive, fair and good-faith manner.

B. The statutory and rule-based predicates for the relief sought in the Sale Motion are §§ 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Court for the United States Bankruptcy Court for the Eastern District of Tennessee (the "Local Rules").

C. The Court has jurisdiction over this matter and over the property of Debtor's estate, including the Purchased Assets, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue of this Chapter 11 case and of the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein; however, for the avoidance of doubt, the provisions of Bankruptcy Rules 6004(h) and 6006(d) remain effective.

E. All objections to the relief requested in the Sale Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, are overruled as explained in the Court's findings of fact and conclusions of law delivered on October 5, 2026, except as otherwise set forth herein.

F. As evidenced by certificates filed with the Court in compliance with the Sale Procedures Order, the Trustee accomplished proper, timely, adequate, and sufficient notice of and a reasonable opportunity for objection or other request to be heard regarding: (i) the entry of the Sale Procedures Order and the dates and deadlines set forth therein, including the procedures required for the submission of Qualified Bids (as defined in the Sale Procedures Order) for the Purchased Assets and for participation by Qualified Bidders at the Auction, with opportunity for virtual observation by other parties in interest; (ii) the Sale Motion; (iii) the Auction; (iv) the Sale Approval Hearing; and (v) the transactions contemplated by the APA, including the sale of the Purchased Assets. Such constitutes good and sufficient notice of, and a reasonable opportunity to object or be heard regarding the Sale Motion, the Auction, the Sale Approval Hearing, and the entry of this Order, under §§ 102(1), 363(b) and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 6006, and 9014; the Local Rules; and the Sale Procedures Order. No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Sale Motion, the Sale Approval Hearing, or the entry of this Order need be given to any entity.

G. The Trustee also gave due and proper notice of the assumption, sale, and assignment of each contract and lease proposed to be assumed and assigned pursuant to the APA through the Cure Notices given in accordance with the Sale Motion and the Sale Procedures Order to the Counterparties under each such assigned contract. [Doc. 1202.] (The "Assigned Contracts" are those designated in the Trustee's Final Designation List [Doc. 1283-2].) Such notice was good, sufficient, and appropriate under the particular circumstances. No other or further notice of the Assigned Contracts or Cure Amounts is necessary or shall be required.

H. Actual written notice of, and a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as required by the Sale Procedures Order, including, all the parties listed on the Certificate of Service to the Sale Motion and the Certificates of Service relating to the Sale Notices and the Assumption and Assignment Procedures and Notices.

I. As demonstrated by the representations of counsel made on the record at the Sale Approval Hearing, the Trustee and its professionals and other representatives have complied in all respects and in good faith with the Sale Procedures Order by, among other things, affording entities that expressed an interest in submitting a Qualified Bid a full, fair, and reasonable opportunity to obtain necessary due-diligence information and to submit the materials required under the Sale Procedures Order by the Bid Deadline, as defined in the Sale Procedures Order.

J. A Plan of Reorganization was filed on June 17, 2026 [Doc. 971] and amended twice [Docs. 1069, 1082] (collectively, "Plan"), which the Trustee reviewed and on which the Court conducted initial hearings, including a disclosure statement hearing, resulting in the Court approving the Third Amended Disclosure Statement [Docs. 1081, 1083]. Because the Plan was withdrawn on August 24, 2026 [Doc. 1234], before the Sale Approval Hearing began on

September 3, 2026, neither the Court nor the Trustee further considered the Plan.

K. The Auction: (i) was held, as provided in the Sale Procedures Order, on August 6, 2026; (ii) was conducted pursuant to procedures established in good faith and in compliance with the Sale Procedures Order; and (iii) afforded a full, fair, and reasonable opportunity for any party that submitted a timely Qualified Bid to make a higher or otherwise better offer for the Purchased Assets over the bid of the Successful Bidder. At the conclusion of the Auction, the Trustee determined that the Successful Bidder's bid for the Purchased Assets was the highest and otherwise best bid. The Successful Bidder and its professionals have complied in good faith in all respects with the Sale Procedures Order. The Sale Procedures Order obtained the highest value for the Purchased Assets. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to Debtor's estate than the Successful Bidder. The Trustee's determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

L. Subject to the terms of the APA in all respects, Debtor is the sole and lawful owner of, and has clear and marketable title to, the Purchased Assets to be sold pursuant to the APA (the "Sale"), including all items of personal property owned by Debtor, as identified in the APA.

M. The Successful Bidder has offered to purchase the Purchased Assets free and clear of all Liens (as defined below), excluding any Assumed Liabilities and Permitted Encumbrances as provided in the APA, to the fullest extent authorized under § 363(f) of the Bankruptcy Code, with such Liens to attach to the Sale proceeds with the same validity and priority and to the same extent as existed before the Sale. If the Sale of the Purchased Assets to the Successful Bidder were not free and clear of all Liens, or if the Successful Bidder would, or in the future could, be

liable for any Liens, the Successful Bidder would not have entered into the APA and would not consummate the Sale or the transactions contemplated by the APA, thus adversely affecting Debtor, its estate, and its creditors and parties-in-interest.

N. The offer to purchase the Purchased Assets made by the Successful Bidder, under the terms and conditions set forth in the APA: (i) is the highest or otherwise best offer obtained for the Purchased Assets; (ii) is for fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the Purchased Assets being conveyed to the Successful Bidder; (iii) is fair and reasonable; (iv) is in the best interests of Debtor's estate, creditors, and other parties in interest; and (v) would not have been made by the Successful Bidder absent the protections afforded to the Successful Bidder by the Sale Procedures Order, the APA, the Bankruptcy Code, and this Order.

O. The Trustee's determination that the Sale to the Successful Bidder, pursuant to the APA, provides the highest or otherwise best offer for the Purchased Assets, and its related decision to sell the Purchased Assets to the Successful Bidder, each constitutes a reasonable exercise of the Trustee's business judgment and each is in the best interests of Debtor's bankruptcy estate and its creditors and parties in interest. The Trustee has articulated sound business reasons for consummating the APA and for selling the Purchased Assets outside of a plan of reorganization or liquidation. It is a reasonable exercise of the Trustee's business judgment to execute, deliver, and consummate the APA and consummate the transactions contemplated by the APA, subject to this Order. The facts and circumstances stated herein demonstrate the exigent nature of Debtor's business situation to support the sale of the Purchased Assets at this stage of Debtor's Chapter 11 case and outside a plan of reorganization and/or liquidation. Notwithstanding any requirement for approval or consent by any person, the transfer

of the Purchased Assets to the Successful Bidder and the assumption and assignment of the Assigned Contracts is a legal, valid, and effective transfer of the Purchased Assets and any Assigned Contracts.

P. Each entity with a Lien (as defined below) in any of the Purchased Assets to be transferred on the Closing Date has (i) consented to, or is deemed to have consented to, the Sale free and clear of such Lien, (ii) could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Lien, or (iii) otherwise falls within the provisions of § 363(f) of the Bankruptcy Code and has been satisfied as to all such Liens. Those holders of Liens who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to entry of this Order pursuant to § 363(f)(2) of the Bankruptcy Code. Each holder of a Lien that did not so object is adequately protected by having its Lien, if any, attach to the net cash proceeds of the Sale ultimately attributable to the property against or in which it asserts a Lien, with the same validity and priority, and to the same extent, as existed before the Sale, and subject to the terms of the instruments that created such Lien and to any claims and defenses the Trustee and the bankruptcy estate may possess with respect thereto. Not selling the Purchased Assets free and clear of all Liens would adversely impact the bankruptcy estate, and any sale of the Purchased Assets other than one free and clear of all Liens would be of substantially less value to the bankruptcy estate. Therefore, approval of the APA and consummation of the Sale free and clear of Liens is appropriate pursuant to § 363(f) of the Bankruptcy Code.

Q. To the fullest extent authorized by § 363(f) of the Bankruptcy Code, the Successful Bidder's acquisition of the Purchased Assets shall be free and clear of any successor liability claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing, subject to the provisions of the APA.

R. The APA is a valid and binding contract between the Trustee and the Successful Bidder, which shall be enforceable according to its terms. The transfer of the Purchased Assets to the Successful Bidder is, or will be, a legal, valid, and effective transfer of the Purchased Assets and will vest the Successful Bidder on the Closing Date (as defined in the APA) with all right, title, and interest of Debtor in and to the Purchased Assets, free and clear of any and all Liens (as defined below), except any that are explicitly and expressly excluded by the Successful Bidder in the APA or this Order. Except as specifically provided in the APA or this Order, the Successful Bidder shall not assume or become liable for any Liens relating to the Purchased Assets.

S. The Successful Bidder is not holding itself out to the public as a continuation of Debtor, and no common identity of directors, stockholders, members, or other equity holders exists between the Successful Bidder and Debtor. The transactions contemplated by the APA do not amount to a consolidation, merger, or *de facto* merger of the Successful Bidder and Debtor and/or Debtor's bankruptcy estate; there is neither substantial continuity of enterprise between Debtor and the Successful Bidder, nor is the Successful Bidder a mere continuation of Debtor or its bankruptcy estate, and the Successful Bidder does not constitute a successor to Debtor or its bankruptcy estate. The Successful Bidder is not an "insider" or "affiliate" of Debtor, as those terms are defined in the Bankruptcy Code. The Successful Bidder is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and therefore the Successful Bidder is entitled to all the protections of §§ 363(m) and 363(n) of the Bankruptcy Code with respect to the Purchased Assets.

T. The APA and the transactions contemplated thereunder were negotiated and entered into in good faith within the meaning of § 363(m) of the Bankruptcy Code, based on

arm's-length bargaining, and without collusion or fraud of any kind. Neither the Trustee nor the Successful Bidder has engaged in any conduct that would prevent the application of § 363(m) of the Bankruptcy Code or cause the application of or implicate § 363(n) of the Bankruptcy Code to the APA or to the consummation of the Sale and transfer of the Purchased Assets and the Assigned Contracts to the Successful Bidder. Accordingly, the Successful Bidder is entitled to all the protections and immunities of § 363(m) of the Bankruptcy Code.

U. Debtor, acting by and through the Trustee, has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for Debtor, through the Trustee, to consummate the transactions and any related actions contemplated by the APA, except as otherwise set forth in the APA.

V. The Trustee and the Successful Bidder have, to the extent necessary, satisfied the requirements of § 365 of the Bankruptcy Code, including §§ 365(b)(1)(A), (B), and 365(f), in connection with the Sale and the assumption and assignment of the Assigned Contracts. The Successful Bidder has demonstrated adequate assurance of future performance with respect to all Assigned Contracts pursuant to § 365(b)(1)(C) of the Bankruptcy Code. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of Debtor, its estate, and its creditors and parties in interest, and represents the exercise of sound and prudent business judgment by the Trustee.

W. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of Debtor's Chapter 11 case. The Successful Bidder, on behalf of the Trustee, has provided for appropriate cures and/or other payments or actions required for the

Trustee to assume and assign the Assigned Contracts to the Successful Bidder. The Successful Bidder has provided adequate assurance of future performance under all Assigned Contracts.

X. In the absence of a stay pending appeal, the Successful Bidder is acting in good faith, pursuant to § 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the APA at any time on or after the entry of this Order, *except that the Trustee withdrew his request that this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d)*.

Y. The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or reorganization for Debtor. The Sale does not constitute a *sub rosa* Chapter 11 plan.

Z. The APA was not entered into, and neither the Trustee nor the Successful Bidder has entered into the APA or proposed to consummate the transactions contemplated thereby, for the purpose of hindering, delaying, or defrauding Debtor's present or future creditors. The total consideration provided by the Successful Bidder for the Purchased Assets is the highest or otherwise best offer received by the Trustee, and the purchase price constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

AA. The Successful Bidder has not agreed to assume and shall have no obligation with respect to any liabilities of Debtor, other than as expressly set forth in the APA. Other than the Assumed Liabilities and Permitted Encumbrances, and except as expressly provided for by the

terms of the APA, the Successful Bidder (i) shall have no obligations with respect to any Excluded Liabilities, (ii) shall acquire all of the Purchased Assets free and clear of the Excluded Liabilities to the extent they constitute a Lien (as defined below), and (iii) is released by the Trustee with respect to such Excluded Liabilities.

BB. Other than the claims arising under the APA, the Trustee agrees and acknowledges that he has no claims against the Successful Bidder.

CC. The consummation of the transactions under the APA is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, §§ 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of such transactions.

DD. For the avoidance of doubt, the Purchased Assets do not include the "Declarant Rights" as originally defined by the Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay dated October 1, 1998 (as recorded in the Loudon County Register of Deeds at Book T444, Page 248, and in the Monroe County Register of Deeds at Book M112, Page 323), and as assigned to Debtor by the Fifth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay Amendment of Bylaws for Rarity Bay Community Association, Inc., and Assignment of Declarant Rights Under Master Declaration dated May 18, 2015 (as recorded in the Loudon County Register of Deeds at Book T1248, Page 489) [Exhibits R19 and R25).

**IT IS HEREBY ORDERED THAT:**

The Sale Motion is GRANTED as set forth herein. The Sale Motion complies with all aspects of the Federal Bankruptcy and Local Rules, as applicable.

1. All objections and responses to the Sale Motion that have not been overruled, withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied.

2. Notice of the Sale Approval Hearing was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with § 102(1) of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006, the Local Rules, and as required by the Sale Procedures Order.

3. The Trustee, in transferring the Purchased Assets pursuant to this Order and § 363 of the Bankruptcy Code, and pursuant to prior order of the Court, under § 1107(a) of the Bankruptcy Code, has all rights and powers to perform all the functions and duties of a trustee serving in a case under Chapter 11 and will transfer the property pursuant to this Order.

4. The Sale of the Purchased Assets to the Successful Bidder under the APA constitutes a transfer for reasonably equivalent value and fair consideration and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The Sale of the Purchased Assets to the Successful Bidder is a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent of any entity.

5. The Trustee is hereby authorized to fully perform under, consummate, and implement the terms of the APA, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order, and the Sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers, and other instruments of transfer, and to take all further actions as may be necessary for the purpose of assigning, transferring, granting,

conveying, and conferring to the Successful Bidder, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated by the APA, forthwith and without any further corporate action or orders of the Court. Neither the Successful Bidder nor the Trustee shall have any obligation to proceed with the Closing of the APA unless and until all conditions precedent to the Successful Bidder's and the Trustee's respective obligations thereunder have been met, satisfied, or waived by the Successful Bidder or the Trustee, as the case may be.

6. The Trustee and each other person or entity having duties or responsibilities under the APA, any agreements related thereto, or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA: to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA and any related agreements; to take any and all actions contemplated by the APA, any related agreements, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, amendments, or other agreements or documents and to perform such other acts and execute and delivery such other documents, as are consistent with and necessary or appropriate to implement, effectuate, and consummate the APA, any related agreements, this Order, and the transactions contemplated thereby and hereby, forthwith and all without further application to or order of the Court.

7. The Successful Bidder shall be authorized, as of the Closing Date under the APA, to operate under any license, permit, registration, or governmental authorization or approval of the Trustee with respect to the Purchased Assets and, to the fullest extent available under

applicable law and to the extent provided for under the APA, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Successful Bidder.

8. All of Debtor's interests in the Purchased Assets to be acquired by the Successful Bidder under the APA shall be, as of the Closing Date under the APA, transferred to and vested in the Successful Bidder. Upon the occurrence of the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Successful Bidder under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Successful Bidder.

9. To the fullest extent permitted by applicable law, neither the Successful Bidder nor its affiliates, successors or assigns shall, as a result of the consummation of the transactions set forth in the APA: (i) be a successor to Debtor or Debtor's bankruptcy estate; (ii) have, de facto or otherwise, merged consolidated with or into Debtor or Debtor's bankruptcy estate; (iii) be a continuation or substantial continuation of Debtor or any enterprise of Debtor; or (iv) be a joint employer or co-employer with, or successor employer of Debtor. The Successful Bidder shall not assume nor be deemed to assume or in any way be responsible for any liability or obligation of Debtor and/or its bankruptcy estate. The Successful Bidder shall not assume, be deemed to assume, or in any way be responsible for any liability, debt (as defined in § 101(12) of the Bankruptcy Code), or obligation of Debtor and/or its estate, including, without limitation, pursuant to any successor liability or other theory of liability or responsibility for any claim against Debtor, against an insider of Debtor, against the Purchased Assets, Debtor's Assets, or similar liability, except as otherwise expressly provided in the APA.

10. Pursuant to §§ 105 and 363(b) and (f) of the Bankruptcy Code, title to the Purchased Assets shall pass to the Successful Bidder on the Closing Date, free and clear of any and all liens (including mechanic's, materialmen's, and other consensual and nonconsensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in § 101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, any liabilities or obligations under any State or Federal WARN Act or similar law, any liabilities or obligations under COBRA, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any court of foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignments, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims (each a "Lien," and collectively, the "Liens"), to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or know or unknown, whether arising prior to, on, or subsequent to the Petition date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens upon the Purchased Assets to be unconditionally released, discharged, and terminated as against either the Purchased Assets or the Successful Bidder; provided, however that any Assumed Liabilities or Permitted Encumbrances as set forth in the APA shall be excluded from the definition of Liens. Any such Liens shall attach to the proceeds of the sale of the Purchased Assets with the same priority, validity, force, and effect (if

any) as existed with respect to the Purchased Assets as of the Petition date. For the avoidance of doubt, Lien does not include the claims of the Objecting Property Owners (as defined in the Court's findings of fact and conclusions of law delivered on October 5, 2026) from pursuing their claims asserted in Adversary Proceeding No. 3:24-ap-03032-SHB and Adversary Proceeding No. 3:26-ap-03006-SHB.

11. Without limiting the foregoing, the Purchased Assets shall pass to the Successful Bidder on the Closing Date free and clear of all Liens, claims and interests arising out of or on account of: (1) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) and any other federal or state environmental health and safety laws and regulations; (2) any collective bargaining or other labor agreements; (3) any defined benefit, multiemployer, defined contribution, retirement, medical benefit, or any other employee pension, welfare, compensation, or other benefit plan, agreement, practice and program; or (2) any employee, benefit, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of Debtor or any of its respective predecessors.

12. Upon consummation of the transactions set forth in the APA, if any person or entity that has filed financing statements, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens against or in the Purchased Assets, has not delivered to the Trustee prior to Closing under the APA, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Liens that such person or entity has with respect to the Purchased Assets (unless otherwise assumed in the APA), or otherwise, then: (a) the Trustee is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Successful Bidder is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Purchased Assets of any kind or nature. For the avoidance of doubt, to the extent necessary, upon consummation of the transactions set forth in the APA, the Successful Bidder is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Lien or encumbrance that is extinguished or otherwise released pursuant to this Order under § 363 of the Bankruptcy Code.

13. All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Successful Bidder in accordance with the terms of the APA and this Order, subject to the provisions of paragraph 27 below. For the avoidance of doubt, this injunction does not prohibit the Objecting Property Owners (as defined in the Court's findings of fact and conclusions of law delivered on October 5, 2026) from pursuing their claims

asserted in Adversary Proceeding No. 3:24-ap-03032-SHB and Adversary Proceeding No. 3:26-ap-03006-SHB.

14. This Order shall be binding upon and govern all acts of all entities, persons, governmental units (as defined in §§ 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens, including, without limitation, federal, state, and governmental agencies and departments, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report, insure any title or state of title in or to any lease, and each of the foregoing entities, is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

15. Except as provided in or pursuant to the APA, the Successful Bidder is not assuming and is not deemed to assume, and the Successful Bidder shall not be, nor shall any affiliate of the Successful Bidder be, in any way liable or responsible for, as a successor or otherwise, for any liabilities, debts, or obligations of Debtor in any way whatsoever relating to or arising from Debtor's ownership, possession, control, or use of the Purchased Assets prior to the consummation of the transactions contemplated by the APA, or any liabilities calculable by reference to Debtor or its operations, or to any or all of Debtor's Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the APA, which liabilities, debts, and obligations are hereby extinguished

insofar as they may give rise to liability, successor or otherwise, against the Successful Bidder or any of its affiliates.

16. The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of Liens shall be self-executing, notwithstanding any requirement for approval or consent by any person, and neither the Trustee nor the Successful Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the foregoing provisions of this Order; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order or the APA, and the Trustee and the Successful Bidder, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Trustee or the Successful Bidder deems necessary or appropriate to implement and effectuate the terms of the APA and this Order. All persons and entities (a) holding Liens on the Purchased Assets, (b) that have filed financing statements, mortgages, or other documents or instruments evidencing claims against the Purchased Assets, or (c) otherwise asserting claims against the Purchased Assets shall, and hereby are directed to, execute and deliver to the Successful Bidder such releases or termination statements to effectuate the Sale of the Purchased Assets to the Successful Bidder free and clear of any and all Liens.

17. The Sale of the Purchased Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto and all other ancillary documents), the bid by the Successful Bidder, and the transactions contemplated thereby and all of the terms and conditions thereof, are the highest and best offer for the Purchased Assets and hereby are authorized and approved in all respects.

18. The APA, substantially in the form filed at Doc. 1283-1, is hereby approved pursuant to § 363(b) of the Bankruptcy Code and Debtor is authorized and directed to consummate and perform all of its obligations under the APA and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA. For the avoidance of doubt, the Trustee and the Successful Bidder may make non-material changes to the APA up to the Closing of the Sale.

19. Pursuant to §§ 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets to the Successful Bidder under the APA and the transactions related thereto, upon the Closing under the APA, are authorized and approved in all respects, and the Trustee shall be, and hereby is, authorized and empowered to sell such Assets to the Successful Bidder in accordance with the APA. Nothing contained in any Chapter 11 plan confirmed in Debtor's Chapter 11 case or the order confirming any Chapter 11 plan, nor any order dismissing or converting the Chapter 11 case shall conflict with or derogate from the provisions of the APA, any documents or instrument executed in connection therewith, or the terms of this Order.

20. The terms of this Order shall be binding on the Successful Bidder and its successors and assigns, the Trustee, Debtor, creditors of Debtor, and on all other parties in interest in Debtor's Chapter 11 case, and any successors of Debtor, including any trustee upon a conversion of the Chapter 11 case to proceedings under Chapter 7 of the Bankruptcy Code.

21. The Successful Bidder is a good-faith purchaser and is hereby granted and is entitled to all of the benefits and protections afforded by § 363(m) of the Bankruptcy Code to a good-faith buyer, including with respect to the transfer of the Assigned Contracts as part of the Sale of the Purchased Assets pursuant to § 365 of the Bankruptcy Code and this Order.

22. Pursuant to § 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the APA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification, or vacatur, shall be governed in all respects by the original provisions of this Order and the APA, as applicable.

23. With respect to the transactions consummated pursuant to this Order, this Order shall be the sole and sufficient evidence of the transfer of title to the Successful Bidder, and the sale transaction consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

24. Following the Closing under the APA, no holder of any Liens against the Purchased Assets shall have any basis to interfere with the Successful Bidder's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Trustee may take in this Chapter 11 case, and no person may take any action to prevent,

interfere with, or otherwise impair consummation of the transactions contemplated in or by the APA or this Order. For the avoidance of doubt, however, nothing in this Order prohibits the Objecting Property Owners (as defined in the Court's findings of fact and conclusions of law delivered on October 5, 2026) from pursuing their claims asserted in Adversary Proceeding No. 3:24-ap-03032-SHB and Adversary Proceeding No. 3:26-ap-03006-SHB. Also, as concerns the Objecting Property Owners, the Successful Bidder may not exercise rights under the Sixth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay and Amendment of Bylaws for Rarity Bay Community Association, Inc., dated May 18, 2015 (as recorded in the Monroe County Register of Deeds at Book M249, Page 384) (the "Sixth Amendment") [Exhibit O26] that otherwise permit the Successful Bidder to impose mandatory social memberships on the Objecting Property Owners, pending further order of the Court (or other court of competent jurisdiction).

25. Pursuant to § 105 of the Bankruptcy Code, and subject to paragraph 27 below, creditors of Debtor are prohibited from taking any actions against the Successful Bidder or the Purchased Assets; provided, however, that nothing in this paragraph shall prevent any party from seeking to enforce against the Successful Bidder any applicable rights or obligations under the APA. For the avoidance of doubt, nothing in this paragraph prohibits the Objecting Property Owners (as defined in the Court's findings of fact and conclusions of law delivered on October 5, 2026) from pursuing their claims asserted in Adversary Proceeding No. 3:24-ap-03032-SHB and Adversary Proceeding No. 3:26-ap-03006-SHB.

26. Except as specifically set forth herein regarding pending litigation, nothing in this Order is intended to affect the rights or legal arguments of any party in any pending litigation. This includes all named parties and any parties that may be properly added or substituted in any

pending litigation. Without limiting the foregoing, assumption and assignment of a Club Membership Contract does not preclude such member from attempting to void or otherwise set aside the Sixth Amendment, and conversely, rejection of a Club Membership Contract does not preclude any party (current, added, or substituted) from arguing against voiding or otherwise setting aside the Sixth Amendment.

27. Except as otherwise provided for herein and in the APA, the transfer of the Purchased Assets and the Assigned Contracts does not and will not subject the Successful Bidder and/or its affiliates, designees, assignees, successors, or any of their properties, assets, officers, directors, members, employees, or equity holders (together with Successful Bidder, the "Successful Bidder Entities") to any liability by reason of such transfers and assignments under the laws of the United States, any state, territory, or possession thereof, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor or transferee liability, persons and entities hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens against the Successful Bidder Entities.

28. Subject to the provisions of paragraph 27 of this Order, effective on the Closing Date, all parties and/or entities asserting Liens and contract rights against Debtor and/or any of the Purchased Assets are hereby permanently enjoined and precluded from, with respect to such Liens: (i) asserting, commencing, or continuing in any manner any action against the Successful Bidder Entities (each a "Protected Party," and all such entities collectively, the "Protected Parties"), or against any Protected Party's assets or properties, including without limitation against the Purchased Assets; (ii) the enforcement, attachment, collection, or recovery, by any manner or means, of any judgment, award, decree, or order against the Protected Parties or any

properties or Assets of the Protected Parties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Protected Parties or any properties or Assets of the Protected Parties, including without limitation the Purchased Assets; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Protected Parties; and (v) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Order or the APA. Neither the Successful Bidder nor the Trustee is required to comply with any "bulk sale" or similar laws relating to the transfer of the Purchased Assets.

29. The Trustee and Debtor's bankruptcy estate, on the one hand, and the Successful Bidder, on the other hand, hereby release each other from any and all claims except for such claims that arise from the APA and this Order.

30. The Court retains jurisdiction to interpret, implement, and enforce the provisions of, and resolve any disputes arising under or related to this Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith.

31. The failure specifically to include any particular provisions of the APA or any of the documents, agreements, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement, or instrument, it being the intent of the Court, the Trustee, and the Successful Bidder that the APA and each document, agreement, or instrument be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing Date.

32. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof

without further order of the Court; provided that any such modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the APA and any related agreements.

33. Subject to the terms of the APA and the occurrence of the Closing Date thereunder, and pursuant to §§ 365(a), (b), (c), and (f) of the Bankruptcy Code, the Trustee is hereby authorized to assume the Assigned Contracts and assign such contracts to the Successful Bidder; provided, however, that there shall be no assumption of any such Assigned Contract absent simultaneous assignment thereof to the Successful Bidder.

34. The Assigned Contracts are deemed assumed by the Trustee and assigned to the Successful Bidder effective as of the Closing Date, and there are no cure costs associated with such Assigned Contracts.

35. Pursuant to § 365(k) of the Bankruptcy Code, the Trustee and the bankruptcy estate shall have no liabilities for any claims arising or relating to or accruing post-Closing under any of the Assigned Contracts.

36. Except as provided in the APA and this Order, Debtor's bankruptcy estate shall be responsible for all obligations that arise between the Petition date and Closing Date relating to all Assigned Contracts unless otherwise agreed to by and between the Trustee, the Successful Bidder, and the counterparty to the Assigned Contract.

37. In accordance with §§ 365(b)(2) and (f) of the Bankruptcy Code, upon assignment of the Assigned Contracts to the Successful Bidder, (i) the Successful Bidder shall have all of the rights of Debtor thereunder and each provision of such Assigned Contracts shall remain in full force and effect for the benefit of Successful Bidder notwithstanding any provision in any such Assigned Contract or in applicable law that prohibits, restricts, or limits in any way such

assignment or transfer, and (ii) no Assigned Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the transactions contemplated by the APA.

38. Any party to a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to § 365(c) of the Bankruptcy Code to the extent that such contract is an Assigned Contract.

39. Upon the Closing Date under the APA, in accordance with §§ 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all rights, title, and interest in and to each Assigned Contract. The Trustee is authorized to take all actions reasonably necessary to effectuate the foregoing.

40. All defaults or other obligations under the Assigned Contracts arising prior to the Closing Date under the APA (without giving effect to any acceleration clauses or any default provisions of the kind specified in § 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs and the Counterparties to the Assigned Contracts shall be forever barred and estopped from asserting or claiming against Debtor's bankruptcy estate or the Successful Bidder that any amounts are due or other defaults exist under such Assigned Contracts.

41. Any provision in any Assigned Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of Debtor is unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any. No sections or provisions of any Assigned Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Counterparty to the Assigned Contract shall have any force or

effect with respect to the transactions contemplated by the APA and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under § 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under § 365(e), and no assignment of any Assigned Contract pursuant to the terms of the APA in any respect constitutes a default under any Assigned Contract. Unless otherwise stated in the APA or established on the record at the Sale Hearing, the Counterparties to each Assigned Contract shall be deemed to have consented to such assignment under § 365(c)(1)(B) of the Bankruptcy Code, and the Successful Bidder shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such Counterparty's written consent to the assumption or assignment of such Assigned Contract. Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by § 365(c) of the Bankruptcy Code.

42. The Successful Bidder has satisfied any and all requirements under §§ 365(b)(1) and 365(f)(2) to provide adequate assurance or future performance under all Assigned Contracts. The Successful Bidder shall not be required to provide any further evidence of any adequate assurance to any Counterparty of an Assigned Contract.

43. The Trustee and Debtor's bankruptcy estate shall be relieved of any liability for breach of any of the Assigned Contracts occurring from and after the Closing Date, pursuant to and in accordance with § 365(k) of the Bankruptcy Code.

44. Counterparties to the Assigned Contracts shall be prohibited from charging any rent acceleration, assignment fees, increases, or other fees to the Successful Bidder as a result of the assumption and assignment of any Assigned Contract.

45. The failure of the Trustee or Debtor or the Successful Bidder to enforce, at any time, one of more terms or conditions of any Assigned Contract shall not be a waiver of such terms and conditions or of Debtor's bankruptcy estate's or the Successful Bidder's rights to enforce every term and condition of the Assigned Contracts.

46. Except as provided herein, unless and until an Assigned Contract is assumed and assigned pursuant to the terms of this Order, the Successful Bidder shall have no liability under any such Assigned Contract.

47. In the event that the Sale does not close, none of Debtor's executory contracts and leases shall be assumed or rejected by virtue of this Order and shall remain subject to further administration by the Trustee in Debtor's Chapter 11 case.

48. Pursuant to the APA, the Successful Bidder, as buyer/assignee of Debtor's Assets, is taking the Purchased Assets subject to the Master Declaration (including the Sixth Amendment) and the Assignment of Right.

49. To the maximum extent permitted by § 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Successful Bidder on account of the filing or pendency of Debtor's Chapter 11 case or the consummation of the Sale as contemplated by the APA.

50. The Successful Bidder shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with Debtor for any purpose or under the laws of the United States, any state, territory, or possession thereof, or the state of Tennessee and, except as specifically set forth in the APA, the Successful Bidder shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs,

including COBRA or any similar laws or regulations, to any of Debtor's employees or former employees, including any such employees who may become employees of the Successful Bidder.

51. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental: (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under relevant police or regulatory law.

52. The Trustee is hereby authorized to (a) take all other and further actions as may be reasonably necessary consummate and implement the Sale; (b) perform all obligations under the APA, and (c) execute all other documents and instruments related to and connected with the Sale and the consummation thereof, all without any further corporate action or order of the Court.

53. The Successful Bidder is enjoined from attempting to exercise any of the Declarant Rights, none of which are included in the Purchased Assets and all of which remain property of the bankruptcy estate.

54. The Sale of the Purchased Assets is not subject to avoidance pursuant to § 363(n) of the Bankruptcy Code or otherwise.

55. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the APA.

56. To the extent there are any inconsistencies between the terms of this Order, the APA, and any prior order or pleading with respect to the Sale Motion in Debtor's Chapter 11 case, the terms of this Order shall govern.

57. This Order and the APA shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Trustee and the Successful Bidder, their respective successors and permitted assigns, including, without limitation, any trustee appointed in a Chapter 7 case if this Chapter 11 case is converted from Chapter 11, all creditors and shareholders of Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments, or why may be required to report or insure any title in or to the Purchased Assets.

58. The provisions of this Order are non-severable and mutually dependent.

59. Nothing in any order of the Court or contained in any plan of reorganization or liquidation confirmed in this Chapter 11 case, or in any subsequent or converted case of Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code, shall conflict with or modify the provisions of the APA or the terms of this Order.

60. Should the Successful Bidder fail to close on the Sale pursuant to the APA, the Court will set a separate hearing regarding approval of the Back-Up Bidder's APA, and, if approved, the Court will enter a separate order (although many of the foregoing findings and conclusions will still apply to the Back-Up Bidder, as mentioned at the beginning of the September 3 Sale Approval Hearing). Nothing herein shall preclude the Trustee from pursuing available remedies and claims in this Court against the Successful Bidder should the Successful Bidder fail to close in accordance with the APA.

61. The Successful Bidder has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Trustee and the Successful Bidder close

under the APA, then the Successful Bidder shall be entitled to the protections of § 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the APA if this Order or any authorization contained herein is reversed or modified on appeal

62. The Court shall retain jurisdiction to enforce the terms and provisions of the APA, this Order, and the Sales Procedures Order in all respects and to decide any disputes concerning this Order and the APA, or the rights and duties of the parties hereunder or thereunder, as applicable, or any issues relating to this Order or the APA, including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes existing in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens.

# # #